**IN THE UNITED STATES DISTRICT COURT  
FOR THE NORTHERN DISTRICT OF TEXAS  
FORT WORTH DIVISION**

|  |  |
|---|---|
| IN RE 2014 RADIOSHACK ERISA LITIGATION ) ) ) | MASTER FILE NO. 4:14-cv-00959-O |
| THIS DOCUMENT RELATES TO: ) ) | |
| ALL ACTIONS ) ) | |

**APPENDIX TO PLAINTIFFS' MOTION FOR LEAVE TO FILE NOTICE OF <u>SUPPLEMENTAL AUTHORITY</u>**

| DESCRIPTION | APPENDIX PAGE NO. |
|---|---|
| Exhibit A - Plaintiffs' Notice of Supplemental Authority | APP-1 to APP-5 |
| *Pfeil v. State St. Bank & Trust Co.*, No. 14-cv-1491, 2015 U.S. App. LEXIS 19536 (6th Cir. Nov. 10, 2015) | APP-6 to APP-16 |

Dated: November 16, 2015                                    Respectfully Submitted,

                                          **KESSLER TOPAZ  
                                           MELTZER & CHECK LLP**

<u>*/s/ Mark K. Gyandoh*</u>  
Edward W. Ciolko (admitted *Pro Hac Vice*)  
Donna Siegel Moffa (admitted *Pro Hac Vice*)  
Mark K. Gyandoh (*admitted Pro Hac Vice*)  
Julie Siebert-Johnson (*admitted Pro Hac Vice*)  
280 King Of Prussia Road  
Radnor, PA 19087  
Telephone: (610) 667-7706  
Facsimile: (610) 667-7056  
Email: eciolko@ktmc.com  
         dmoffa@ktmc.com  
         mgyandoh@ktmc.com  
         jsjohnson@ktmc.com

*Interim Lead Class Counsel Committee Chair*

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray (*admitted Pro Hac Vice*)
2200 Renaissance Boulevard
Suite 308
King of Prussia, PA  19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com
            rgray@cwg-law.com

**STULL, STULL & BRODY**
Michael J. Klein (*admitted Pro Hac Vice*)
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022
Email:  mklein@ssbny.com

*Interim Lead Class Counsel Committee Members*

**LACKEY HERSHMAN, LLP**
Roger L. Mandel
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203
Email:  rlm@lhlaw.net
            beb@lhlaw.net

*Interim Liaison Class Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

/s/ *Mark K. Gyandoh*
Mark K. Gyandoh

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| IN RE 2014 RADIOSHACK ERISA LITIGATION </br></br> THIS DOCUMENT RELATES TO: </br></br> ALL ACTIONS | ) ) ) ) ) ) ) ) ) ) |  MASTER FILE NO. 4:14-cv-00959-O |

## PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs hereby submit this Notice of Supplemental Authority in support of their opposition to Defendants' motions to dismiss. Dkt Nos. 110, 112, 113. Attached hereto as Exhibit 1 is the November 10, 2015, decision of the United States Court of Appeals for the Sixth Circuit in *Pfeil v. State St. Bank & Trust Co.*, No. 14-cv-1491, 2015 U.S. App. LEXIS 19536 (6th Cir. Nov. 10, 2015), one of the first appellate court decisions applying *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), which Defendants rely upon as support for parts of their motions to dismiss.

*Pfeil* supports denial of Defendants' motions to dismiss for several reasons:

*First*, as noted in Plaintiffs' Opposition,[1] Part IV of *Fifth Third* addressed allegations of imprudence based on the contention that a stock's price was artificially inflated, and that the defendants should have understood the overvaluation because of public or nonpublic information of which they were aware. *Id.* at 16. As further noted in the Opposition, Plaintiffs do not bring such a claim. *Cf.* Judge White's dissent at *Pfeil*, 2015 U.S. App. LEXIS 19536 at *24 (noting that "Plaintiffs here do not assert that the market did not reflect the true value of the GM stock,

---

[1] "Plaintiffs' Opposition" or "Opposition" refers to the Memorandum of Law in Opposition to RadioShack Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint and to Strike Jury Demand ("Plaintiffs' Opposition") (Dkt. No. 110).

1

and it is unclear how this new holding applies" and that "Plaintiffs do not …claim that State Street should have discerned something the market did not."). Nonetheless, even with the *Pfeil* majority's erroneous application of Part IV of *Fifth Third* to the plaintiffs' claims in that matter – the same erroneous application Defendants ask this Court to make here despite vastly different facts underlying Plaintiffs' allegations – the majority recognized that "a fiduciary's complete failure to investigate a publicly traded investment might constitute a circumstance sufficiently special for a claim of imprudence to survive a motion to dismiss." 2015 U.S. App. LEXIS 19536 at *17.[2] Here, Plaintiffs allege that Defendants failed to engage in a reasoned decision-making process regarding the prudence of RadioShack stock as a Plan investment option. *See* Opposition at 20-21. Thus, even under the *Pfeil* majority's erroneous analysis, Plaintiffs' claims should survive.

*Second*, *Pfeil* also supports allowing Plaintiffs' claims to proceed past the pleadings stage because it was decided on a motion for summary judgment. Moreover, in contrast to Defendants' lack of substantive evaluation of RadioShack stock as demonstrated in Plaintiffs' well-plead allegations, the evidentiary record in *Pfeil* demonstrated a comprehensive fiduciary process to review the stock fund's prudence, including "a detailed company-specific report including at least nine specific pieces of information." 2015 U.S. App. LEXIS 19536, at *5-6.[3]

---

[2]   This a special circumstance specifically recognized by the author of *Fifth Third*, Justice Breyer during oral argument of *Fifth Third*. *See* Opposition at 4, citing *Fifth Third* Oral Argument Transcript at 31:10-18 (describing hypothetical situation where in a fiduciary's "inbox is ten feet of papers telling him about… the corporation's condition. It's apparent he's never read them. If he had read them, he would have taken action. Of course you would have a case, I would think."). *Available at* http://www.supremecourt.gov/oral_arguments/argument_transcript/2013.

[3] *Cf. DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 416 (4th Cir. 2007) (in company stock breach of fiduciary duty action, finding in favor of fiduciaries only after a trial on the merits that included evidence that while "U.S. Airways's financial situation, and liquidity, generated both cautious optimism and cause for concern, the [relevant fiduciaries] not only met internally, but

*Third*, Judge White's dissent noting that "the fact that a stock's price accurately reflects the company's risk of failing does not mean that it is prudent to retain the stock as that possibility becomes more and more certain and buyers are willing to pay less and less for a stake in the upside potential" and that "one can concede that the market is generally efficient in pricing stocks without concluding that all decisions to buy, sell or hold are therefore prudent," 2015 U.S. App. LEXIS 19536 at *24-25, is consistent with the Supreme Court's caution that "ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets" and that any nonpecuniary goals of an ESOP do not affect ERISA fiduciary's duties. *Fifth Third*, 134 S. Ct. at 2463, 2468-69. In other words, price is not the ultimate indicator of prudence.[4] Simply stated, an ESOP's non-pecuniary goals – which the *Pfeil* majority appeared to embrace – are irrelevant to its prudence, and the *Pfeil* majority opinion is inconsistent therewith. Accordingly, *Pfeil* supports denial of Defendants' motions to dismiss.

---

also sought outside advice from U.S. Airways's Associate General Counsel, and later from outside legal counsel, about whether it should retain the Company Fund as an option under the Plan.")

[4] *See Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009), *cert denied* 558 U.S. 1148 (2010) ("The Secretary also fears that our opinion could be read as a sweeping statement that any Plan fiduciary can insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them. She is right to criticize such a strategy. It could result in the inclusion of many investment alternatives that a responsible fiduciary should exclude. It also would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives. The panel's opinion, however, was not intended to give a green light to such 'obvious, even reckless, imprudence in the selection of investments' (as the Secretary puts it in her brief). Instead, the opinion was tethered closely to the facts before the court. Plaintiffs never alleged that any of the 26 investment alternatives that Deere made available to its 401(k) participants was unsound or reckless….."); *accord Kopp v. Klein*, 722 F.3d 327, 335 n.6 (5th Cir. 2013) ("the safe harbor defense does not relieve fiduciaries of the responsibility to screen investments.");

3

Dated:  November 16, 2015

Respectfully Submitted,

**KESSLER TOPAZ
 MELTZER & CHECK LLP**

*/s/ Mark K. Gyandoh*
Edward W. Ciolko (admitted *Pro Hac Vice*)
Donna Siegel Moffa (admitted *Pro Hac Vice*)
Mark K. Gyandoh (*admitted Pro Hac Vice*)
Julie Siebert-Johnson (*admitted Pro Hac Vice*)
280 King Of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko@ktmc.com
            dmoffa@ktmc.com
            mgyandoh@ktmc.com
            jsjohnson@ktmc.com

*Interim Lead Class Counsel Committee Chair*

**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray (*admitted Pro Hac Vice*)
2200 Renaissance Boulevard
Suite 308
King of Prussia, PA  19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com
            rgray@cwg-law.com

**STULL, STULL & BRODY**
Michael J. Klein (*admitted Pro Hac Vice*)
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022
Email:  mklein@ssbny.com

*Interim Lead Class Counsel Committee Members*

**LACKEY HERSHMAN, LLP**
Roger L. Mandel
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203
Email:  rlm@lhlaw.net
            beb@lhlaw.net

*Interim Liaison Class Counsel*

APP-6

# EXHIBIT 1

 Neutral

As of: November 16, 2015 6:29 PM EST

# *Pfeil v. State St. Bank & Trust Co.*

United States Court of Appeals for the Sixth Circuit

April 29, 2015, Argued; November 10, 2015, Decided; November 10, 2015, Filed

File Name: 15a0274p.06

No. 14-1491

**Reporter**

2015 U.S . App . LEXIS 19536; 2015 FED App. 0274P (6th Cir.)

RAYMOND M. PFEIL and MICHAEL KAMMER, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants, v. STATE STREET BANK AND TRUST COMPANY, Defendant-Appellee.

**Prior History:** [*1] Appeal from the United States District Court for the Eastern District of Michigan at Detroit. No. 2:09-cv-12229—Denise Page Hood, District Judge.
*Pfeil v. State St. Bank & Trust Co., 2014 U.S. Dist. LEXIS 50227 ( E.D. Mich., Apr. 11, 2014)*

## Core Terms

fiduciary, stock, investments, prudent, imprudent, circumstances, common stock, district court, company stock, decisions, portfolios, market price, employees, participants, securities, diversify, summary judgment, companies, documents, requires, pension, funds, special circumstance, motion to dismiss, court of appeals, class period, proceedings, monitoring, meetings, divest

## Case Summary

### Overview

HOLDINGS: [1]-The fiduciary was properly granted summary judgment on the employees' claim that the fiduciary failed to manage the plan's assets prudently in violation of § 404 of the Employee Retirement Income Security Act of 1974, *29 U.S*.C.S. § 1104(a)(1), because the fiduciary's actual processes demonstrated prudence, and the decision of other expert professionals both to invest and not to divest on or near the dates that the fiduciary made those decisions demonstrated the reasonable nature of those decisions.

### Outcome

Judgment affirmed.

## LexisNexis® Headnotes

Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan Administration > Diversification Rule

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

**HN1** The Employee Retirement Income Security Act of 1974 (ERISA) subjects plan fiduciaries to a duty of prudence. *29 U.S*.C.S. § 1104(a)(1). This generally requires diversification. But to solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees, Congress established a special kind of ERISA plan called an Employee Stock Ownership Plan (ESOP). ESOPs are designed to invest primarily in qualifying employer securities, *29 U.S*.C.S. § 1107(d)(6)(A), rather than to diversify across securities of many companies. An ESOP fiduciary's decision to remain invested in employer securities is presumptively prudent.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan Administration > Diversification Rule

**HN2** The Employee Retirement Income Security Act of 1974 (ERISA) requires the fiduciary of a pension plan to act prudently in managing the plan's assets. *29 U.S*.C.S. § 1104(a). ERISA imposes a prudent person standard by which to measure fiduciaries' investment decisions and disposition of assets and also imposes other obligations. A fiduciary's investments are prudent

**APP-7**

Case 4:14-cv-00959-O   Document 122   Filed 11/16/15   Page 12 of 20   PageID 2559

Page 2 of 10

2015 U.S. App. LEXIS 19536, *1; 2015 FED App. 0274P (6th Cir.), **Cir.)

if he has given appropriate consideration to those facts and circumstances that are relevant to the particular investment involved and has acted accordingly. 29 C.F.R. § 2550.404a-1(b)(1). Appropriate consideration includes a determination by the fiduciary that the particular investment is reasonably designed to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain, § 2550.404a-1(b)(2)(i), in addition to consideration of the portfolio's diversification, liquidity, and projected return relative to the plan's funding objectives, § 2550.404a-1(b)(2)(ii). In addition, under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. As a general matter, prudence requires diversifying the investments of the plan so as to minimize the risk of large losses. § 1104(a)(1)(C).

Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan Administration > Diversification Rule

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

**HN3** See 29 U.S.C.S. § 1104(a)(1).

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

**HN4** To accommodate Congress's endorsement of corporate employees owning corporate stock, the courts have adopted a presumption that an Employee Stock Ownership Plan fiduciary's decision to remain invested in employer securities is reasonable.

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan Administration > Diversification Rule

**HN5** The same standard of prudence applies to all Employee Retirement Income Security Act of 1974 fiduciaries, including Employee Stock Ownership Plan (ESOP) fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings.

Civil Procedure > Appeals > Summary Judgment Review > Standards of Review

Civil Procedure > Appeals > Standards of Review > De Novo Review

**HN6** Because a grant of summary judgment is reviewed de novo, the appellate court may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court.

Civil Procedure > Appeals > Standards of Review > General Overview

**HN7** Federal appellate courts review lower courts' judgments.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

**HN8** The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment. In other words, courts must focus on whether the fiduciary engaged in a reasoned decision-making process, consistent with that of a prudent man acting in a like capacity. Courts have readily determined that fiduciaries who act reasonably, i.e., who appropriately investigate the merits of an investment decision prior to acting, easily clear this bar.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

Pensions & Benefits Law > ... > Fiduciary Responsibilities > Plan Administration > Diversification Rule

**HN9** The duty of prudence does not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds. And while courts no longer may presume that Employee Stock Ownership Plan fiduciaries are prudent, a correct understanding of the prudence of relying on market prices may lead courts to a very similar result.

Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

Pensions & Benefits Law > ... > Pension Benefit Plans > Eligible Individual Account Plans > Employee Stock Ownership Plans

Case 4:14-cv-00959-O Document 122 Filed 11/16/15 Page 13 of 20 PageID 2560

Page 3 of 10

2015 U.S . App . LEXIS 19536, *1; 2015 FED App. 0274P (6th Cir.), **Cir.)

**HN10** A plaintiff claiming that an Employee Stock Ownership Plan's investment in a publicly traded security was imprudent must show special circumstances to survive a motion to dismiss.

> Business & Corporate Compliance > ... > Fiduciaries > Fiduciary Responsibilities > Duty of Prudence

**HN11** A court must evaluate the prudence or imprudence of a fiduciary's conduct as of the time it occurred, not post facto.

**Counsel:** ARGUED: Deborah Clark-Weintraub, SCOTT+SCOTT, LLP, New York, New York, for Appellants.

Wilber H. Boies, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois, for Appellee.

ON BRIEF: Deborah Clark-Weintraub, SCOTT+SCOTT, LLP, New York, New York, Geoffrey M. Johnson, SCOTT+SCOTT, LLP, Cleveland Heights, Ohio, for Appellants.

Wilber H. Boies, Michael S. Yellin, Jennifer Aronoff, MCDERMOTT WILL & EMERY LLP, Chicago, Illinois, James D. VandeWyngearde, PEPPER HAMILTON LLP, Southfield, Michigan, for Appellee.

**Judges:** BOGGS, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. WHITE, J., delivered a separate dissenting opinion.

**Opinion by:** BOGGS

## Opinion

 [**2] BOGGS, Circuit Judge. This case requires us to apply recent developments in the law of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. **HN1** ERISA subjects plan fiduciaries to a duty of prudence. 29 U.S.C. § 1104(a)(1). This generally requires diversification. But to "solve the dual problems of securing capital funds for necessary capital growth and of bringing about stock ownership by all corporate employees," Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 2466, 189 L. Ed. 2d 457 (2014), Congress [*2] established a special kind of ERISA plan called an Employee Stock Ownership Plan (ESOP). ESOPs are "designed to invest primarily in qualifying *employer* securities," 29 U.S.C. § 1107(d)(6)(A) (emphasis added), rather than to diversify across securities of many companies. In 1995, the Third Circuit adopted a presumption that an ESOP fiduciary's decision to remain invested in employer securities is prudent. Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995), overruled by Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457. We adopted that presumption of prudence later that year. Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995), overruled by Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457.

This case concerns an ESOP for employees of General Motors (GM). In 2008, GM faced severe business problems that resulted, ultimately, in its bankruptcy. *Cf. Int'l Union, UAW v. GM, 612 Fed. Appx. 803, 2015 WL 2239507, at*1-4 (6th Cir. 2015)* (reciting the history of certain GM business problems). Those events gave rise to this case. Plaintiffs-Appellants Raymond M. Pfeil and Michael Kammer (Pfeil) were GM employees who, prior to GM's most recent financial difficulties, elected to invest in the GM ESOP. Defendant-Appellee State Street Bank (State Street) served as fiduciary of certain pension plans, including the Common Stock Plan, for employees of GM.

The Common Stock Plan lost money in 2008. But State Street declined to stop buying GM stock until November 8, 2008, and did not divest the fund of (i.e., [*3] sell) GM stock until March 31, 2009. Just over a week later, Pfeil filed this suit against State Street, claiming that its investment decisions to continue to buy and also to decline to sell GM common stock during certain dates in 2008 were actionably imprudent under ERISA. In 2010, the district court [**3] dismissed the suit on State Street's motion, applying the presumption of prudence to the behavior of ESOP fiduciaries. On February 22, 2012, we reversed, holding that the presumption of prudence did not apply earlier than the summary-judgment stage of proceedings. *Pfeil v. State Street Bank and Trust Co., 671 F.3d 585 (6th Cir. 2012)*, overruled by *Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457*. On remand, the parties agreed to certify a class. RE 81. The Class Period extended from July 15, 2008 to March 31, 2009. After class certification, State Street moved for summary judgment. The district court, applying the presumption of prudence at the summary-judgment stage, granted State Street's motion. Pfeil timely appealed.

After *Pfeil's* first appearance before us, but before the district court's grant of summary judgment, we applied in a similar case the rule that *Pfeil* had announced, reversing a district court's grant of a motion to dismiss

on presumption-of-prudence grounds. *Dudenhoefer v. Fifth Third Bancorp, 692 F.3d 410, 418 (6th Cir. 2012)*. The Defendant-Appellee **[*4]** fiduciary in that case petitioned for certiorari. The Supreme Court granted the petition and, reversing our judgment, abrogated the "presumption of prudence" doctrine altogether. *Dudenhoeffer, 134 S. Ct. at 2467*.[1] The Supreme Court remanded the case. That case is currently pending in our court.

Here, we affirm the district court's grant of summary judgment. During the class period, State Street's managers repeatedly discussed at length whether to continue the investments in GM that are at issue in this case. Given the prudent process in which State Street engaged, Pfeil failed to demonstrate a genuine issue about whether State Street satisfied its statutory duty of prudence.

I

The purpose of the GM Common Stock Fund was to enable Participants to acquire an ownership interest in General Motors. The investment was to be without regard to the risk profile. Only if a GM employee opted to invest in the GM Common Stock Fund were his or her **[**4]** investments placed in that fund; if an employee did not elect **[*5]** an option, the investments were placed in a different fund.

The GM Common Stock Fund's fiduciary was State Street, which served in that capacity for many similar funds. State Street employs a formal, three-tiered structure and process for the exclusive purpose of monitoring and evaluating company stock funds. The first tier is the Company Stock Group, which, through daily monitoring and ongoing research and analysis to maintain awareness of the financial environment impacting a company stock, has a comprehensive process to determine if a company stock requires additional monitoring. The second tier, the Stock Review Committee, provides the aforementioned additional monitoring, which includes monthly meetings at which a Company Stock Group officer provides a detailed company-specific report including at least nine specific pieces of information. Based on a review of the facts and circumstances, the Stock Review Committee determines if a company stock should be elevated for further review and action by the Independent Fiduciary Committee, the third tier of the company stock process. Together, these three committees discussed GM stock, in relation to the GM company stock fund, fifty-eight **[*6]** times between January 2008 and March 31, 2009.

On March 12, 2008, the Independent Fiduciary Committee met to discuss a number of companies in which State Street's funds had invested. At that meeting, Sydney Marzeotti and Denise Sisk, Vice Presidents, presented information on the performance of General Motors stock and business factors that might have influenced that performance. Between that meeting and the end of July, the Stock Review Committee met five times. These meetings were substantial. For example, at least fourteen people attended the meeting on June 26, according to State Street records, including Marzeotti and Sisk. The minutes and materials of that meeting recited, among other details, when and why State Street added GM to the Stock Review List, details of GM's business situation and analysis thereof, GM's debt rating, a description of GM's business, performance information of GM and its stock, State Street's role, and litigation pending against GM.

**[**5]** Events in 2008 imperiled GM's ability to continue as a going concern.

> On July 15, 2008, GM Chief Executive Officer Rick Wagner announced that GM needed to implement a restructuring plan to combat Second Quarter 2008 losses that **[*7]** he described as "significant" and to stem an impending liquidity crisis. . . . [O]n August 1, 2008, GM announced a Third Quarter 2008 net loss of $15.5 billion. Analysts projected that GM was on track to run out of cash by the First Quarter of 2009.

Op. and Order, R. 156 at 4-5 (citations omitted). The Stock Review Committee met again on August 28, considered the August 1 announcement, and voted in favor of the recommendation to retain GM Common Stock on the Stock Review list. The Stock Review Committee met twice in September. On October 30, the Stock Review Committee met again, voting again in favor of the recommendation to retain GM stock on the Stock Review List. In other words, the committee actively decided not to stop buying, let alone to sell, but also decided to maintain a level of internal scrutiny on the investment.

---

[1] John Dudenhoefer the plaintiff-appellant named in our case. The Supreme Court caption suggests that the respondent's last name is Dudenhoeffer. We cite our opinion as *Dudenhoefer* and the Supreme Court's opinion as *Dudenhoeffer*.

Ultimately, State Street did change its buying behavior. In a November 2, 2008, notice to participants and beneficiaries, State Street temporarily suspended the purchases of the GM Common Stock Fund until further notice, observing that "it is not appropriate at this time to allow additional investments by participants." On November 5, 2008, the Independent Fiduciary [*8] Committee met on the subject of its Quarterly Review of Public Company Stocks. Twelve people attended. Minutes from that meeting reflect that "General Motors was presented [sic]. . . . Current GM's cash burn is approximately $1 billion a month. Sales are at worst level since 1983. [Monet] Ewing [of State Street] described the relationship with General Motors."

GM's business situation continued to worsen. By November 10, 2008, GM acknowledged that its auditors had substantial doubt regarding GM's ability to continue as a going concern. Thereafter, perhaps not surprisingly, the Independent Fiduciary Committee met about GM much more frequently. Between November 10, 2008 and March 31, 2009, the Independent Fiduciary Committee met in person or via conference call forty-one times to discuss GM; the Stock Review Committee also met. On March 31, 2009, State Street decided to divest the GM stock held in the fund, with the process completed by April 24, 2009.

[**6] On June 9, 2009, Pfeil filed this suit under Section 502 of ERISA individually and on behalf of plan participants in and beneficiaries of General Motor Corporation's main 401(k) plans. The one-count complaint alleges a breach of fiduciary duty by State Street, [*9] as an independent fiduciary, for failure to manage the Plan's assets prudently, in violation of Section 404 of ERISA.

II

HN2 ERISA "requires the fiduciary of a pension plan to act prudently in managing the plan's assets." Dudenhoeffer, 134 S. Ct. at 2463. See also 29 U.S.C. § 1104(a).[2] [ERISA] "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets" and also imposes other obligations. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 143 n.10, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985). A fiduciary's investments are prudent if he "[h]as given appropriate consideration to those facts and circumstances that . . . are relevant to the particular investment . . . involved . . . and [h]as acted accordingly." 29 C.F.R. § 2550.404a-1(b)(1). "Appropriate consideration" includes "[a] determination by the fiduciary that the particular investment . . . is reasonably designed . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain," id. (b)(2)(i), in addition to consideration of the portfolio's diversification, liquidity, and projected return relative to the plan's funding objectives, id. (b)(2)(ii). In addition, "under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828-29, 191 L. Ed. 2d 795 (2015) [**7] . As a general matter, prudence requires [*10] "diversifying

---

[2] **HN3** 29 U.S.C. § 1104(a)(1) provides that, subject to other federal provisions,

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
> **(A)** for the exclusive purpose of:
>
> **(i)** providing benefits to participants and their beneficiaries; and
>
> **(ii)** defraying reasonable expenses of administering the plan;
>
> **(B)** with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> **(C)** by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> **(D)** in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

the investments of the plan so as to minimize the risk of large losses . . . ." 29 U.S.C. § 1104(a)(1)(C).

**HN4** To accommodate Congress's endorsement of corporate employees owning corporate stock, we adopted a presumption that an ESOP "fiduciary's decision to remain [*11] invested in employer securities was reasonable." Kuper v. Iovenko, 66 F.3d 1447, 1459 (6th Cir. 1995) (adopting the standard set forth in Moench v. Roberston, 62 F.3d 553, 571 (3d Cir. 1995)).

Here, Pfeil

> raise[d] two reasons why Defendant breached its fiduciary duties [of prudence]: 1) State Street continued to hold GM stock long past the point when there was overwhelming evidence in the public domain raising serious question concerning GM's short-term viability as a going concern without resort to bankruptcy proceedings, which rendered GM stock imprudent to hold as an investment . . . ; and 2) State Street kept the GM Stock Fund invested in GM stock even though there was overwhelming evidence in the public domain raising a serious risk that GM's existing equity would be substantially diluted and stockholders' shares would be rendered essentially worthless even if GM received assistance from the federal government.

Op. and Order, R. 156 at 13. The district court observed that "the evidence submitted, including the number of meetings the Independent Fiduciary Committee held during the Class Period, shows that State Street was prudent and deliberate in its decision making. . . . Large investors during the Class Period continued to hold GM stock and, in some instances, increased their holdings . . [*12] . ." Because Pfeil failed to rebut the presumption that State Street satisfied its duty of prudence, the district court granted State Street's motion for summary judgment. On appeal, we reversed and remanded, holding that the presumption of prudence applied only at summary judgment and beyond, not at the motion-to-dismiss stage of proceedings, and that the presumption only required the plaintiff to establish that "a prudent fiduciary acting under similar circumstances would have made a different investment decision." Pfeil, 671 F.3d at 592-96.[3]

Thereafter, we applied our rule to a similar case, reversing a district court's grant of the motion to dismiss of another ESOP fiduciary. Dudenhoefer, 692 F.3d at 418. The Supreme Court granted that other fiduciary's petition for certiorari and abrogated the "presumption of [**8] prudence" doctrine. Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457. The Dudenhoeffer Court held that **HN5** "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under *no duty* to diversify the ESOP's holdings." Id. at 2467 (emphasis added).

Dudenhoeffer prevents us from affirming the judgment of the court below on presumption-of-prudence [*13] grounds. But **HN6** "because a grant of summary judgment is reviewed *de novo*, [we] may affirm the judgment of the district court on any grounds supported by the record, even if they are different from those relied upon by the district court." Kennedy v. Superior Printing Co., 215 F.3d 650, 655 (6th Cir. 2000); *see also* Jennings v. Stephens, 135 S. Ct. 793, 799, 190 L. Ed. 2d 662 (2015) (observing that **HN7** "federal appellate courts . . . review lower courts' . . . *judgments*").

We evaluate State Street's actions according to a prudent-process standard. **HN8** "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." Hunter v. Caliber Sys., Inc., 220 F.3d 702, 723 (6th Cir. 2000) (internal quotation marks omitted). In other words, we must "focus . . . on whether the fiduciary engaged in a reasoned decision[-]making *process*, consistent with that of a prudent man acting in [a] like capacity." Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014) (emphasis added) (internal quotation marks omitted) (emphasis added). "[C]ourts have readily determined that fiduciaries who act reasonably—i.e., who appropriately *investigate the merits of an investment decision* prior to acting—easily clear this bar." Id. at 358 (emphasis added) (holding imprudent a decision [*14] made "with virtually *no* discussion or analysis" (emphasis added)); *see* id. at 360 (observing that the brief of the fiduciary in that case did not "grappl[e] with its failure to conduct *any* investigation"). Here, summary judgment to State Street was appropriate if Pfeil failed to demonstrate a genuine issue of material fact concerning the methods of State Street's investigation of the merits of investing in GM, or the appropriateness of those methods.

---

[3] This holding brought us into conflict with other courts of appeals. *See, e.g.,* In re Citigroup ERISA Litig., 662 F.3d 128 (2d Cir. 2011), *overruled by* Dudenhoeffer, 134 S. Ct. 2459.

[**9] III

A

Even after *Dudenhoeffer*, **HN9** the duty of prudence "do[es] not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds." *Tatum, 761 F.3d at 356*. And while courts no longer may *presume* that ESOP fiduciaries are prudent, the *Dudenhoeffer* court suggested that a correct "understanding of the prudence of relying on market prices" may lead courts to a very similar result. *Dudenhoeffer, 134 S. Ct. at 2472*. The *Dudenhoeffer* Court instructed us as follows:

> [T]he motion to dismiss for failure to state a claim. . . . which gave rise to the lower court decisions at issue here, requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently. Because the content of the duty of prudence turns on the circumstances [*15] . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific.
>
> The District Court in this case granted petitioners' motion to dismiss the complaint because it held that respondents could not overcome the presumption of prudence. The Court of Appeals, by contrast, concluded that no presumption applied. And we agree with that conclusion. The Court of Appeals, however, went on to hold that respondents had stated a plausible duty-of-prudence claim. The arguments made here, along with our review of the record, convince us that the judgment of the Court of Appeals should be vacated and the case remanded. On remand, the Court of Appeals should apply the pleading standard . . . in light of the following considerations.
>
> . . . .
>
> In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances. . . .
>
> In other words, a fiduciary usually is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks [*16] traded on it that is available to him. . . .
>
> . . . [T]he Court of Appeals held that the complaint stated a claim because respondents allege[d] that [the fiduciary was] aware of the risks of [investing in the company's business], and that such risks made [the] stock an imprudent investment. The Court of Appeals did not point to any special circumstance rendering reliance on the market price imprudent. The court's decision to deny dismissal therefore appears to have been based on an erroneous understanding of the prudence of relying on market prices.

[**10] *Dudenhoeffer, 134 S. Ct. at 2471-72* (internal quotation marks and citations omitted). Another court recently considered the implication of this language, observing that the "excessively risky" character of investing ESOP funds in stock of a company experiencing serious threats to its business in 2008 "is accounted for in the market price, and the Supreme Court held that fiduciaries may rely on the market price, absent any special circumstances affecting the reliability of the market price." *In re Citigroup ERISA Litig., No. 11 CV 7672 JGK, 2015 U.S. Dist. LEXIS 63460, 2015 WL 2226291, at *14 (S.D.N.Y. May 13, 2015)*.

We interpret this to mean, and now hold, that **HN10** a plaintiff claiming that an ESOP's investment in a publicly traded security was imprudent must show special circumstances [*17] to survive a motion to dismiss. *Cf. Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 706 (7th Cir. 2008)* (cautioning against the "assertion that pension fiduciaries have a duty to outsmart the stock market") (Easterbrook, J.). This rule accords with Modern Portfolio Theory (MPT). MPT "rests on the understanding that organized securities markets are so efficient at discounting securities prices that the current market price of a security is highly likely already to impound the information that is known or knowable about the future prospects of that security." John H. Langbein et al., Pension and Employee Benefit Law 634. "[C]ourts have increasingly come to the view that the prudence norm in trust law and in ERISA has absorbed the main precepts of MPT." *Ibid.*; *cf. Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313 (5th Cir. 1999)*. We do not now decide whether a fiduciary's complete failure to investigate a publicly traded investment might constitute a circumstance sufficiently special for a claim of imprudence to survive a motion to dismiss; the amount of investigation here takes this case out of that realm.

B

Pfeil alleges that, in response only to various *public announcements* about GM's future, State Street's investment strategy failed to function as a prudent process if it did not recognize "that the market was over- or undervaluing" [*18] GM common stock. Cf. *Dudenhoeffer, 134 S. Ct. at 2471*. This allegation is implausible. *Ibid.* Pfeil failed to show a special circumstance such that State Street should not have relied on market pricing.

 [**11]  Pfeil argues that State Street knew or should have known circumstances about GM's business and financial condition on each of four dates in 2008:

> (1) July 15 (State Street internally assessed GM as a risky investment);
>
> (2) September 22 (GM no longer could access capital markets);
>
> (3) November 21 (State Street ceased purchasing GM Common Stock, but continued maintain the Fund's existing holdings); and
>
> (4) December 12 (State Street's financial advisors observed that, without federal assistance, GM would run out of cash by the end of the year, and that with it, GM's existing equity will be substantially diluted).

Pfeil's argument, stripped of its particulars, rests on a sleight of hand: on each of these dates, it would have been prudent, in hindsight, for State Street to decide to sell, and that decision would have resulted in less loss; State Street did not make such a prudent decision; therefore, what State Street did was imprudent. But State Street's decisions were not imprudent or unreasonable simply because it could have [*19] made a different decision in response to GM's financial difficulties. See *Hunter, 220 F.3d at 722 (6th Cir. 2000)*. **HN11** We must evaluate the prudence or imprudence of State Street's conduct as of "the time it occurred," not "post facto." *Ibid.* (citing *Katsaros v. Cody, 744 F.2d 270, 279 (2d Cir. 1984)*, and *Donovan v. Mazzola, 716 F.2d 1226, 1232 (9th Cir. 1983))*.

Pfeil's argument runs into another logical problem. The "decision" that he criticizes was State Street's decision *not* to act on each of four dates. But why stop at four? In a sense, an ESOP plan fiduciary is always deciding not to divest. Pfeil does not explicitly claim that the ESOP fiduciary must go through constant processes to ensure that these decisions not to divest are prudent. But Pfeil does not offer a legal reason why the four events he has chosen suffice to trigger a particular reevaluation process. To the extent that he relies on internal State Street communications, his implied command would intolerably bind ESOP fiduciaries: if they discuss internally the impact of an event on a fund's holdings, they trigger a requirement that they engage in a formal process. To the extent that Pfeil instead relies on the observation that, after the four events it picked, GM's stock decreased in value, Pfeil invites us to engage in precisely the sort of post-hoc inquiry that [*20] the doctrine rightly forbids.

 [**12]  We agree with the dissent's suggestion that, although "a stock's price accurately reflects the company's risk of failing," an investor can expect, at any given time, that the value of the cash for which he can sell a particular stock may be less volatile than the same of the stock itself. *Post*, at 14. We also agree that, "The market includes participants with various levels of risk tolerance and various types of portfolios. What is prudent for one type of investor and one type of portfolio may be imprudent for others." *Ibid.* But an ESOP's investment goals are to maintain, within reason, ownership of a particular employer's security. Whatever evils the dissent identifies are endemic to the ESOP form established by Congress. A benefit of employees investing in their employer is that when the employer does well, the employees do well. A risk is that when the employer goes bankrupt, the employees do poorly.

IV

Congress has exempted ESOP fiduciaries from the duty to diversify; indeed, Congress created ESOPs so that they would *not* diversify. The Supreme Court coupled its recent judgment that ESOPs are not entitled to a special presumption of prudence with a reminder that, [*21] absent extraordinary circumstances, public markets for stocks like GM incorporate all of the public information about those companies.

Another court, evaluating a case similar to this one, recently observed that

> [t]he defendant fiduciaries . . . were between the "rock and a hard place" discussed in *Dudenhoeffer*: If [fiduciaries] keep[] investing and the stock goes down, the fiduciaries may be sued for acting imprudently in violation of *§ 1104(a)(1)(B)*, as was the case here. [B]ut if [the fiduciaries] stop investing and the stock goes up, . . . the fiduciaries may be

sued for disobeying the plan documents in violation of § 1104(a)(1)(D). Although the Supreme Court deemed a presumption of prudence too broad a response to these concerns, these concerns underlie the reasoning behind the general rule rendering suits implausible when they allege that the fiduciaries should have been able to beat the market.

In re Citigroup ERISA Litig., 2015 U.S. Dist. LEXIS 63460, 2015 WL 2226291, at *14 (internal quotation marks and citations omitted). State Street served as the fiduciary that planned to invest only in GM common stock. Pfeil chose to invest in this fund, although others were available.

The doctrine requires us to evaluate State Street's conduct at the time it occurred, so the mere fact that GM's stock value decreased **[*22]** after certain dates does not affect our judgment. To **[**13]** fulfill its responsibilities, State Street discussed GM stock scores of times during the class period. State Street's managers repeatedly discussed at length whether to continue the investments in GM that are at issue in this case. State Street's Independent Fiduciary Committee held more than forty meetings during the Class Period of less than nine months to discuss whether to retain GM stock. At those meetings, State Street employees discussed the performance of General Motors, both its stock and its business, and factors that may have affected that performance. Meetings often culminated in decisive votes, ultimately to divest the fund of GM stocks. It was advised by outside legal and financial advisors. In documents filed with the district court, State Street's experts opined that State Street's process for monitoring GM (and other) stock was prudent. And other experts—fiduciaries of other pension plans and non-pension-plan investment funds—decided, like State Street, to hold GM Common Stock on each of the four "imprudent dates" chosen by Pfeil. Given the prudent process in which State Street engaged, Pfeil failed to demonstrate **[*23]** a genuine issue as to whether State Street satisfied its duty of prudence. We hold that State Street's actual processes demonstrated prudence, and the decision of other expert professionals both to invest and not to divest on or near the dates that State Street made those decisions demonstrates the reasonable nature of those decisions.

The record here presents no factual questions material to the outcome of this case. And, to the extent the district court enjoys an advantage over us in evaluating the merits of Pfeil's case under the correct legal standard, the benefit of judicial economy outweighs that advantage. Even viewed in the light most favorable to Pfeil, State Street's actions were not actionably imprudent.

We AFFIRM the judgment of the district court.

**Dissent by:** HELENE N. WHITE

## Dissent

 **[**14]** HELENE N. WHITE, dissenting. I respectfully dissent. The majority recognizes that the district court applied the presumption of prudence rejected in *Fifth Third Bancorp v. Dudenhoeffer, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014)*, but determines that its own analysis justifies affirmance.

The majority first adopts a rule derived from *In re Citigroup ERISA Litigation, No. 11 CV 7672 JGK, 2015 U.S. Dist. LEXIS 63460, 2015 WL 2226291, at *14 (S.D.N.Y. May 13, 2015)*, and the Modern Portfolio Theory (MPT) that effectively immunizes fiduciaries from imprudence claims relating to publicly **[*24]** traded securities in the absence of special circumstances, including, perhaps, the complete failure to investigate. The foundation for this holding is the Supreme Court's observation in *Dudenhoeffer* that the market price of a publicly traded security is highly likely to reflect the risk and future prospects of the company. But, Plaintiffs here do not assert that the market did not reflect the true value of the GM stock, and it is unclear how this new holding applies. I assume the majority concludes that because any transaction, either executed or eschewed, would be at the market price, at any given point in time, the ESOP was in the same position it would have been had the transaction been executed; it either had cash or stock of the same value. Further, if GM's situation was so dire at any of the times asserted by Plaintiffs, it would have been reflected in the price of the stock. But, Plaintiffs do not challenge either of these propositions and do not claim that State Street should have discerned something the market did not.

One can concede that the market is generally efficient in pricing stocks without concluding that all decisions to buy, sell or hold are therefore prudent. The **[*25]** market includes participants with various levels of risk tolerance and various types of portfolios. What is prudent for one type of investor and one type of portfolio may be imprudent for others. Further, the fact that a stock's

price accurately reflects the company's risk of failing does not mean that it is prudent to retain the stock as that possibility becomes more and more certain and buyers are willing to pay less and less for a stake in the upside potential. In short, I think the MPT is inapplicable here.

 **[**15]** The majority also concludes that the process employed by State Street was prudent as a matter of law. I might agree were it not for the fact that Plaintiffs presented evidence that the decision makers were operating under an incorrect standard. A necessary part of a prudent decision-making process is the yardstick applied to the information yielded by prudent investigation and consideration. Here, members of the Independent Fiduciary Committee (IFC) testified that State Street was required, per its Engagement Agreement,[1] to hold GM stock until a GM bankruptcy was "imminent," (Brandhorst Deposition, PID 5712), or State Street reached a "clear conclusion" that GM would file for **[*26]** bankruptcy (Blake Deposition, PID 5697). However, *Dudenhoeffer* made clear that

> the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary. See also *§ 1110(a)* (With irrelevant exceptions, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility . . . for any . . . duty under this part shall be void as against public policy"). This rule would make little sense if, as

petitioners argue, the duty of prudence is defined by the aims of the particular plan as set out in the plan documents, since in that case the duty of prudence could never conflict with a plan document.

*Dudenhoeffer, 134 S. Ct. at 2468*. Therefore, State Street's reliance on the plan documents, rather than the fiduciary duty of prudence under the circumstances, was misplaced, regardless whether its interpretation of the documents was correct.

Finally, State Street and the majority rely on the actions of other pension-fund fiduciaries who continued to buy or hold GM stock as evidence that the stock remained a prudent investment at the relevant times. However, the record does not establish that the fiduciary decisions were made in a similar context. ERISA excuses fiduciaries of ESOP plans from any duty to diversify, but nevertheless imposes a duty of prudence under the circumstances. "Under the circumstances" is not an empty phrase; the Supreme Court explained in *Dudenhoeffer* that **[**16]** "the appropriate inquiry will necessarily be context specific. *Id. at 2471*. Here, the circumstances involved an ESOP; the nature of these other portfolios and the measures taken to mitigate risk  **[*28]** are unknown. Thus, that other plans retained GM stock in their portfolios is not dispositive. There is at least a question of fact whether State Street satisfied its duty of prudence under the circumstances.

I would reverse and remand for further proceedings.

---

[1] The engagement agreement stated that the Fund was to

> continue to be invested exclusively in Company Stock . . . without regard to (A) the diversification of assets of each Plan and Trust, (B) the risk profile of Company Stock, (C) the amount of income provided by Company **[*27]** Stock, or (D) the fluctuation in the fair market value of the company stock, unless State Street, using an abuse of discretion standard, determines from reliable public information that (i) there is a serious question concerning the Company's short term viability as a going concern without resort to bankruptcy proceedings; or (ii) there is no possibility in the short term of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings.