**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|   |   |
|---|---|
| IN RE 2014 RADIOSHACK ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | ) ) ) ) ) ) ) ) ) )   MASTER FILE NO. 4:14-cv-00959-O |

**REPLY IN SUPPORT OF THE RADIOSHACK DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT
AND TO STRIKE JURY DEMAND**

**MORGAN, LEWIS & BOCKIUS LLP**

Ellen L. Perlioni
TX ID No. 00794155
1717 Main Street, Suite 3200
Dallas, TX 75201
Phone:  214.466.4000
Fax:  214.466.4001
Email:  ellen.perlioni@morganlewis.com

Brian J. Ortelere (*admitted pro hac vice*)
PA ID No. 46464
Jeremy P. Blumenfeld (*admitted pro hac vice*)
PA ID No. 90785
1701 Market Street
Philadelphia, PA 19103
Phone:  215.963.5150
Fax:  215.963.5001
Email:  bortelere@morganlewis.com

Matthew A. Russell (*admitted pro hac vice*)
IL ID No. 6290632
77 W. Wacker Drive
Chicago, IL 60601
Phone:  312.324.1771
Fax:  312.324.1001
Email:  marussell@morganlewis.com

*Counsel for Defendants RadioShack 401(k)
Plan Admin. Committee, RadioShack Puerto
Rico Plan Admin. Committee, and the
Individual Defendants*

I.  **Plaintiffs' Claims Are Time-Barred Because They Had Actual Knowledge Of The Events Cited In Their Complaint And Knew Those Events Could Support A Claim For Breach Of Fiduciary Duty More Than Three Years Before Filing This Lawsuit.**

Plaintiffs allege that by no later than November 30, 2011, RadioShack stock was and remained an imprudent investment for the Plans. Plaintiffs, however, had "actual knowledge" of their alleged ERISA violations more than three years before filing suit, which they obtained from widely-available public information spelled out in their own Complaint (Dkt. 66, "ACC"). More importantly, Plaintiffs participated in a nearly identical lawsuit against RadioShack that settled in February 2011, just three years and nine months *before* the present claim was filed, wherein they were specifically apprised of the contours of the claims they now recycle here. *In re RadioShack Corp. ERISA Litig.* ("*RadioShack I"*), No. 4:08-md-01875 (N.D. Tex.) (Dkts. 81-2, 85-2, 88).[1] To the extent necessary, that indisputable fact, which Plaintiffs ignore, compels dismissal.

For purposes of 29 U.S.C. § 1113(2), "actual knowledge" means that Plaintiffs knew "not only of the events constituting breach, but also that those events supported a claim for breach of fiduciary duty or violation under ERISA." *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 339 (5th Cir. 1999); *see also Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995). In other words, their claim accrued three years from when they knew: (1) of the alleged facts underlying their claim, and (2) that those alleged facts gave rise to a potential legal action under ERISA. Plaintiffs' knowledge here indisputably extended to both prongs of this standard.

In their Opposition (Dkt. 110), Plaintiffs do not squarely challenge, because they cannot, their myriad admissions that they possessed all factual information necessary to alert them that continued investment in RadioShack stock was supposedly imprudent. Without belaboring points previously made, the Complaint cites abundant examples of publicly-available

---

[1] The Court may take judicial notice of "public court filings" in deciding a motion to dismiss. *Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of Am.*, 439 F. App'x 359, 363 (5th Cir. 2011). The Notice of Class Action Settlement ("Class Notice") can be found here: http://www.gilardi.com/pdf/radioshknot.pdf

information compelling this conclusion.  Pursuant to *Maher*, the opinion upon which Plaintiffs primarily rely, a finding of actual knowledge arises where, as here, a plaintiff has "actual knowledge of the facts necessary to understand that a claim existed, knowledge of the lawful effect or . . . knowledge of any actual harm."  68 F.3d at 955.  Plaintiffs here knew all three.  In this ERISA "stock drop" suit where Plaintiffs rely solely on publicly-available information, their own Complaint confirms that beginning certainly no later than January 18, 2011 (*id.* ¶ 165), they had the "facts," the "lawful effect," and the "actual harm."  (*See* Dkt. 94, Defs.' Mot. to Dismiss ("Mot.") at 4-6.)[2]  Equally important, to excuse delay in bringing a lawsuit in these circumstances would only reward Plaintiffs' "wait and see" approach in hopes the stock rebounds (despite knowing it was supposedly "imprudent" already), undermining both the policy considerations animating the statute of limitations and the causation defense outlined below.

To the extent more is required, Plaintiffs each participated in a class action pressing virtually identical breach claims, meaning they knew well the *legal* grounds for the *precise* ERISA claims renewed here.  While a plaintiff must know "all material facts and that they could seek legal recourse for an ERISA violation," this does not mean "that the plaintiff must know the precise cause of action."  *Babcock*, 182 F.3d at 340.  Rather, "veiled references to possible legal action" reveal a plaintiff's "belief that they had legal recourse." *Id*. at 339.  Through their prior participation in an almost indistinguishable lawsuit just a few years ago, combined with the litany of public information they now argue establishes their claims, Plaintiffs possessed ample information to understand everything they needed to sue well before November 26, 2011.

---

[2]  Plaintiffs' assertion (at 8) that they did not have "actual knowledge" of their claims until they received documents in this lawsuit on March 2015 is nonsensical.  Of course, Plaintiffs necessarily had knowledge of these claims in order to include them in their Complaint; how could they obtain "actual knowledge" of a claim *after* they had already filed it?  Indeed, the first Consolidated Complaint, filed February 9, 2015, alleged that Defendants failed to investigate the prudence of RadioShack stock.  *See, e.g.*, Dkt. 39 ¶¶ 24, 303-04, 319, 364.  Under Plaintiffs' theory, one would never have "actual knowledge" of such a claim until filing suit and exchanging discovery, rendering ERISA's three-year limitations period superfluous.

More specifically, Plaintiffs' current claims mirror those brought in the prior lawsuit, which alleged that "[p]rudent fiduciaries should have closed the Plans to further investment in RadioShack stock at least as early as 2003," based upon, *inter alia*, diminishing demand and outdated products. *Cormier v. RadioShack Corp.*, No. 4:07-cv-285 (N.D. Tex.) (Dkt. 1 ¶¶ 67, 84). *Cormier* was consolidated into a single multi-district litigation that ultimately settled, triggering Rule 23's class action notice requirements. Fed. R. Civ. P. 23(c), (e). The preliminary settlement agreement, filed September 30, 2010, included a draft Class Notice, *RadioShack I*, Dkt. 81-2, which was then distributed to Plaintiffs before final approval on February 8, 2011, *id.* Dkts. 85-2, 88—more than three-and-a-half years *before* this lawsuit.

The Class Notice fully apprised all class members—including Plaintiffs—of the ERISA claims in that matter and how they relate to the underlying facts alleged:

> Plaintiffs' Complaint was filed on behalf of a class of all participants in and beneficiaries of the Plans to recover losses caused by alleged breaches of fiduciary duty under ERISA. Plaintiffs allege that Defendants violated ERISA by, among other things, selecting and offering RadioShack common stock . . . as investment options to participants in the Plans because these options were, allegedly, overpriced and/or underperforming . . . Many participants in the Plan chose to allocate significant amounts of their individual contributions to RadioShack stock . . . . The Action claims that under ERISA, Defendants owed fiduciary duties of loyalty, care and prudence to the Plans, and that they allegedly violated those duties in connection with the Plans' investments in . . . RadioShack stock.

Class Notice, at 3. The Notice also explains that plaintiffs based their claims in the prior suit on many of the same public documents Plaintiffs cite here.[3] Further, the Notice repeatedly directed class members to contact class counsel with any questions and/or objections and twice included the names, addresses, phone numbers, and email addresses for all three law firms representing the class. *Id.* at 2, 5, 6. In the final order, this Court confirmed that the "form and methods of

---

[3] For example, the Notice explained (at 4) that "THE ACTION HAS BEEN AGGRESSIVELY LITIGATED," and "Class Counsel has obtained and reviewed thousands of pages of documents, including Plan-governing documents and materials, communications with participants in the Plans, [SEC] filings, press releases, public statements, news articles and other publications, and other documents regarding the matters that Plaintiffs allege made . . . Radio Shack stock . . . an imprudent investment."

3

notifying the Settlement Class of the terms and conditions of the proposed Stipulation met the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and any other applicable law, constituted the best notice practicable under the circumstances, and constituted *due and sufficient notice to all persons and entities entitled thereto*." *RadioShack I*, Dkt. 89 at 3 (emphasis added). Armed with knowledge of the *legal* basis for a fiduciary breach claim, coupled with the public *factual* information in the Complaint, Plaintiffs' claims are time-barred.

Moreover, not one of the cases Plaintiffs cite speak to the peculiar circumstances here, that is, knowledge gained through the settlement of a prior litigation. In *Ward v. Avaya*, 487 F. Supp. 2d. 467, 474 (D.N.J. 2007), for instance, the court rejected a limitations defense where the complaint merely stated that "an event took place on a certain date" and did "not establish that Plaintiff had knowledge of the event on that date." *Id.* Similarly, in *Kling v. Fidelity Management*, the court noted that financial decline of a company without more did not trigger the statute of limitations. 323 F. Supp. 2d 132, 137-38 (D. Mass. 2004). The cornucopia of facts spelled out in Plaintiffs' Complaint, however, demonstrates the untimeliness of this action either alone or considered alongside the prior lawsuit.[4]

Plaintiffs lastly argue that "even if Defendants' were otherwise correct, because of Defendants' ongoing conduct, Plaintiffs' claims are still timely," Opp. at 9, citing two inapposite opinions. In *Lenihan v. Boeing Co.*, plaintiff's claims were based on claims under the Equal Protection Act and Title VII, circumstances having no bearing on this ERISA lawsuit. 994 F. Supp. 776, 796 (S.D. Tex. 1998). The recent ruling in *Tibble v. Edison International*, 135 S. Ct.

---

[4] Plaintiffs also contend that *In re Citigroup ERISA Litigation*, 2015 WL 2226291 (S.D.N.Y. May 13, 2015), is dissimilar because "plaintiffs alleged a class period that began almost four years before the operative complaint was filed." Opp. at 9. Plaintiffs miss the point of that ruling, as the court there dismissed the claims as untimely because they were based on public information concerning events outside of the limitation period. 2015 WL 2226291 at *9 (noting that Citigroup's "perilous condition was 'abundantly clear'" at the start of the class period, based largely upon "Citigroup Stock's continuous decline in price per share, ratings agency down-grades, reports from numerous analysts recommending the sale of Citigroup stock, and the public failures of subprime mortgages in 2007").

1823 (2015), also is distinguishable as it addressed only ERISA's six-year statute of repose, 29 U.S.C. § 1113(1), not the three-year "actual knowledge" limitations period, *In re Citigroup ERISA Litig.*, 2015 WL 4071893, at *2-3 (S.D.N.Y. July 6, 2015) (distinguishing *Tibble* on this basis).

II.     **Plaintiffs Fail To State A Plausible Claim For Breach Of Fiduciary Duty To Prudently And Loyally Manage The Plans' Assets.**

Turning to the substance of Plaintiffs' claims, they incorrectly argue their "allegations are distinct" from those in the Supreme Court's ruling in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), because that case "addressed allegations of imprudence based on the contention that a stock's price was artificially inflated" in light of public information, whereas they allege RadioShack stock was an inherently risky investment, its decline was "inevitabl[e]," and bankruptcy was "painfully obvious" as early as Fall 2011. (Opp. at 11; ACC ¶¶ 12, 15, 23, 332, 359.) Plaintiffs are wrong both factually and legally. In fact, the *Dudenhoeffer* plaintiffs specifically alleged that the fiduciaries "should have known in light of publicly available information . . . that continuing to hold and purchase Fifth Third stock was imprudent," that the stock was "*excessively risky*," and that "a prudent fiduciary facing similar circumstances would not have stood idly by as the Plan's assets were decimated." *Id.* at 2464, 2471 (emphasis added).

More importantly, Plaintiffs posit a distinction without a difference. Squarely addressing claims that Fifth Third stock was "excessively risky," the Court held that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule." *Id.* at 2471. Nowhere did the Court ground its holding on the false distinction Plaintiffs propose; rather, it recognized that whether the stock is labeled as allegedly "overvalued" or "excessively risky," a fiduciary cannot be expected to outsmart the market and predict its future movement or second-guess the value assigned by an efficient market at a given

5

point in time.[5] As one district court put it recently, "risk is accounted for in the market price of a security, suggesting that plaintiffs' proffered distinction between 'riskiness' and 'valuation' claims is illusory." *Lehman Bros.*, 2015 WL 4139978, at *6.[6]

Thus, if the market should have known that RadioShack's bankruptcy was "inevitabl[e]" based on public information, it would have priced the stock accordingly as early as November 30, 2011, when it was in fact trading at **$11/share**. (*See* Mot. at 10.) Indeed, in *Dudenhoeffer* itself, the Court vacated the Sixth Circuit's determination that plaintiffs stated a viable imprudence claim even though Fifth Third stock dropped to as low as **$0.91/share** (*id.* at 16), finding the lower court's decision reflected an "erroneous understanding of the prudence of relying on the market." 134 S. Ct. at 2472; *see also Citigroup*, 2015 WL 2226291, at *4 (rejecting claim that Citi stock was "excessively risky" even though it dropped to $0.97/share,

---

[5] *See also, e.g.*, *Pfeil v. State Street Bank & Trust Co.*, 2015 WL 6874769, at *6-7 (6th Cir. Nov. 10, 2015) (equating allegations, like Plaintiffs' here, that fiduciaries responsible for General Motors' company stock fund knew from public information that GM was "a risky investment," it "no longer could access capital markets," and that "GM's existing equity will be substantially diluted" with a claim that fiduciaries "did not recognize that the market was over- or undervaluing GM common stock"); *In re Lehman Bros. Secs. & ERISA Litig.*, 2015 WL 4139978, at *6 (S.D.N.Y. July 10, 2015) (*Dudenhoeffer* "foreclose[s] breach of prudence claims based on public information irrespective of whether such claims are characterized as based on an alleged overvaluation or alleged riskiness of a stock").

[6] Plaintiffs quote selectively from the Seventh Circuit's decision in *Summers v. State Street Bank & Trust Company*, but that ruling—which affirmed summary judgment for the fiduciary—does not advance their claims. 453 F.3d 404 (7th Cir. 2006). *Summers* involved an ESOP through which United Air Lines employees owed *more than half* of the company's entire outstanding common stock, *id.* at 405, and the court cabined its ruling by observing both that a threat of United's bankruptcy "would be of little moment to people who held United stock as part of a diversified portfolio, because the risks of the various components of such a portfolio tend to cancel out," and that the "tension between the goal of protection against risk and the goal of a portfolio dominated by a single stock is not acute if the participants in the ESOP have adequate sources of income or wealth that are not correlated with the risk of that stock, so that the ESOP is not their primary financial asset." *Id.* at 409-10. That court cited *Steinman v. Hicks*, 352 F.3d 1101 (7th Cir. 2003), which observed that an ESOP fiduciary might be required to diversify "if the ESOP was the employees' *principal retirement asset* . . . and was *entirely invested* in the stock of their employer . . . , and their employer *was bought in a stock-for-stock deal*—so that *all the assets of the ESOP became stock in the acquirer* by a company that had a much higher debt-equity ratio than their (former) employer." 453 F.3d at 410-11 (emphases added). Plaintiffs here do not allege that participants held the majority of RadioShack's outstanding stock or that the company stock fund was their "principal retirement asset." To the contrary, Plaintiffs do not dispute that, at all times, the Plans offered more than 20 different investment options spanning a wide range of risk/return characteristics. (Mot. at 3-4.)

because "such risk is accounted for in the market price, and the Supreme Court held that fiduciaries may rely on the market price, absent special circumstances affecting the reliability of the market price"). Here, not only did RadioShack trade with meaningful value over most of the proposed class period, but when the Committee determined to freeze the RadioShack stock fund to new investments effective September 15, 2014 (Mot. at 4), the stock was still trading at $1.06. Combined with actions the Committee took to monitor the fund throughout the proposed period, Plaintiffs' claims are "implausible as a general rule" under *Dudenhoeffer*. 134 S. Ct. at 2471.[7]

Plaintiffs' reliance on the district court's ruling in *Gedek v. Perez*, 66 F. Supp. 3d 368 (W.D.N.Y. 2014), is misplaced for several related reasons. First, *Gedek* is distinguishable on its facts, as "at no point prior to [Kodak's announcement of bankruptcy] did defendants take action to preserve or protect ESOP participants' investments." *Id.* at 378. Here, Plaintiffs concede, as they must, that Defendants discussed the RadioShack stock fund at Committee meetings, distributed diversification notices to participants as early as mid-2012, and decided to prevent new investments in RadioShack stock on July 11, 2014, effective September 15, 2014—just *four days* after the company's *very first* public "going concern" statement. (Mot. at 4.) More fundamentally, the *Gedek* court emphasized that the plan document specifically afforded the trustee some discretion to "invest the Trust Fund in . . . equity stock, bonds or other investments desirable for the Trust," a provision the court specifically cited in finding plausible allegations that the fiduciaries could have "shifted the plan's assets into more stable investments, *as permitted by the plan document*," 66 F. Supp. 2d at 372, 378 (emphasis added). Plaintiffs make no such allegation here, nor can they.

---

[7] Plaintiffs also feebly attempt to analogize to the Supreme Court's decision in *Tibble* (Opp. at 12), in which fiduciaries allegedly offered retail-class mutual funds with excessive fees when "lower priced institutional-class mutual funds could have been offered." 135 S. Ct. 1823, 1826. *Tibble* is inapposite. Most importantly, *Tibble* addressed only the defendants' statute of limitations defense and specifically "express[ed] no view on the scope of respondents' fiduciary duty in this case." 135 S. Ct. at 1829.

Regardless, insofar as *Gedek* stands for the proposition that a bankruptcy filing automatically precludes application of *Dudenhoeffer's* "general rule," it is wrongly decided and inconsistent with the Supreme Court's opinion.  As the *Gedek* court even put it, plaintiffs alleged that "it became obvious that Kodak was *headed for* bankruptcy and that is stock *was going to plummet* in value."  66 F. Supp. 3d at 371 (emphases added).  Requiring a fiduciary to predict the future movement of a company's stock in this way is precisely what the Supreme Court cautioned against—if those risks are "obvious," or it was certain that the stock "was going to plummet," that information would be incorporated into its price, which is why such claims based on public information alone are "implausible as a general rule."  134 S. Ct. at 2471.  Moreover, the *Gedek* court did not find, as *Dudenhoeffer* plainly requires, that any "special circumstance" affected the reliability of Kodak's price or the market's efficiency.  *Id.* at 2472.  Instead, the *Gedek* court posited that the Supreme Court did not address the issues it faced, but (as explained above) its premise that *Dudenhoeffer* was limited to claims "that the fiduciaries knew or should have known that the company's stock was overvalued" is incorrect.  *Supra* at 5.  At best, *Gedek* seems to be animated by the hindsight fact that Kodak ultimately filed for bankruptcy, a plainly illicit consideration in this context.  *Cf.  Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) ("[T]he test of prudence is one of conduct, not results," and "[t]he focus of the inquiry is how the fiduciary acted, not whether his investments succeeded or failed.").[8]

---

[8] *See also Smith v. Delta Air Lines, Inc.*, 2015 WL 4546170, at *2 (11th Cir. July 29, 2015) (dismissing claims after Delta's bankruptcy where there was no "allegation of a special circumstance [that rendered] reliance on the market price imprudent, such as fraud, improper accounting, illegal conduct or other actions that would have caused Delta stock to trade at an artificially inflated price.  Absent such circumstances, the Delta fiduciaries cannot be held liable for failing to predict the future performance of the airline's stock." (quotations omitted)); *In re Lehman Bros.*, 2015 WL 4139978, at *6; *cf. Pfeil*, 2015 WL 6874769, at *6 (granting summary judgment despite GM's bankruptcy where plaintiff "failed to show a special circumstance such that [the fiduciary] should not have relied on market pricing").

**III.    Defendants' Alleged Conduct Did Not Cause Plaintiffs' Alleged Loss.**

Plaintiffs' arguments regarding causation also fail. At the threshold, Plaintiffs do not, because they cannot, dispute three critical points. First, they enjoyed unfettered discretion to allocate their Plan investments as each alone saw fit (including the discretion to *not invest* in RadioShack stock at all). (Mot. at 3-4.) Second, the Plan offered a multitude of alternative investments with widely varying risk/reward characteristics. (*Id.*) Lastly, their substantive breach claims are based entirely upon public information, most of which was available through popular national and local media such as *The Dallas Morning News*. (ACC ¶ 149.) Plaintiffs, armed with the very same knowledge they now claim should have spurred Defendants to act, could have forsaken investing in RadioShack stock and avoided entirely the claimed losses.

More to the point, Plaintiffs are incorrect in stating that "[i]t is doubtful whether the *Langbecker* [*v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007)] majority decision is still good law" concerning ERISA section 404(c), 29 U.S.C. § 1104(c), citing a subsequent Fifth Circuit panel decision in *Kopp v. Klein*, 722 F.3d 327 (5th Cir. 2013). First, the Supreme Court vacated the judgment in *Kopp* and remanded for consideration in light of *Dudenhoeffer*, 134 S. Ct. 2900 (July 1, 2014), and the Fifth Circuit in turn vacated the district court's judgment, 762 F.3d 450 (Aug. 7, 2014). Regardless, as Defendants noted (and which Plaintiffs ignored), the *Kopp* panel specifically held that this issue was premature, meaning its now-vacated discussion is, at best, *dictum*. 722 F.3d at 335. Even so, the *Kopp* panel could not overrule the prior Circuit decision under these circumstances. (*See* Mot. at 23-24.)

Regardless, *Kopp* cites affirmatively to the Seventh Circuit's opinion in *Howell v. Motorola, Inc.*, which recognizes the causation element within in ERISA § 409(a), 29 U.S.C. § 1109(a), by holding that—regardless of Section 404(c)—there was no fiduciary breach where participants had other diversified investment options available, and "[t]he value of Motorola

9

stock did not collapse in a day, or even in a few days. Plan participants were entitled throughout the class period . . . to move their dollars away from the Motorola Stock Fund into a different fund on a daily basis; anyone concerned by the downward trend that persisted for some time could have done so (and it is probable that many people did)." 633 F.3d 552 (7th Cir. 2011)[9]

Further, Plaintiffs incorrectly argue that they have not "injected" the issue of causation into their Complaint, such that considering this issue is inappropriate on a motion to dismiss. As noted (Mot. at 23 n.19), Plaintiffs include an entire section on "Causation," with allegations that Defendants' decision not to divest or otherwise restrict their own ability to invest in RadioShack stock caused Plaintiffs' alleged loss, and had Defendants "properly discharged their fiduciary and/or co-fiduciary duties, the Plans and the Plans' Participants would have avoided a substantial portion of the losses that they suffered." (ACC ¶¶ 394-404.) A complaint need not specifically name the statute or defense at issue for it to be ripe on a motion to dismiss; rather, it must include the "facts that establish an impenetrable defense to its claims." *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009); Mot. at 23, n.19. Were the law otherwise, defendants would be faced with protracted litigation all for the want of one statutory cite in the initial pleading. Further, *Langbecker* vacated, on Rule 23(f), a class certification order because of these individualized causation obstacles, a ruling that did not turn on the minutia in the complaint. Alternatively, short of dismissing Plaintiffs' claims, this Court could dismiss the class allegations pursuant to Rule 12(b)(6). *E.g., Myart v. Glosson*, 2014 WL 6612008, at *5 (W.D. Tex. Nov. 20, 2014).[10]

---

[9] ERISA § 409(a), the provision upon which Plaintiffs seek to frame a remedy (ACC ¶ 406), sets forth a causation requirement by providing that fiduciaries are "personally liable to make good to [a] plan any losses to the plan *resulting from each such breach*." 29 U.S.C. § 1109(a) (emphasis added). Given the Plaintiffs' insistence upon investing in RadioShack stock in the face of admittedly ample public information questioning the wisdom of such approach, Defendants did not cause the alleged losses, as a matter of law.

[10] Defendants also join and incorporate by reference the arguments of co-defendants Wells Fargo and Banco Popular in both their original Motions to Dismiss and their reply briefing. Defendants also reiterate their position that the Court should strike Plaintiffs' jury demand, as it has once already. (Mot. at 25.)

Dated:  November 17, 2015                             Respectfully Submitted,

                                                      /s/  Matthew A. Russell

                                                      **MORGAN, LEWIS & BOCKIUS LLP**

Brian T. Ortelere (*admitted pro hac vice*)          Ellen L. Perlioni
Jeremy P. Blumenfeld (*admitted pro hac vice*)       1717 Main Street, Suite 3200
1701 Market Street                                    Dallas, TX 75201
Philadelphia, PA 19103                                Phone:  214.466.4000
Phone:  215.963.5258                                  Fax:  214.466.4001
Fax:  215.963.5001                                    Email:  ellen.perlioni@morganlewis.com
Email:   bortelere@morganlewis.com
         jblumenfeld@morganlewis.com
                                                      Matthew A. Russell (*admitted pro hac vice*)
                                                      77 W. Wacker Drive
                                                      Chicago, IL 60601
                                                      Phone:  312.324.1771
                                                      Fax:  312.324.1001
                                                      Email:  marussell@morganlewis.com

                                                      *Counsel for Defendants RadioShack 401(k) Plan Admin. Committee, RadioShack Puerto Rico Plan Admin. Committee, and the Individual Defendants.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 17, 2015, I filed the foregoing document using the Court's CM/ECF system, which will serve a copy of this document to all registered CM/ECF participants.

                                                       /s/ *Matthew A. Russell*
                                                       Matthew A. Russell