# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| **IN RE 2014 RADIOSHACK ERISA LITIGATION** <br><br> **THIS DOCUMENT RELATES TO:** <br><br> **ALL ACTIONS** | **MASTER FILE NO. 4:14-cv-00959-O** |

## REPLY BRIEF IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

Michelle Hartmann
Sidley Austin LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
(214) 981-3300

Howard Shapiro (admitted *pro hac vice*)
Stacey C.S. Cerrone (admitted *pro hac vice*)
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
(504) 310-4085

Russell L. Hirschhorn (admitted *pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3286

Anne E. Rea (admitted *pro hac vice*)
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7156

*Counsel for Defendant Wells Fargo Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ..................................................................................... 1

PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST WELLS
FARGO FAILS AS A MATTER OF LAW .................................................................. 1

    1.  Plaintiffs agree with Wells Fargo on four key issues relevant to the Court's evaluation
of Wells Fargo's Motion to Dismiss………………………………………………....…..1

    2.  The only remaining issue is whether Wells Fargo, as a directed trustee is with
"significantly narrower" responsiblities than discretionary fiduciaries, breached its
fiduciary duties under ERISA by following authorized directions that were proper under
the terms of the 401(k) Plan……………………………………………………….....……..2

    3.  The Supreme Court's decision in *Dudenhoeffer* further supports dismissal of Plaintiffs'
claims agains Wells Fargo………………………………………………………….....…....6

    4.  Plaintiffs' co-fiduciary liabliltiy claim should be dismissed…………………………….......9

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Beam v. HSB Bank USA*,
  No. 02-cv-0682E, 2003 WL 22087589 (W.D.N.Y. Aug. 19, 2003)...........................................5

*Dalton v. Greatbanc Trust Co.*,
  No. 15-cv-3053, 2015 U.S. Dist. LEXIS 133711 (N.D. Ill. Oct. 1, 2015) ..............................8

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2549 (2014) ...............................................................................................1, 4, 7, 8

*Gedek v. Perez*,
  66 F. Supp. 3d 368 (W.D.N.Y. 2014) ...................................................................................5

*In re BP p.l.c. Sec. Litig.*,
  No. 10-MD-2185, 2015 WL 1781727 (S.D. Tex. Mar. 4, 2015)..........................................7-8

*In re BP p.l.c. Sec. Litig.*,
  No. 10-MD-2185, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015)......................................9, 10

*In re Enron Corp. Sec., Der., & ERISA Litig.*,
  284 F. Supp. 2d 511 (S.D. Tex. 2003) ...................................................................................5

*In re Lehman Bros. Sec. and ERISA Litig.*,
  No. 09-MD-2017, 2015 WL 4139978 (S.D.N.Y. Jul. 10, 2015) ..............................................7

*In re Polaroid ERISA Litig.*,
  362 F. Supp. 2d 461 (S.D.N.Y. 2005)....................................................................................6

*In re Touch Am. Holdings, Inc.*,
  No. 02-cv-106, 2006 U.S. Dist. LEXIS 94707 (D. Mont. June 15, 2006)...............................9

*In re UBS ERISA Litig.*,
  No. 08-cv-6696, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014), *aff'd by*,
  *Taveras v. UBS AG*, 612 Fed. Appx. 27 (2d Cir. 2015)...........................................................7

*In re WorldCom, Inc.*,
  263 F. Supp. 2d 745 (S.D.N.Y. 2003)..................................................................................5, 6

*In re WorldCom, Inc.*,
  354 F. Supp. 2d 423 (S.D.N.Y. 2005)....................................................................................6

*Kling v. Fid. Mgmt. Trust Co.*,
  270 F. Supp. 2d 121 (D. Mass. 2003) ..................................................................................5, 6

*Koch v. Dwyer*,
   No. 98-cv-5519, 1999 U.S. Dist. LEXIS 11101 (S.D.N.Y. July 20, 1999)...............................5

*Neil v. Zell*,
   677 F. Supp. 2d 1010 (N.D. Ill. 2009) ......................................................................................8

*Pfeil v. State Street Bank & Trust Co.*,
   No. 14-1491, 2015 U.S. App. LEXIS 19536 (6th Cir. Nov. 10, 2015) ...........................4, 7, 8

*Solis v. Webb*,
   931 F. Supp. 2d 936 (N.D. Cal. 2012) ...................................................................................5, 6

*Srein v. Frankford Trust Co.*,
   323 F.3d 214 (3d Cir. 2003)........................................................................................................6

*Summers v. State Street Bank & Trust Co.*,
   453 F.3d 404 (7th Cir. 2006) .....................................................................................................9

## PRELIMINARY STATEMENT

Plaintiffs' Opposition to Wells Fargo's Motion to Dismiss confirms that there is just one issue for this Court to decide – whether Wells Fargo, as a directed trustee, breached its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by following authorized directions that were proper under the terms of the RadioShack 401(k) Plan ("401(k) Plan").  As a matter of law, the answer is no.

Wells Fargo was never "required" to question – nor should it have questioned – the authorized directions it received to continue investment in the RadioShack stock fund.  As explained below, none of the cases cited by Plaintiffs in their Opposition Brief alter this conclusion.  Indeed, they all either:  (i) predate the U.S. Department of Labor ("DOL") Field Assistance Bulletin 2004-03 (Dec. 17, 2004) ("FAB 2004-03") – the guidance under which Plaintiffs agree their claim must be evaluated – and apply a standard different than articulated by the DOL in the FAB, or (ii) do not address the standard of care applicable to directed trustees concerning investments in company stock funds.  Furthermore, contrary to Plaintiffs' contention, the U.S. Supreme Court's recent decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2549 (2014) indisputably supports dismissal of Plaintiffs' claim against Wells Fargo.

Accordingly, Plaintiffs' Complaint against Wells Fargo should be dismissed.

## PLAINTIFFS' CLAIM FOR BREACH OF FIDUCIARY DUTY AGAINST WELLS FARGO FAILS AS A MATTER OF LAW

In its Moving Brief (Dkt. 90), Wells Fargo demonstrated that Plaintiffs have failed to plausibly plead a claim for breach of fiduciary duty against Wells Fargo.  Plaintiffs' Opposition Brief does nothing to alter that conclusion.

**1.  Plaintiffs agree with Wells Fargo on four key issues relevant to the Court's evaluation of Wells Fargo's Motion to Dismiss.**  First, *Plaintiffs agree* that Wells Fargo is a

directed trustee as to the 401(k) Plan and has "significantly narrower" duties than the 401(k)

Plan's discretionary fiduciaries, *i.e.*, the RadioShack Administrative Committee.  (Dkt. 112 at 8,

11.)

Second, *Plaintiffs agree* that Section 403(a) of ERISA and FAB 2004-03 "control" or

"govern" whether Plaintiffs have plausibly pled a claim for relief.  (*Id.* at 8, 11.)

Third, *Plaintiffs agree* that they are not alleging violations of the 401(k) Plan terms.  (*Id.*

at 12, n.13.)  Plaintiffs allege only that Wells Fargo breached its "significantly narrower"

fiduciary duties under ERISA by following the authorized directions from the 401(k) Plan's

discretionary fiduciaries, *i.e.*, the RadioShack Administrative Committee.  (*Id.* at 11.)

Fourth, *Plaintiffs agree* that they have not asserted a claim based on "non-disclosed

information."  (*Id.* at 10, n.10.)  Plaintiffs allege only that, based on publicly available

information, Wells Fargo should have refused to follow the authorized directions from the 401(k)

Plan's discretionary fiduciaries, *i.e.*, the RadioShack Administrative Committee.[1]

**2.     The only remaining issue is whether Wells Fargo, as a directed trustee with**

**"significantly narrower" responsibilities than the 401(k) Plan's discretionary fiduciaries,**

**breached its fiduciary duties under ERISA by following authorized directions that were**

**proper under the terms of the 401(k) Plan.**  The answer is no.  Contrary to Plaintiffs'

contention (Dkt. 112 at 13), there are no circumstances under which a directed trustee is

"required" to question the direction it received.  *See* FAB 2004-03.  As explained in Wells

Fargo's Moving Brief (Dkt. 90 at 15-20), a directed trustee – *at most* – "may" have a duty to

inquire into the prudence of a direction based on public information "[i]n limited, extraordinary

---

[1] Contrary to Plaintiffs' contention (Dkt. 112 at 9), Wells Fargo does not "seek shelter behind the terms of the
401(k) Plan document and trust agreement."  Rather, Wells Fargo only establishes that it is a directed trustee to the
401(k) Plan with "significantly narrower" fiduciary duties than the discretionary fiduciaries (*i.e.*, the RadioShack
Administrative Committee) and, as stated above, Plaintiffs agree.  (Dkt. 112 at 8, 11.)

circumstances where there are clear and compelling public indicators . . . that call into serious question a company's viability as a going concern."  FAB 2004-03.

Plaintiffs contend that the instant case is one in which Wells Fargo should have questioned the directions it received as being inconsistent with ERISA because: (i) RadioShack's circumstances were "dire" and the Company "had a very high probability of bankruptcy" (Dkt. 112 at 2); and (ii) there was "no objective reason to believe things would get better going forward."  (*Id*. at 4.)  But, as the authorities cited in Wells Fargo's Moving Brief make clear (Dkt. 90, at 17-18), the possibility of bankruptcy itself – and even filing for bankruptcy – is not sufficient in and of itself to trigger a directed trustee's duty to question directions given to it by the named fiduciary.  Indeed, the DOL opined that "it might not be imprudent to purchase or hold stock in a distressed company in bankruptcy."  FAB 2004-03 at n.6.  That is because filing for Chapter 11 bankruptcy does not necessarily call into serious question a company's viability as a going concern.  To the contrary, companies successfully emerge from Chapter 11 bankruptcy more often than not.  *See*, *e.g.*, Edward I. Altman, *Evaluating the Chapter 11 Bankruptcy-Reorganization Process*, 1993 COLUM. BUS. L. REV. 1, 6 (1993) ("over one-half of publicly owned Chapter 11 debtors emerge out of reorganization as a continuing entity"); Elizabeth Warren & Jay Lawrence Westbrook, *The Success of Ch. 11:  A Challenge to the Critics*, 107 MICH. L. REV. 603, 612 (2009) (discussing in depth the success of Chapter 11 bankruptcy and opining that "[t]he conventional wisdom that the great majority of Chapter 11 cases fail . . . is either wrong or very wrong.").[2]

---

[2] Plaintiffs' allegation that the RadioShack Administrative Committee did not meaningfully review the prudence of maintaining RadioShack stock fund as an investment option in the Plan (Dkt. 112 at 6-7) has no bearing on whether Plaintiffs have stated a claim for relief against Wells Fargo.

Furthermore, Plaintiffs' contention ignores the allegations in their own Complaint (cited as "¶") that throughout 2012, 2013, and 2014 there were indications that RadioShack would turn around its fortunes.  *Plaintiffs' own Complaint alleges that*:

- Throughout 2013, RadioShack continued to re-imagine its business plan and demonstrate the potential for a turnaround right up until it filed for bankruptcy.  (¶¶ 190, 230, 276, 286, 297.)

- Analysts had not given up hope, noting that the RadioShack "always figure[s] something out."  (¶ 230.)

- In 2013, RadioShack continually received injections of capital.  (¶¶ 230, 276.)

- RadioShack had been provided a rescue package that "bought it some much needed breathing room" through the 2014 holiday season.  (¶¶ 286, 309.)

- On January 22, 2014, the media reported that RadioShack was seeking a plan for Chapter 11 that would provide a "speedy exit and reorganization."  (¶ 318.)

Thus, while Plaintiffs' allegations catalog RadioShack's publicly disclosed business issues, it was not until September 11, 2014 that RadioShack disclosed that there was "substantial doubt about [its] ability to continue as a going concern."  (¶ 289.)  *Four days* later, on September 15, 2014, the Plans were frozen to new investments in RadioShack stock.  Wells Fargo received directions to effect the freeze and followed those instructions.  (¶¶ 90, 277, 297.)  Thus, even if a duty to inquire had been triggered on September 11, 2014, there was nothing, as matter of law, that Wells Fargo could have done differently as the RadioShack stock fund was frozen to new investments on September 15, 2014.   Plaintiffs' suggestion that Wells Fargo could have unilaterally decided to liquidate the RadioShack stock fund (¶ 390) is without merit.  *See Dudenhoeffer*, 134 S. Ct. at 2465-66 (recognizing that ESOPs "are *not prudently* diversified" by

their very nature and thus there is no duty to diversify, *i.e.*, liquidate employer stock); *Pfeil v. State Street Bank & Trust Co.*, No. 14-1491, 2015 U.S. App. LEXIS 19536, *20 (6th Cir. Nov. 10, 2015) ("Congress created ESOPs so that [fiduciaries] would not diversify."). Based on Plaintiffs' specific averments and the applicable legal standards, Wells Fargo cannot be liable for breach of fiduciary duty.

Plaintiffs try desperately to avoid this conclusion: they unsuccessfully distinguish the cases cited by Wells Fargo and instead rely upon inapposite jurisprudence. Their attempt to distinguish Wells Fargo's persuasive authority should be rejected; under the relevant case law, courts dismiss claims against directed trustees where, as here, a corporate restructuring, bankruptcy, or delisting of a plan sponsor occurred. (Dkt. 90, at 17-18.)[3]

Of Plaintiffs' cited authorities, several courts denied motions to dismiss where they were asked to consider the question of whether a directed trustee is a fiduciary.[4] But that issue is not before this Court. As discussed in Wells Fargo's Moving Brief (*id.* at 15-20), Wells Fargo acknowledges (for purposes of this motion only) that it is a fiduciary, albeit with "significantly narrower" duties than the discretionary fiduciaries, *i.e.*, the RadioShack Administrative Committee.

Other cases Plaintiffs cited were decided prior to the publication of FAB 2004-03 and evaluated claims against directed trustees under an inapposite legal standard.[5] Prior to FAB

---

[3] As demonstrated in Wells Fargo's Moving Brief (Dkt. 90 at 17-18), and contrary to Plaintiffs' contention (Dkt. 112 at 8, n.8), courts have not hesitated to grant a directed trustee's motion to dismiss where, as here, plaintiffs fail to state a claim for relief.

[4] *Gedek v. Perez*, 66 F. Supp. 3d 368, 383-84 (W.D.N.Y. 2014); *Solis v. Webb*, 931 F. Supp. 2d 936, 949-50 (N.D. Cal. 2012); *In re Enron Corp. Sec., Der., & ERISA Litig.*, 284 F. Supp. 2d 511, 562-63 (S.D. Tex. 2003); *Kling v. Fid. Mgmt. Trust Co.*, 270 F. Supp. 2d 121, 131-32 (D. Mass. 2003); *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 761-62 & n.8 (S.D.N.Y. 2003).

[5] *See Beam v. HSB Bank USA*, No. 02-cv-0682E, 2003 WL 22087589, at *2-3 (W.D.N.Y. Aug. 19, 2003); *Kling*, 270 F. Supp. 2d at 131-32; *In re WorldCom, Inc.*, 263 F. Supp. 2d at 761-62 & n.8; *In re Enron Corp. Sec., Der., & ERISA Litig.*, 284 F. Supp. 2d at 581-602, 664-65; *Koch v. Dwyer*, No. 98-cv-5519, 1999 U.S. Dist. LEXIS 11101,

2004-03, many courts required plaintiffs only to plead (and ultimately prove) that a directed trustee knew or should have known that the company stock fund was generally an imprudent investment. To the extent that was ever the proper standard by which to evaluate claims against directed trustees (which Wells Fargo disputes), it certainly has not been the standard since the DOL published FAB 2004-03. Significantly, Plaintiffs agree that FAB 2004-03 "governs" whether they have plausibly pled a claim for relief. For the reasons discussed above and in Wells Fargo's Moving Brief, they have not done so.[6]

Plaintiffs' other cited cases simply provide no insight as to standards for directed trustee liability concerning the retention of investments in company stock funds.[7]

In short, when evaluated under the guidance published by the DOL, it is clear that Plaintiffs cannot state a claim against Wells Fargo as a matter of law.

**3.     The Supreme Court's decision in *Dudenhoeffer* further supports dismissal of Plaintiffs' claim against Wells Fargo.** As a preliminary matter, Plaintiffs erroneously contend that the Supreme Court in *Dudenhoeffer* "acknowledged it was lessening the pleading burden" for ERISA breach of fiduciary claims involving investments in company stock funds. (Dkt. 112, at 7 (incorporating Dkt. 110, at 5).) As previously discussed in Wells Fargo's Moving Brief (Dkt. 90, at 19-20), in *Dudenhoeffer*, the Supreme Court addressed the legal standards applicable

---

at *31-32 (S.D.N.Y. July 20, 1999).

[6] The difference in legal standards was highlighted in the *In re WorldCom* litigation. *Compare In re WorldCom, Inc.*, 263 F. Supp. 2d at 761-62 & n.8 (denying directed trustee's motion to dismiss prior to FAB 2004-03 because, in the court's view, plaintiffs had pled knowledge of imprudence) *with In re WorldCom, Inc.*, 354 F. Supp. 2d 423, 447-49 (S.D.N.Y. 2005) (stating that directed trustees need not act unless they have knowledge of "clear and compelling public indicators . . . that call into serious question a company's viability as a going concern").

[7] *Solis*, 931 F. Supp. 2d at 939 (considering whether defendants breached their fiduciary duties by permitting an employee stock ownership plan to purchase stock at an inflated price); *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221-22 (3d Cir. 2003) (holding that a trustee, as a fiduciary of the plan exerting undirected control over plan assets, breached its fiduciary duties and distinguishing the case from those considering the liability of a directed trustee); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 474-75 (S.D.N.Y. 2005) (discussing general standard applied to all fiduciaries without considering the duty of a directed trustee).

to a discretionary fiduciary's evaluation of the continued prudence of investing in an employer stock fund in an eligible individual account plan, *e.g.*, a 401(k) plan.  Although the Supreme Court did away with the so-called "presumption of prudence" that had been applied in numerous circuits to claims against discretionary fiduciaries, several courts have recognized that, "[i]t could be argued that the Supreme Court's decision in *Dudenhoeffer* has, if anything, *raised* the bar for plaintiffs seeking to bring a claim based on a breach of the duty of prudence" against discretionary fiduciaries.  *In re UBS ERISA Litig.*, No. 08-cv-6696, 2014 WL 4812387, at *9 n.11 (S.D.N.Y. Sept. 29, 2014), *aff'd by*, *Taveras v. UBS AG*, 612 Fed. Appx. 27 (2d Cir. 2015); *see In re Lehman Bros. Sec. and ERISA Litig.*, No. 09-MD-2017, 2015 WL 4139978, at *6 (S.D.N.Y. Jul. 10, 2015) (same).

*Second*, as explained in Wells Fargo's Moving Brief (Dkt. 90, at 19-21), the Supreme Court held that fiduciary breach claims based on public information against *discretionary fiduciaries* involving investments in company stock funds cannot withstand a motion to dismiss in the absence of plaintiffs plausibly alleging the existence of "special circumstances." *Dudenhoeffer*, 134 S. Ct. at 2471.  *A fortiori*, such claims against directed trustees – who lack discretionary power – cannot withstand a motion to dismiss where, as here, Plaintiffs have failed to plead special circumstances.

*Third*, there is no basis for concluding, as Plaintiffs' contend (Dkt. 110 at 11), that the requirement for pleading special circumstances does not apply to Plaintiffs' claim that RadioShack stock was too risky to be a prudent investment option.  *See Pfeil*, 2015 U.S. App. LEXIS 19536, at *16-17, *20-21 (concluding that the fact that investments in employer stock are inherently risky is not sufficient to give rise to a claim under *Dudenhoeffer* because those risks

are reflected in the market price);[8] *In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 1781727, at *10 (S.D. Tex. Mar. 4, 2015) (accepting contention that "risk profile alone is not sufficient to make an investment option imprudent").

*Fourth*, Plaintiffs' contention that even if the special circumstances requirement applies, they have pled it by alleging that "RadioShack's 'ballooning debt' and 'shrinking cash flow' caused RadioShack's collapse" (Dkt. 112, at 18), is meritless as such allegations say nothing that would render reliance on the market price imprudent – a requirement of pleading special circumstances. *See Dudenhoeffer*, 134 S. Ct. at 2471-72; *Pfeil*, 2015 U.S. App. LEXIS 19536, at *16-18. Furthermore, their reliance on *Dalton v. Greatbanc Trust Co.*, No. 15-cv-3053, 2015 U.S. Dist. LEXIS 133711 (N.D. Ill. Oct. 1, 2015) and *Neil v. Zell*, 677 F. Supp. 2d 1010 (N.D. Ill. 2009) is entirely misplaced. In *Dalton*, the district court granted defendants' motion dismiss for want of special circumstances. In so ruling, the *Dalton* court commented that the *Zell* court had denied a motion to dismiss because the "allegations raised 'serious questions regarding whether [Defendant] adequately considered the risk created by the great amount of debt Tribune would take on in the deal. The key part of that holding was a special circumstance, the great amount of debt Tribune took on in its ESOP deal." *Dalton*, 2015 U.S. Dist. LEXIS 133711, at *7-8. Plaintiffs' contention that the *Dalton* court's comment that plaintiffs in *Zell* – decided five years before *Dudenhoeffer* – satisfied *Dudenhoeffer*'s special circumstances test is wrong on its face and also because it: (i) does not explain that how reliance on the public market price is

---

[8] Plaintiffs' Notice of Supplemental Authority (Dkt. 122) effectively recognizes that the *Pfeil* majority ruled that the requirement to plead "special circumstances" applies in cases such as this when it relies on Judge White's *dissenting* opinion. (Dkt. 122 at App-7.) Judge White's dissent departs from the majority's express holding that a "plaintiff claiming that an ESOP's investment in a publicly traded security was imprudent must show special circumstances to survive a motion to dismiss." *Pfeil*, 2015 U.S. App. LEXIS 19536, at *16-17. The other two reasons offered by Plaintiffs as to why *Pfeil* supports denial of Defendants' motions to dismiss (Dkt. 122 at 6-7) have nothing to do with Wells Fargo and its role as directed trustee of the 401(k) Plan and pertain only to the RadioShack Defendants. *See also supra*, note 2. Because Wells Fargo has refuted the arguments in Plaintiffs' Notice of Supplemental Authority (Dkt. 122) herein, Wells Fargo will not be submitting a separate substantive response to it.

imprudent; and (ii) ignores the other issues going on in *Zell*, including that GreatBanc failed to ensure that the expert advice it sought was reasonable, and that GreatBanc failed to conduct its own thorough review of the deal.

Lastly, Plaintiffs erroneously contend that the cases decided after *Dudenhoeffer* are "wrong and inapplicable" and that bankruptcy, or the prospect of bankruptcy, is in and of itself a special circumstance.  (Dkt. 112, at 17-18 (incorporating Dkt. 110, at 16-19).)  Plaintiffs do not cite a single case in support of their novel contention and, contrary to their assertion (*id.* at 17-18), neither Justice Breyer during oral argument in *Dudenhoeffer* nor Judge Posner in *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404 (7th Cir. 2006) reached such a conclusion or expressed such a sentiment.  In fact, Judge Posner ultimately ruled that it "is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it."  *Id.* at 408.

In short, the Supreme Court's decision in *Dudenhoeffer* and its progeny indisputably support dismissal of Plaintiffs' claim against Wells Fargo.

**4.      Plaintiffs' co-fiduciary liability claim should be dismissed.**  Plaintiffs' co-fiduciary breach claims against Wells Fargo should be dismissed because Plaintiffs have not stated a viable breach of fiduciary duty claim against Wells Fargo (or any other Defendant). (Dkt. 90 at 23.)  *See In re BP p.l.c. Sec. Litig.*, No. 10-MD-2185, 2015 WL 6674576, *11 (S.D. Tex. Oct. 30, 2015) (dismissing conclusory allegations of co-fiduciary liability as "paradigmatic examples of that which *Iqbal* expressly proscribes").  Independently, Plaintiffs' co-fiduciary liability claim against Wells Fargo should be dismissed because Plaintiffs have not alleged the elements of such a claim.  *See id.*  The single case cited by Plaintiffs, *In re Touch Am. Holdings, Inc.*, No. 02-cv-106, 2006 U.S. Dist. LEXIS 94707, at *38 (D. Mont. June 15, 2006) (Dkt. 112 at

19-20), actually supports dismissal of this claim.   There, the court dismissed the co-fiduciary breach allegations for failure to identify actions taken by defendant that constituted a co-fiduciary breach, and because the allegations were devoid of specific facts that showed defendant was a knowing participant in an alleged breach.   The court only permitted a claim to proceed that defendants "enabled the breach" – an allegation that appears nowhere in this instant action.

### CONCLUSION

For the reasons set forth herein and in the Individual RadioShack Defendants' and Banco Popular's motions to dismiss, incorporated by reference herein pursuant to Fed. R. Civ. P. 10(c), Plaintiffs' Complaint against Wells Fargo should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).[9]

---

[9] Defendants' Motion to Strike Plaintiffs' Jury Demand (Dkt. 94 at 25) is further supported by the recent decision in *In re BP Sec. Litig.*, wherein the court held that Fifth Circuit case law "weighs decisively in favor of striking Plaintiffs [sic] jury demand" because "ERISA claims do not entitle a plaintiff to a jury trial."   2015 WL 6674576, at *14 (internal quotation omitted).

Dated:      November 17, 2015

By:  */s/ Michelle Hartmann*
     Michelle Hartmann
mhartmann@sidley.com
SIDLEY AUSTIN LLP
2001 Ross Avenue, Suite 3600
Dallas, TX 75201
Tel:  (214) 981-3300
Fax:  (214) 981-3400

Howard Shapiro (admitted *pro hac vice*)
howshapiro@proskauer.com
Stacey C.S. Cerrone (admitted *pro hac vice*)
scerrone@proskauer.com
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130
Tel:  (504) 310-4085
Fax:  (504) 310-2022

Russell L. Hirschhorn (admitted *pro hac vice*)
rhirschhorn@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3286
Fax:  (212) 969-2900

Anne E. Rea (admitted *pro hac vice*)
area@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel:  (312) 853-7156
Fax:  (312) 853-7036

*Counsel for Defendant Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

On November 17, 2015, I caused to be electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all counsel and/or pro se parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure

5(b)(2).

*/s/ Michelle Hartmann*_____
Michelle Hartmann