IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| IN RE 2014 RADIOSHACK ERISA LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | MASTER FILE NO. 4:14-cv-00959-O |

**RADIOSHACK DEFENDANTS' RESPONSE TO PLAINTIFFS'**
<u>**NOTICE OF SUPPLEMENTAL AUTHORITY**</u>

Defendants, the RadioShack 401(k) Plan Administrative Committee, the RadioShack Puerto Rico 1165(e) Plan Administrative Committee, and the individual defendants (collectively, "Defendants"), submit this Response to Plaintiffs' Notice of Supplemental Authority ("Notice") concerning the Sixth Circuit's recent ruling in *Pfeil v. State Street Bank & Trust Co.*, 2015 WL 6874769 (6th Cir. Nov. 10, 2015). As an aside, this Court need not consider the *Pfeil* opinion for the inescapable reason that Plaintiffs' claims are time-barred. If the Court now considers *Pfeil*, Plaintiffs' arguments are a not so clever sleight of hand calculated to create a fact issue where none can possibly exist. Absent allegations of "special circumstances," there can be no plausible claim, and the *Pfeil* majority's *dictum*, language from the *Pfeil dissent*, and a quote from a Supreme Court *transcript*, cannot change the result.

More to the point, Plaintiffs first underscore the fact that their claim is predicated solely upon public information, then marry that not so remarkable observation to a sliver of *dictum* in *Pfeil* to argue that the Motion to Dismiss should be denied. (Notice at 1-2.) Quite simply, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459 (2014), holds that where, as here, plaintiffs seek relief based upon public information, they must plead "special circumstances" affecting the reliability of the market price to satisfy the *Twombly/Iqbal* pleading standards. 134 S. Ct. at

2472. *Pfeil* loudly repeats that aspect of *Dudenhoeffer*, and, for that reason, supports dismissal here. 2015 WL 6874769 at *8. Plaintiffs make no such allegation, *e.g.*, an inefficient market precluding reliance upon the stock price,[1] nor could they, particularly given their innumerable admissions in the Complaint to the contrary.[2] Neither Justice Breyer's musings during oral argument nor the Sixth Circuit's *dictum* in *Pfeil* can change the result.

Perhaps most importantly, the question that the Sixth Circuit did "not now decide" in *Pfeil* – whether a failure to investigate is a "special circumstance" – makes no sense when considered next to *Dudenhoeffer*. The point of the Supreme Court's ruling is that fiduciaries shoulder no burden to employ what Plaintiffs call "a reasoned decision-making process" to second-guess the information provided by an efficient market. "In other words, a fiduciary 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him.'" 134 S.Ct. at 2471-72 (quoting *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 408 (7th Cir. 2006)). Having failed to plead special circumstances, there can be no finding of liability grounded upon the alleged failure to employ some additional and superfluous "decision-making process," as a matter of law.

*Second*, Plaintiffs note that *Pfeil* affirmed a grant of summary judgment, not a dismissal under Rule 12(b)(6). (Notice at 2.) While true, this fact is irrelevant and certainly does not "support allowing Plaintiffs' claims to proceed past the pleadings stage." (*Id.*) As the *Pfeil* court explained, that case already progressed to summary judgment before the Supreme Court decided *Dudenhoeffer*, largely because the Sixth Circuit declined to apply the "presumption of prudence"

---

[1] *E.g., Smith v. Delta Air Lines, Inc.*, 2015 WL 4546170, at *2 (11th Cir. July 29, 2015) (dismissing claims after Delta's bankruptcy where there was no "allegation of a special circumstance [that rendered] reliance on the market price imprudent, such as fraud, improper accounting, illegal conduct or other actions that would have caused Delta stock to trade at an artificially inflated price. Absent such circumstances, the Delta fiduciaries cannot be held liable for failing to predict the future performance of the airline's stock." (quotations omitted)).

[2] *See, e.g.*, ACC ¶¶ 168, 171, 172, 175, 181, 182, 188-89, 192, 195 (stock price immediately incorporates adverse news).

at the pleadings stage. 2015 WL 6874769, at *1 (citing 671 F.3d 585 (6th Cir. 2012)). Thus, neither the district court nor the Sixth Circuit in *Pfeil* had yet considered whether the complaint satisfied *Dudenhoeffer's* stringent *pleading* requirements, wherein the Court emphasized the importance of "weeding out meritless claims" through a motion to dismiss. 134 S. Ct. at 2471. Indeed, on remand the Sixth Circuit held that "a plaintiff claiming that an ESOP's investment in a publicly traded security was imprudent must show special circumstances *to survive a motion to dismiss*," *Pfeil*, 2015 WL 6874769, at *6, and its analysis thus applies equally in assessing whether Plaintiffs have alleged a plausible breach claim here.

*Third*, although entirely irrelevant given the points made above, Plaintiffs' unsubstantiated conclusion "that Defendants failed to engage in a reasoned decision-making process regarding the prudence of RadioShack stock" is contrary to the allegations (and incorporated documents) in their own Complaint. Putting aside that Plaintiffs' claims rest solely on public information that it is implausible, without more, to believe Defendants were simply ignoring,[3] the fiduciary in *Pfeil* froze the GM stock fund to new investments on November 21, 2008—nearly two weeks *after* GM issued its first "going concern" statement on November 10, 2008. (Dkt. 1 ¶¶ 45, 49, *Pfeil v. State St. Bank & Trust Co.*, No. 2:09-cv-12229 (E.D. Mich.).) Here, Plaintiffs concede, as they must, that Defendants made the similar decision to freeze the Plans' RadioShack stock fund to new investments on July 11, 2014 – two months *before* the company's first "going concern" statement on September 11, 2014 – and that freeze took effect on Sept. 15, 2014, just *four days* after that disclosure. (ACC ¶¶ 277, 289.) Given these circumstances, *Pfeil* only underscores why Plaintiffs' claims are implausible as a matter of law and dismissal is warranted here.

---

[3] Moreover, as outlined in Defendants' Reply (Dkt. 123 at 1-5), the RadioShack Plans' fiduciaries had been sued on a nearly identical theory only a few years earlier in a suit that settled just *nine months* before this round of Plaintiffs allege RadioShack stock became an imprudent Plan investment once again.

Dated:  November 25, 2015

Respectfully Submitted,

*/s/ Matthew A. Russell*

**MORGAN, LEWIS & BOCKIUS LLP**

Brian T. Ortelere (*admitted pro hac vice*)
Jeremy P. Blumenfeld (*admitted pro hac vice*)
1701 Market Street
Philadelphia, PA 19103
Phone:  215.963.5258
Fax:  215.963.5001
Email:   bortelere@morganlewis.com
          jblumenfeld@morganlewis.com

Ellen L. Perlioni
1717 Main Street, Suite 3200
Dallas, TX 75201
Phone:  214.466.4000
Fax:  214.466.4001
Email:  ellen.perlioni@morganlewis.com


Matthew A. Russell (*admitted pro hac vice*)
77 W. Wacker Drive
Chicago, IL 60601
Phone:  312.324.1771
Fax:  312.324.1001
Email:  marussell@morganlewis.com

*Counsel for Defendants RadioShack 401(k) Plan Admin. Committee, RadioShack Puerto Rico Plan Admin. Committee, and the Individual Defendants.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 25, 2015, I filed the foregoing document using the Court's CM/ECF system, which will serve a copy of this document to all registered CM/ECF participants.

                /s/ *Matthew A. Russell*
                Matthew A. Russell