IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| IN RE 2014 RADIOSHACK ERISA LITIGATION )<br>)<br>)<br>THIS DOCUMENT RELATES TO: )<br>)<br>ALL ACTIONS )<br>) | MASTER FILE NO. 4:14-cv-00959-O |

**REPLY IN SUPPORT OF MOTION TO STRIKE ARGUMENT, OR IN THE ALTERNATIVE FOR LEAVE TO FILE SUR-REPLY IN FURTHER OPPOSITION TO THE RADIOSHACK DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED CONSOLIDATED CLASS ACTION COMPLAINT AND TO STRIKE JURY DEMAND**

Defendants' Opposition[1] misses the mark in several respects and **concedes** Plaintiffs' arguments in others.

*First*, both parts (the motion to strike and the alternative motion to file sur-reply) of Plaintiffs' Motion to Strike[2] are *timely*. Neither the operative scheduling order in this action nor the local rules place any applicable time limitations on when a party may file either a motion to strike argument or for leave to file a sur-reply. Regardless, assuming that the response time periods set forth in LR 7.1 apply, the motion to strike portion of Plaintiffs' Motion to Strike is timely. Because the motion to strike portion is in response to new arguments raised by Defendants in their Reply,[3] LR 7.1(e), regarding response to an opposed motion (here, the new arguments contained in

---

[1] As used herein, "Defendants' Opposition" or "Def. Opp." refers to Defendants' Opposition to Plaintiffs' Motion to Strike Argument or in the Alternative for Leave to File Sur-Reply. Dkt. No. 135. Further, Plaintiffs use "Defendants" herein as defined in Defendants' Opposition.

[2] "Motion to Strike" refers to the Motion, and Brief in Support, to Strike Argument or in the Alternative for Leave to File Sur-reply in Further Opposition to the RadioShack Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint and to Strike Jury Demand. Dkt. No. 131.

[3] Reply refers to the Reply in Support of the RadioShack Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Complaint and to Strike Jury Demand. Dkt. No. 123.

Defendants' Reply), would be the most relevant rule. Under LR 7.1(e), "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." Plaintiffs were served Defendants' Reply via ECF notice on November 17, 2015. Local Rule 5.1(d) provides that "[d]elivery of the notice of electronic filing that is automatically generated by ECF constitutes service under Fed. R. Civ. P. 5(b)(2)(E) on each party who is a registered user of ECF." Further, FED. R. CIV. P. 6(d) provides that "[w]hen a party may or must act within a specified time after service and service is made under Rule **5(b)(2)**(C), (D), **(E)**, or (F), **3 days are added after the period would otherwise expire under Rule 6(a)** [relating to computation of time]." (emphasis added). Accordingly, the Motion to Strike would have been due on December 11, 2015 (21 days plus 3 days from November 17, 2015), the day it was filed.

As to the alternative motion for leave to file sur-reply, the local rules regarding motion practice (LR 7.1) do not govern the time period in which to file a sur-reply because the local rules do not allow sur-replies as a matter of course. *See Corbello v. Sedgwick Claims Mgmt. Servs., Inc.*, 856 F. Supp. 2d 868, 890 (N.D. Tex. 2012) ("Neither the local rules of this court nor the Federal Rules of Civil Procedure allow a party to file a surreply as a matter of right."). That is precisely why Plaintiffs moved for an order granting leave to file a sur-reply. *See Underwood v. East Tex. State Univ.*, No. 96-cv-2739, 1998 WL 223695 at *1 (N.D. Tex. Apr. 28, 1998) (striking sur-reply because party failed to request leave of court). Accordingly, because the Court has not yet entered a ruling on Defendants' motion to dismiss, Plaintiffs' alternative motion for leave to file sur-reply is timely. *Compare Kozak v. Medtronic, Inc.*, No. 03-cv-4400, 2006 WL 237000 at *4 (S.D. Tex. Jan. 31, 2006) (striking plaintiff's surreply in the extreme circumstance where, among other things, plaintiff "waited until the eve of docket call, almost two months after Defendants filed their reply" and "did not obtain leave to file the surreply or offer any explanation as to why the arguments made

therein could not have been raised in his response.").[4]

*Second*, it was Plaintiffs' belief that the Reply was intended to leave the Court with the incorrect impression that the relevant facts underlying *RadioShack I*[5] and the instant matter were "virtually identical,"[6] in contrast to Defendants' opening memorandum in support of their motion to dismiss where *RadioShack I* was described as pressing "similar" claims.[7] Indeed, Defendants' extensive argument in their Reply (nearly three pages) that the existence of and settlement of *RadioShack I* establishes that Plaintiffs' claims in this action are barred by ERISA's three-year statute of limitations was undeveloped in Defendants' opening memorandum where they only mentioned *RadioShack I* peripherally in two footnotes, *see* Dkt. No. 94, p.1 at n.2 and p.6 at n.5.[8]

The difference in description is obvious on its face. Thus, the basis for filing the Motion to

---

[4] Even if the Motion to Strike was untimely, which it is not, the Court retains discretion to consider it because it has not yet ruled on Defendants' motion to dismiss. In *Clare v. Richards*, 992 F. Supp. 891, 893 (E.D. Tex. 1998), the court noted that if it "has not yet considered a motion … and a response [to the motion] is filed after the … period [for responding has expired], the court may still consider the response at its discretion." The court then went on to consider an "untimely" response by defendant because the plaintiff had "not alleged or proven that it would suffer prejudice if the court entertained Defendants' untimely response." *Id.* Similarly, there would be no prejudice to Defendants if the Court were to consider the merits of the Motion to Strike.

[5] *In re RadioShack Corp. "ERISA" Litig.*, No. 08-md-01875 (N.D. Tex.).

[6] *See* Reply at 2.

[7] *See* Dkt. No. 94 at n.2.

[8] Of course, as noted in the proposed sur-reply, Dkt. 132, A-2, n.2, there are many examples of "company stock" ERISA cases where a particular company is sued in two separate suits for ERISA violations and where claims in the second suit were not barred by the statute of limitations. For example, *compare In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 321 (3d. Cir. 2005) (alleging a class period "anytime between July 29, 1998 and the present") *with In re Schering-Plough ERISA Litig.*, No. 08-cv-1432, 2010 WL 2667414 (D.N.J. June 29, 2010) (alleging a class period of April 19, 2007 to April 2, 2008); *compare also In re Fannie Mae ERISA Litig.*, MDL No. 1668, No. 04-cv-1784, Minute Order denying motion to dismiss (D.D.C. May 8, 2007) (alleging a class period of January 1, 2001 to the present) *with In re Fannie Mae 2008 ERISA Litig.*, MDL No. 2013, No. 09-cv-1350, 2012 WL 5198463 (S.D.N.Y. Oct. 2012) (alleging a class period of April 17, 2007 to May 14, 2010); *see also In re Cigna Corp. ERISA Litig.*, No. 03-cv-714 (E.D. Pa.), Dkt. No. 99 (denying defendants' motion to preclude settling plaintiffs from participating in "a new ERISA class action against the same defendants in the Central District of Illinois, *Nolte v. Cigna Corp.* No. 07-cv-2046 (S.D. Ill.))."

Strike was to correct/address this mischaracterization of *RadioShack I* in the Reply. Faced with their overstatement in the Reply, Defendants now clarify, that supposedly "[n]owhere did Defendants suggest that the claims in the previous litigation were based upon the exact same *facts* or underlying events, nor that *RadioShack I* alone constituted sufficient information to give plaintiffs 'actual knowledge' of the specific claims raised here." Def. Opp. at 3 (emphasis in original).

*Third*, even with Defendants' concession, they still misapply the relevance of *RadioShack I*, if any. They argue that Plaintiffs "had been advised only months earlier of the specific *legal basis* for an ERISA claim alleging imprudence by a plan fiduciary for offering company stock," by virtue of the disseminated settlement class notice in *RadioShack I*. Def. Opp. at 4 (emphasis in original). The fallacy in this statement is multifold.

As an initial matter, the class notice under the section titled "What Is This Action About?" stated that "Plaintiffs allege that Defendants violated ERISA by, among other things, selecting and offering RadioShack common stock [and/or Putnam Funds] as investment options to participants in the Plans because these options were, allegedly, overpriced and/or underperforming [and/or were selected to reduce Defendants' expenses, rather than for their merit."][9] Here, as described in the Complaint[10] in detail, Plaintiffs' claim is not that RadioShack stock was merely overpriced and/or underperforming, but rather that RadioShack's stock was excessively risky and inappropriate *in toto* for the retirement savings plans at issue here.[11] So, as noted in Plaintiffs' proposed sur-reply, even

---

[9] *See* Reply at 3. The bracketed information was omitted from Defendants' citation of the class notice. *See RadioShack I* docket 81-2, at p. 121 of 144.

[10] Amended Consolidated Class Action Complaint, Dkt. No. 66.

[11] *See, e.g.*, ERISA Legislative History at, A &P H.R. Rep. 90-1867 at 8, noting that the proviso that "insulates profit sharing, stock bonus, thrift and savings, and similar plans which otherwise fall within the scope of the bill from a diversification requirement with respect to investments in the stock or securities of the employer whose employees are participants in the plan" is "***not intended to insulate such plans from other applications of the prudent man rule.***" (emphasis added).

4

if Defendants' arguments were otherwise correct, the specific legal basis upon which Plaintiffs' claims are actually based (undue risk) is not mentioned in the specific legal bases for imprudence mentioned in the notice (overpriced assets, underperforming assets, or assets selected to reduce expenses instead of for their merit) that Defendants assert support their argument. Dkt. No. 132, A-4. In other words, Defendants' argument could only prevail if Plaintiffs knew they had a cause of action under ERISA against Defendants for their inclusion of RadioShack stock as an investment option in the retirement plans at issue due to RadioShack stock's undue risk. However, as neither the class notice nor other public information, or the combination of the two, provided such knowledge to Plaintiffs, Defendants' argument must fail.

Moreover, simply being generally aware of another ERISA breach of fiduciary duty action does not impute "actual knowledge" of a "legal basis" on a plaintiff.[12] If that were the case, then a widely-publicized ERISA breach of fiduciary duty action such as *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. 01-cv-3913 (S.D. Tex.) would arguably be sufficient to put employees everywhere on notice that they may have a legal basis to bring an ERISA breach of fiduciary duty action. Of course, that cannot be the standard for actual knowledge, especially given the Fifth Circuit's "narrow interpretation of ERISA's actual-knowledge requirement." *Perez v. Bruister*, 54 F. Supp. 3d 629, 641 (S.D. Miss. 2014). Indeed, in this particular action, where Plaintiffs allege breaches of fiduciary duty in the selection and maintenance of RadioShack stock as a Plan investment option, "actual knowledge of the breach would usually require some knowledge of how the fiduciary selected the investment." *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 859 (8th

---

Accordingly "***if investment by a profit-sharing plan in the employer is completely unsound the prudent man rule should operate to preclude such investment.***" *Id.* (emphasis added).

[12]  *See Fish et al. v. GreatBanc Trust Co.*, 749 F.3d 671, 679 (7th Cir. 2014) (noting that the Seventh Circuit's "precedent seems consistent with the Fifth Circuit's approach in *Maher* [*v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir. 1995)]," and that "a court applying [ERISA] § 1113(2) must take care to resist the temptation to slide toward reliance upon constructive knowledge or imputed knowledge, neither of which is *actual* knowledge.") (emphasis in original).

Cir. 1999) (citing *Maher*, 68 F.3d at 955-56).[13] And not only did Plaintiffs *not* have that knowledge more than three years before they filed suit (*see* Dkt. No. 110 at 8), it is the subject of Plaintiffs' ongoing discovery efforts. This point alone underscores why courts typically do not resolve statute of limitations issues at the motion to dismiss stage. *See* Dkt. 110[14] at 8 (citing cases).

As further noted in Plaintiffs' proposed sur-reply, the legal landscape concerning breach of fiduciary duty claims under ERISA has undergone a sea-change since *RadioShack I*. Dkt. No. 132, A-6. Specifically, the company stock claims in *RadioShack I* were analyzed and dismissed pursuant to the now-abrogated presumption of prudence.[15] *See In re RadioShack Corp. "ERISA" Litig.*, 547 F. Supp. 2d 606, 614-15 (N.D. Tex. 2008) (dismissing company stock claims because allegations that RadioShack stock was artificially inflated did not overcome the presumption of prudence). Thus, the complaint in *RadioShack I* and Plaintiffs' Complaint were/are subject to different legal standards and the legal bases for the claims in *RadioShack I* would not have informed Plaintiffs of the legal basis for their claims in this litigation.

For the reasons set forth herein and in the Motion to Strike, the Court should strike the arguments regarding *RadioShack I* which appear on pages 2-4 of the Reply or, in the alternative, permit Plaintiffs to file the proposed Sur-Reply (Dkt. No. 132).

---

[13] *See also Edes v. Verizon Comm'ns, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005) ("there cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows 'the essential facts *of the transaction or conduct constituting the violation.*'" (citations omitted) (emphasis added); *Fink v. Nat'l Savings and Trust Co.*, 772 F.2d 951, 958 (D.C. Cir. 1985) (finding a defendant "may not interpose the statute of limitations governing the fiduciary's duty to make objective prudent investments as a timebar when the action is based on the fiduciary's breach of the separate duty to conduct an independent evaluation of investments.")

[14] Plaintiffs' Memorandum of Law in Opposition to RadioShack Defendants' Motion to Dismiss Plaintiffs' Amended Consolidated Class Action Complaint and to Strike Jury Demand.

[15] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014) re-affirmed ERISA's primary purpose, holding that it was improper to dismiss ERISA claims based on a "presumption" that ERISA fiduciaries' investment in a company stock fund was prudent.

Dated:  December 30, 2015                    Respectfully Submitted,

**KESSLER TOPAZ**
 **MELTZER & CHECK LLP**

*/s/ Mark K. Gyandoh*
Edward W. Ciolko (admitted *Pro Hac Vice*)
Donna Siegel Moffa (admitted *Pro Hac Vice*)
Mark K. Gyandoh (*admitted Pro Hac Vice*)
Julie Siebert-Johnson (*admitted Pro Hac Vice*)
280 King Of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko@ktmc.com
             dmoffa@ktmc.com
             mgyandoh@ktmc.com
             jsjohnson@ktmc.com

*Interim Lead Class Counsel Committee Chair*
**CONNOLLY WELLS & GRAY, LLP**
Gerald D. Wells, III
Robert J. Gray (*admitted Pro Hac Vice*)
2200 Renaissance Boulevard
Suite 308
King of Prussia, PA  19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com
             rgray@cwg-law.com

**STULL, STULL & BRODY**
Michael J. Klein (*admitted Pro Hac Vice*)
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022
Email:  mklein@ssbny.com

*Interim Lead Class Counsel Committee Members*

                      **LACKEY HERSHMAN, LLP**
Roger L. Mandel
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
3102 Oak Lawn Avenue, Suite 777
Dallas, TX 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203
Email:   rlm@lhlaw.net
        beb@lhlaw.net

*Interim Liaison Class Counsel*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 30, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to registered CM/ECF participants.

                                               /s/ *Mark K. Gyandoh*
                                               Mark K. Gyandoh