IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |  |
|---|---|---|
| ) | | |
| ) | | |
| IN RE 2014 RADIOSHACK ERISA ) | MASTER FILE NO. 4:14-cv-00959-O | |
| LITIGATION ) | | |
| ) | | |
| THIS DOCUMENT RELATES TO: ) | | |
| ) | | |
| ALL ACTIONS ) | | |
| ) | | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION
OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, APPROVAL OF PLAN
OF ALLOCATION, AND SCHEDULING OF A FAIRNESS HEARING**

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .........................................................2

        A.      Summary of the Litigation........................................................................3

        B.      Investigation of Claims and Discovery ...................................................4

        C.      Settlement Negotiations...........................................................................4

        D.      The Proposed Settlement .........................................................................5

        E.      Proposed Timetable .................................................................................5

III.    THE SETTLEMENT SATISFIES THE STANDARD FOR APPROVAL.........................6

        A.      The Proposed Settlement Satisfies the *Reed* Factors...............................6

                1.      The arm's-length negotiations and settlement were not the product of fraud or collusion ...........................................................7

                2.      Continued litigation would be complex, costly, and lengthy .......................7

                3.      The litigation, discovery, and settlement discussions advanced far enough to assess the action's likely outcome.......................................9

                4.      Plaintiffs faced real risks in establishing liability and damages...................10

                5.      The Settlement is in the range of reasonableness in light of the best possible recovery and the attendant risks of litigation .................................12

                6.      Class Counsel and Plaintiffs believe the Settlement is an excellent result....13

IV.     THE PROPOSED NOTICE PLAN SHOULD BE APPROVED .........................................14

V.      THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED  ............16

VI.     PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .......................................................................................................17

        A.      The Settlement Class Satisfies the Requirements of Rule 23(a) ..............17

                1.      Numerosity ...............................................................................18

                2.      Commonality .............................................................................19

i

3.  Typicality ............................................................................................. 20

4.  Adequacy .............................................................................................. 21

B.  The Settlement Class Meets the Requirements of Rules 23(b)(1) and (b)(2) ........... 22

C.  Class Counsel Should be Appointed as Settlement Class Counsel ......................... 24

VII.  CONCLUSION ......................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 2008 Fannie Mae ERISA Litig.*,
  No. 09-cv-1350 (S.D.N.Y. May 5, 2015) ............................................................. 16

*In re Advanta Corp. ERISA Litig.*,
  No. 09-cv-4974 (E.D. Pa. Oct. 9, 2013) .............................................................. 16

*In re: Bear Stearns Cos. ERISA Litig.*,
  MDL No. 1963 (S.D.N.Y. Sept. 20, 2012) ........................................................... 17

*Brieger v. Tellabs, Inc.*,
  659 F. Supp. 2d 967 (N.D. Ill. 2009) .................................................................. 11

*Dalton v. Old Second Bancorp. Inc.*,
  No. 11-cv-1112 (N.D. Ill. Mar. 1, 2013) ............................................................. 16

*DiFelice v. U.S. Airways, Inc.*,
  436 F. Supp. 2d 756 (E.D. Va. 2006) .................................................................. 11

*In re Enron Corp.*,
  MDL No. 1446, No. 01-cv-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006)... 19, 21, 22, 23

*In re Enron Corp. Sec., Der. & ERISA Litig.*,
  284 F. Supp. 2d 511 (S.D. Tex. 2003) ................................................................. 20

*In re Fed. Nat'l Mortg. Assoc. Sec., Der., & "ERISA" Litig.*,
  MDL No. 1668 (D.D.C. Aug. 3, 2010) ................................................................ 17

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ......................................................................................... 8

*In re Global Crossing Sec. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 11

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ........................................................ *passim*

*Landgraff v. Columbia HCA Healthcare Corp.*,
  No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000) ................... 11, 12

*LaRue v. DeWolff, Boberg & Assoc., Inc.*,
  552 U.S. 248 (2008) ............................................................................................ 20

*M.D. v. Perry*,
    675 F.3d 832 (5th Cir. 2012) ..................................................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ................................................................................................ 14

*Mullen v. Treasure Chest Casino LLC*,
    186 F.3d 620 (5th Cir. 1999) ..................................................................................... 18

*Nelson v. Hodowal (IPALCO)*,
    512 F.3d 347 (7th Cir. 2008) ..................................................................................... 11

*Newby v. Enron Corp.*,
    394 F.3d 296 (5th Cir. 2004) ............................................................................6, 19, 23

*Paschal v. Child Dev., Inc.*,
    No. 12-cv-0184, 2014 WL 112214 (E.D. Ark. Jan. 10, 2014) ............................................ 23

*In re RadioShack Corp. ERISA Litig.*,
    MDL. No. 1875, No. 08-md-1875, (N.D. Tex. Oct. 12, 2010) ........................................... 16

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ..............................................................................*passim*

*In re Schering Plough Corp. ERISA Litig.*,
    589 F.3d 585 (3d Cir. 2009) ..................................................................................... 23

*Schwartz v. TXU Corp.*,
    No. 02-cv-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................7, 9, 16

*Slipchenko v. Brunel Energy, Inc.*,
    No. 11-cv-1465, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ........................................... 15

*Smith v. Aon*,
    238 F.R.D. 609 (N.D. Ill. 2006) ................................................................................. 24

*Stott v. Capital Fin. Servs., Inc.*,
    277 F.R.D. 316 (N.D. Tex. 2011)..........................................................................*passim*

*Tibble v. Edison Int'l*,
    135 S. Ct. 1823 (2015) .............................................................................................. 8

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .................................................................................... 6, 7

*In re Wachovia Corp. ERISA Litig.*,
    No. 09-cv-0262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ........................................... 8

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ...........................................................................19

*In re WorldCom, Inc. ERISA Litig.,*
  No. 02-cv-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ................................8

*Yost v. First Horizon Nat'l Corp.,*
  No. 08-cv-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011)..........................23

*Young, et al. v. Heimbuch, et al.,*
  No. 10-cv-8914 (C.D. Cal. May 21, 2012)..............................................17

**Statutes**

Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ...........................................6

Employee Retirement Income Security Act fo 1974, 29 U.S.C. § 1101 ...............................*passim*

29 U.S.C. §§ 1109(a) ...........................................................................21, 24

29 U.S.C. § 1132(a)(2) .......................................................................3, 20, 23

29 U.S.C. §1132(a)(3) ...........................................................................24

**Rules**

Fed. R. Civ. P. 10(c) ...........................................................................17, 24

Fed R. Civ. P. 23 ...........................................................................2, 16, 21, 23

Fed R. Civ. P. 23(a) ...........................................................................*passim*

Fed R. Civ. P. 23(a)(1) ...........................................................................14, 18, 23

Fed. R. Civ. P. 23(a)(2) ...........................................................................18, 19

Fed R. Civ. P. 23(a)(4) ...........................................................................21, 22, 24

Fed. R. Civ. P. 23(b) ...........................................................................17, 18, 23

Fed R. Civ. P. 23(b)(1) ...........................................................................22

Fed R. Civ. P. 23(b)(1)(A) ...........................................................................23

Fed R. Civ. P. 23(b)(1)(B) ...........................................................................23, 24

Fed R. Civ. P. 23(b)(2) ...........................................................................22, 24

Fed. R. Civ. P. 23(c)(2)(A)...........................................................................14

FED R. CIV. P. 23(e) ..................................................................................................... 14

FED R. CIV. P. 23(e)(2) .............................................................................................. 14

FED R. CIV. P. 23(g) ..................................................................................................... 21

FED R. CIV. P. 24(a)(4) .............................................................................................. 21

FED. R. CIV. P. 25 ........................................................................................................... 1

FED. R. CIV. P. 25(a)(1) ................................................................................................ 1

**Other Authorities**

Freedom of Information Act ..........................................................................................4

*Manual for Complex Litigation* § 21.641 .................................................................13

Plaintiffs Manoj P. Singh, Jeffrey Snyder, and William A. Gerhart ("Plaintiffs"),[1] respectfully submit this Memorandum in Support of the Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of the Settlement Class, Approval of Class Notice, Approval of the Plan of Allocation, and Scheduling of a Fairness Hearing ("Motion for Preliminary Approval") regarding the settlement entered into with Wells Fargo Bank, N.A. ("Wells Fargo") and Banco Popular de Puerto Rico ("Banco Popular," and together with Wells Fargo, the "Trustee Defendants"), and respectfully move this Court for an order (1) granting preliminary approval of the proposed Class Action Settlement Agreement and Release Between Plaintiffs and Defendants Wells Fargo Bank, N.A. and Banco Popular De Puerto Rico (the "Settlement" or "Settlement Agreement"),[2] (2) preliminarily certifying the below-defined Settlement Class, (3) approving the form and manner of providing notice of the Settlement to the proposed Settlement Class (the "Notice Plan"), (4) approving the proposed Plan of Allocation, and (5) scheduling a Fairness Hearing.

## I.    INTRODUCTION

Plaintiffs and Trustee Defendants (collectively the "Settling Parties") have reached a proposed Settlement of the allegations under ERISA against the Trustee Defendants, that provides for a monetary payment of $900,000.00 (Nine Hundred Thousand U.S. Dollars),

---

[1] On November 13, 2015, Named Plaintiffs filed a Suggestion of Death per FED. R. CIV. P. 25 concerning Named Plaintiff Steve Wolpin who passed away on October 30, 2015. Dkt. No. 119. Per FED. R. CIV. P. 25, if a motion for substitution "is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." There is no proposed substitution of party for Mr. Wolpin. Accordingly, upon expiration of the 90-day period on February 11, 2015, Plaintiffs will file a notice with the court requesting that Mr. Wolpin's claims be dismissed in accordance with FED. R. CIV. P. 25(a)(1). As contemplated in § 1.43 of the Settlement Agreement, the dismissal of Mr. Wolpin's claims is "without prejudice to Mr. Wolpin remaining a Settlement Class member and having a right to a Settlement Payment."

[2] The Settlement Agreement, included in the Appendix to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan of Allocation, and Scheduling of a Fairness Hearing ("APP"), as APP-1 – APP-64, itself has several exhibits. These exhibits include the Preliminary Approval Order, which is appended to the Settlement Agreement as Exhibit 3 at APP-39 – APP-52, and the proposed Final Approval Order and Judgment appended to the Settlement Agreement as Exhibit 4 at APP-53 – APP-60. All provisions of the Settlement Agreement are incorporated by reference herein.

providing a meaningful benefit to members of the Settlement Class (defined below), and resolving all claims asserted by Plaintiffs on behalf of the Plans and the Settlement Class against the Trustee Defendants.  Plaintiffs' allegations against the RadioShack Defendants (the "Non-Settling Defendants") have not been settled and are still being prosecuted.  The only effect this Settlement has on those allegations is a potential set-off in case of complete recovery.[3]

The Settling Parties agreed to the proposed Settlement after thirteen months of hard-fought litigation and a full day, formal mediation that was facilitated by John Bickerman, a well-respected mediator.  As set forth below in detail, all prerequisites for preliminary approval have been met and the proposed Settlement should be preliminarily approved allowing Plaintiffs to provide notice to the Settlement Class.  The proposed Notice Plan, which consists of individualized direct-mail, targeted newspaper publication, and a dedicated Internet Settlement website, is consistent with the forms of notice approved in directly analogous actions and satisfies any due process concerns.  Moreover, as part of the Settlement Agreement, the Settling Parties request the certification of the below-defined Settlement Class, which easily satisfies the requirements of Rule 23 for class certification, as discussed below.[4]  Finally, Plaintiffs seek preliminary approval of the proposed Plan of Allocation to govern the distribution of the Settlement Amount to the Settlement Class, and ask the Court to schedule a Fairness Hearing.  As discussed herein, in light of the facts, governing law, and the substantial risks of continued litigation, Plaintiffs and Class Counsel believe this is an excellent result for the Settlement Class.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

---

[3] The Trustee Defendants plan to file a Motion for an Order Approving a Bar Order, which enjoins the Non-Settling Defendants, Plaintiffs, RadioShack, and other third-parties from asserting claims against the Trustee Defendants and their releasees for indemnity, contribution, or any other claim arising out of this Action.  The Court's approval and issuance of the Bar Order is a condition precedent of Settlement.

[4] *See* APP-65 – APP-68 (a non-exhaustive list of 54 decisions from across the country certifying classes in directly analogous actions).

## A.        Summary of the Litigation

Plaintiffs Singh, Snyder, and Gerhart filed their initial complaints on November 26, 2014, December 5, 2014, and December 17, 2014, respectively, alleging claims pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), on behalf of the Plans, themselves, and the Plans' participants and beneficiaries arguing that Defendants are responsible for making the Plans and their participants whole in light of Defendants' fiduciary breaches during the Class Period.   On January 9, 2015, the Court entered an Order consolidating the three actions and appointing Kessler Topaz Meltzer & Check, LLP ("KTMC") as Interim Lead Class Counsel Committee Chair, appointing Stull, Stull & Brody ("SSB") and Connolly Wells & Gray, LLP ("CWG") as Interim Lead Class Counsel Committee Members, and appointing Lackey Hershman, LLP ("Lackey Hershman") as Interim Liaison Class Counsel.  Dkt. No. 29.

On February 5, 2015, RadioShack filed for protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Shortly thereafter, on February 9, 2015, Plaintiffs filed a consolidated complaint to govern the Actions.  Dkt. No. 39.  On February 13, 2015, the Court stayed all proceedings in the District Court pending the outcome in the United States Bankruptcy Court.  Dkt. No. 43.

On May 18, 2015, Plaintiffs filed their Amended Consolidated Class Action Complaint ("Complaint" or "¶__"), removing RadioShack as a Defendant given its bankruptcy filing.  Dkt. No. 66.  All Defendants moved to dismiss the Complaint on August 18, 2015 (Dkt. Nos. 90-98), which Plaintiffs opposed on October 18, 2015 (Dkt. Nos. 110-113), and Defendants filed their replies on November 17, 2015 (Dkt. Nos. 123-125).  On November 5, 2015, Plaintiffs moved for class certification.  Dkt. Nos. 114-116.  On November 25, 2015, the Court granted the Settling Parties Joint Motion to Stay as to the Trustee Defendants for settlement purposes.  Dkt. No. 130.

## B.       Investigation of Claims and Discovery

Class Counsel has vigorously litigated this Action and is committed to continuing to do so.   Prior to initiating the Action, Class Counsel conducted a vigorous investigation of RadioShack over several months, carefully vetting Plaintiffs' claims.   They then prepared initial and amended complaints containing details discerned through their extensive and thorough investigation, moved for and obtained consolidation of the initially separately filed actions, and successfully opposed Defendants' motion to stay due to the Bankruptcy Action.   Moreover, Class Counsel:  (i) negotiated and submitted a scheduling order and subsequent amendments thereto;  (ii) most recently responded to Defendants' three motions to dismiss; and (iii) filed Plaintiffs' opening motion for class certification.   Class Counsel has also been actively engaged in discovery, including:  (i) serving and responding to discovery requests; (ii) negotiating a protective order on confidentiality; (iii) serving requests pursuant to the Freedom of Information Act; (iv) serving subpoenas on relevant third-parties and obtaining documents in response thereto; (v) preparing and exchanging initial disclosures; and (vi)  negotiating with the Non-Settling Defendants for the production of thousands of pages of documents previously produced by RadioShack to the Department Of Labor.   Additionally, Class Counsel has actively participated in the Bankruptcy Action, negotiating for and securing valuable concessions and protections of the interests of the Plaintiffs and proposed Class, including the preservation of any documents related to this litigation by RadioShack.   The investigative and discovery efforts undertaken have provided Class Counsel with sufficient information to determine that the proposed Settlement with the Trustee Defendants is in the best interests of the Settlement Class.

## C.       Settlement Negotiations

The Parties participated in a full-day mediation session before Mr. John Bickerman, a

well-respected mediator experienced in ERISA breach of fiduciary duty matters on November 24, 2015.[5]   The Settlement negotiations were intense and arm's-length.   During the mediation, the Parties engaged in spirited debate as to critical legal and factual issues concerning liability and damages.   After eight hours of intense negotiations, the Settling Parties agreed in principle to a settlement with the Trustee Defendants.   Throughout the litigation and extensive mediation process, Class Counsel was cognizant of the strengths and weaknesses of Plaintiffs' claims and Trustee Defendants' defenses.   The arm's-length nature of the settlement negotiations strongly supports the conclusion that the proposed Settlement is fair, reasonable, and adequate.

### D.      The Proposed Settlement

The Settlement provides that the Trustee Defendants will pay $900,000.00 to be allocated to Settlement Class Members pursuant to the proposed Plan of Allocation discussed *infra*.   In exchange, Plaintiffs and the Plans will dismiss their claims against the Trustee Defendants as set forth more fully in the Settlement Agreement.   The Settlement Agreement also discusses a proposed Notice Plan, and provides for the payment of claims administration expenses, attorneys' fees, and Case Contribution Awards, which are subject to Court approval.

### E.      Proposed Timetable

Included in the Appendix at APP-69 is a proposed schedule for the Settlement approval process agreed to by the Settling Parties.   The Settling Parties request that the Court schedule a Fairness Hearing at least one hundred and fifty (150) days from the entry of an Order granting Plaintiffs' Motion for Preliminary Approval.   This proposal ensures that the Trustee Defendants will have sufficient time to produce to Class Counsel and the Settlement Administrator the information necessary to disseminate the Class Notice (45 days after the Preliminary Approval

---

[5] *See* http://www.bickerman.com/john-g-bickerman.

Order), that the Settlement Administrator will have sufficient time to mail the Class Notice (15 days after receiving the requisite data, *see* Settlement Agreement §§ 3.4.3, 6), and that the Fairness Hearing take place at least ninety (90) days from the mailing of Class Notice to give the Settlement Class fair notice of the Fairness Hearing date.   Moreover, by adhering to these timelines, it will ensure, as required by Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), that the Fairness Hearing takes place at least ninety (90) days from the date Defendants mail CAFA Notice.

## III.   THE SETTLEMENT SATISFIES THE STANDARD FOR APPROVAL

### A.   The Proposed Settlement Satisfies the *Reed* Factors

"To safeguard the interests of absent class members, district courts must determine whether proposed class-action settlements are fair, adequate, and reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012).[6]   In the context of a class action settlement, "compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 648 (N.D. Tex. 2010).   Accordingly, "[w]here the court finds that counsel have adequately represented the interests of the class, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* at 649.   Courts in the Fifth Circuit evaluate the fairness, reasonableness and adequacy of a settlement under the following six *Reed* factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

---

[6] *See also Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) ("The gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties.").

*Union Asset Mgmt. Holding A.G.*, 669 F.3d at 639 n.11 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).[7]

> **1.    The arm's-length negotiations and settlement were not the product of fraud or collusion**

Under the first *Reed* factor, the court looks for the existence of fraud or collusion behind the settlement.  *Klein*, 705 F. Supp. 2d at 651.  "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary."  *Id.*  Here, there is no evidence of any fraud or collusion.  Counsel for the Parties participated actively in the litigation – including a contested motion to dismiss and class certification – and settlement negotiations – including a formal, full day mediation presided by a respected, experienced mediator – before reaching the agreement in principle to settle.  Each side vigorously advocated on behalf of its respective clients underscoring the arm's-length nature of this agreement.  *See also* Section II.C, *supra*, discussing the settlement negotiations.

Further, as recognized in *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011), "[t]he proposed settlement also does not favor any class member or group of class members, which also weighs against any evidence of fraud or collusion and in favor of approval."  As explained in greater detail below in Section V, the proposed Plan of Allocation treats each Settlement Class Member the same.  This uniformity further supports the absence of fraud or collusion in this Action and the proposed Settlement.

> **2.    Continued litigation would be complex, costly, and lengthy**

Under the second *Reed* factor, courts consider the complexity, expenses, and likely duration of the litigation.  *Klein*, 705 F. Supp. 2d at 651.  "When the prospect of ongoing

---

[7] *See also Schwartz v. TXU Corp.*, No. 02-cv-2243, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005) ("Courts in the Fifth Circuit have consistently held that public policy favors the settlement of class actions.").

litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Id.* Numerous courts have noted the complexity of ERISA breach of fiduciary duty actions asserting claims analogous to those here. Indeed, in the similar *In re WorldCom, Inc. ERISA Litigation*, upon consideration of a proposed settlement, the court noted that there is a "general risk inherent in litigating complex claims such as these to their conclusion." *In re WorldCom, Inc. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004).[8]

The uncertainty of legal issues concerning fiduciary liability continues to ring true today. Indeed, the United States Supreme Court's 2014 decision in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), essentially rewrote the law that had existed for the last twenty years concerning fiduciary liability, leaving it to the lower courts to chart new waters in interpreting and applying the decision.[9] *Id.* at 2473. Just last year, the Supreme Court reversed a Ninth Circuit ruling concerning ongoing duties, under ERISA, to monitor the prudence of investments in a 401(k) Plan, resulting in more changes to ERISA jurisprudence.[10]

This case is not immune to the risks attendant to these uncertainties. Plaintiffs' claims raise numerous complex legal and factual issues which, absent the settlement, would consume substantial resources as the Parties proceeded with the necessary factual and expert discovery and motion practice. Although this Action commenced only thirteen months ago, Plaintiffs have

---

[8] *See also In re Wachovia Corp. ERISA Litig.*, No. 09-cv-0262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.").

[9] The Supreme Court was called upon to consider whether, when a company retirement plan's fiduciary's decision to buy or hold the employer's stock in the plan is challenged in court, the fiduciary is entitled to a "fiduciary-friendly" pleading standard that the lower courts have called a "presumption of prudence." Ultimately, the Supreme Court rejected the presumption, thereby creating new significant law in this area (*Id.* at 2463) and functionally eviscerating twenty years' worth of appellate case law on ERISA's duty of prudence regarding employer securities.

[10] *See Tibble v. Edison Int'l* 135 S. Ct. 1823, 1825 (2015).

already expended considerable efforts pursuing their allegations including full briefing on Defendants' motions to dismiss and filing their opening motion in support of class certification. Absent settlement, there is no doubt that the bulk of the litigation would lie ahead. Substantial discovery, including numerous depositions of Defendants and third-party witnesses, as well as liability and damages experts, would need to be completed in order to make the case trial ready. Even before that, extensive briefing, including the balance of the contested class certification and likely summary judgment motions would lie ahead. Moreover, a trial would be lengthy and complex given the factual and legal issues relevant to Defendants' decision to continue offering Company Stock as an investment option in the Plans during the Class Period and Plaintiffs' arguments as to why such conduct was imprudent. The immediate, guaranteed benefit provided by the Settlement as opposed to the uncertainty of continued, costly, and time-consuming litigation supports approval.

> **3.      The litigation, discovery, and settlement discussions advanced far enough to assess the action's likely outcome**

Under the third *Reed* factor, a court considers the stage of the proceedings and the amount of discovery completed. *Klein*, 705 F. Supp. 2d at 653. It evaluates "whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions." *Id*. A settlement can be approved under this factor even if the parties have not conducted much formal discovery. Indeed, "unless counsel settled while 'groping in darkness' the lack of formal discovery will not hinder the settlement." *Schwartz*, 2005 WL 3148350, at *19. Rather, "the scope of the discovery to be conducted in each case rests with the sound discretion of the trial judge." *Klein*, 705 F. Supp. 2d at 653.

This factor supports approval. Indeed, Plaintiffs have a comprehensive understanding of the key legal issues in the Action based on their litigation and discovery efforts to date. As

discussed in detail in Section II.B, Class Counsel's efforts in including (i) investigating Plaintiffs' claims, (ii) filing of the initial complaints and the Complaint, (iii) briefing related to Defendants' multiple motions to dismiss and Plaintiffs' opening motion for class certification, and (iv) detailed discovery, including both issuing and responding to comprehensive discovery requests and interrogatories, easily satisfy this factor.  Moreover, preparing for and participating in the mediation session presided over by an experienced neutral sharpened Class Counsel's ability to assess the value of Plaintiffs' claims.  *See* Section II.C *supra*.  These facts are sufficient to satisfy this *Reed* factor.

### 4.     Plaintiffs faced real risks in establishing liability and damages

The fourth *Reed* factor examines the probability of plaintiffs' success on the merits of their claims.  *Klein*, 705 F. Supp. 2d at 654.  As the *Klein* court noted, "evaluating the likelihood of success 'contains an internal tension.'"  *Id.* (quoting *Reed*, 703 F.2d at 172).  "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case.  The court, however, must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Klein*, 705 F. Supp. 2d at 654 (quoting *Reed*, 703 F.2d at 172).  "Despite this tension, absent fraud or collusion, the most important *Reed* factor is the probability of plaintiffs' success on the merits."  *Klein*, 705 F. Supp. 2d at 654.

This factor is satisfied.  First, as noted above, numerous courts have acknowledged the especially complex nature of ERISA breach of fiduciary duty class actions such as this one.  Additionally, as noted above Plaintiffs, moved for class certification, but Plaintiffs anticipate that, absent this Settlement, the Trustee Defendants would advance strong arguments in opposition thereto.  For example, in their motion to dismiss, Banco Popular argued that none of

the Plaintiffs had standing to pursue their claims against it because none of the Plaintiffs were participants in the Puerto Rico Plan.  *See* Dkt. No. 97 at 9-14.  Thus, although Plaintiffs are confident in their claims against Banco Popular, there is considerable risk that their claims could be defeated in their entirety satisfying this *Reed* factor.  *See In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 459 n.13 (S.D.N.Y. 2004) (finding that plaintiffs' significant legal and factual obstacles to proving their case, when viewed against the substantial and certain benefits of settlement, supported settlement approval).

Moreover, there is considerable risk with respect to the damages issue, in particular that Plaintiffs might receive less as a result of a judgment than is provided for by the Settlement, especially given that to the best of Class Counsel's knowledge, only four similar "company stock" ERISA class actions have gone to trial, and in each instance, the defendants prevailed.[11]

Indeed, the Trustee Defendants have, and certainly would continue to, argue that, as a directed trustee, they had a limited duty to act, and could only act if at all if there was clear and compelling public indicators that called into serious question RadioShack's viability as a going concern.  *See* Dkt. No. 124 at 2.  Thus, Plaintiffs faced the argument that, at the earliest, the Trustee Defendants' duty to act was only triggered as of September 15, 2014, when the Trustee Defendants received instructions from RadioShack to freeze any further Plan investments in RadioShack Stock.  *See id.* at 4.  If the Court were to endorse this argument, and essentially determine that the Trustee Defendants did not breach their fiduciary duties until September 2014, Plaintiffs' damages would be dramatically reduced given that RadioShack Stock had already fallen to around $1.00 by then.  Thus, there is no assurance Plaintiffs would prevail if litigation

---

[11] *See Brieger v. Tellabs, Inc.*, 659 F. Supp. 2d 967 (N.D. Ill. 2009); *Nelson v. Hodowal (IPALCO)*, 512 F.3d 347 (7th Cir. 2008); *DiFelice v. U.S. Airways, Inc.*, 436 F. Supp. 2d 756 (E.D. Va. 2006); *Landgraff v. Columbia HCA Healthcare Corp.*, No. 98-cv-90, 2000 WL 33726564 (M.D. Tenn. May 24, 2000).

were to continue, much less that they would recover more than $900,000. In sum, the complex and contested questions of law and fact in ERISA litigation in general, and in this Action with regard to the Trustee Defendants in particular, underscore that Plaintiffs faced real risks in establishing liability and damages and thus weigh in favor of preliminary approval of the Settlement.

### 5. The Settlement is in the range of reasonableness in light of the best possible recovery and the attendant risks of litigation

The fifth *Reed* factor requires that a court consider the range of possible recovery by a class. *Klein*, 705 F. Supp. 2d at 656. "This factor compares the recovery for the class under the proposed agreement with the likely estimated value of the claims if they went to trial." *Id.* "Under this factor, a court should consider the views of objecting class members when their objections to the settlement agreement center on their view that the relief it provides is inadequate." *Id.* (quoting *Ayers v. Thompson*, 358 F.3d 356, 370 (5th Cir. 2004)).[12] "The court must determine whether, taking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement amount is fair and reasonable." *Klein*, 705 F. Supp. 2d at 656. "The court's analysis of the reasonableness of the recovery provided under the Settlement Agreement can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount." *Id.* "After determining if any legal or factual obstacles exist, a district court must make an inquiry into whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the

---

[12] The *Klein* court also noted that "under this factor, a court should consider the views of objecting class members when their objections to the settlement agreement center on their view that the relief it provides is inadequate." *Id.* (quoting *Ayers*, 358 F.3d at 370). It is premature to assess this aspect of this *Reed* factor, as notice of the proposed Settlement will only be disseminated to the Settlement Class after this Court grants preliminary approval. Plaintiffs will address any objection(s) in later filings. However, the Plaintiffs have been actively involved with and apprised of all aspects of the Settlement and approve of the Settlement.

plaintiffs' success on the merits." *Id.* (emphasis in original).

This factor strongly weighs in favor of the proposed Settlement. As noted above in connection with the fifth *Reed* factor, Plaintiffs have faced, and would continue to face, significant opposition regarding the Trustee Defendants' liability and the measure of damages. The Trustee Defendants would continue to argue that as directed trustees, they had a "limited" duty to act which is only triggered in "limited, extraordinary circumstances where there are clear and compelling public indicators that call into serious question a company's viability as a going concern." *See* Dkt. No. 124 at 2-3. Wells Fargo argued that at the earliest, its duty to act was triggered as of September 15, 2014 when it received instructions from RadioShack to freeze any further investments in RadioShack Stock. *See id.* at 4. Accepting this argument would significantly reduce Plaintiffs' damages recoverable against the Trustee Defendants, as the value of RadioShack Stock declined significantly during the Class Period. For example, as of June 30, 2011 the value of RadioShack Stock in the 401(k) Plan was $39,580,506, or $13.31/share, and the value of RadioShack Stock in the Puerto Rico Plan was $800,131. ¶¶ 86, 89. However, as of June 30, 2014, the value of RadioShack Stock in the 401(k) Plan was $3,511,687 or $0.99/share and the value of RadioShack Stock in the Puerto Rico Plan was down to $119,299. ¶¶ 102, 105. The Settlement Amount is thus squarely in within a range of reasonableness.

### 6. Class Counsel and Plaintiffs believe the Settlement is an excellent result

The sixth *Reed* factor examines the opinions of the class counsel, class representatives, and absent class members. *Klein*, 705 F. Supp. 2d at 660. "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight." *Klein*, 705 F. Supp. 2d at 649. "Counsel are the Court's 'main source of information about the settlement,' *Manual for Complex Litigation* § 21.641, and therefore the Court will give weight to class counsel's opinion

regarding the fairness of settlement." *Klein*, 705 F. Supp. 2d at 660. As the *Klein* court went on to explain, "[b]ecause the court is to give significant weight to the opinion of class counsel, it is not routine for a court to overrule a decision that settlement is in the best interest of the class." *Id.* at 661. Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

As discussed herein, Class Counsel has extensively investigated and litigated this Action and engaged in spirited negotiations before the Settlement was reached.[13] Moreover, as discussed greater below in Section VI.C, Class Counsel have substantial experience litigating similar ERISA class action cases, along with other complex litigation, and are thus well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement. Based on their extensive experience litigating and successfully resolving ERISA cases generally, and their investigation and evaluation of the facts and legal issues in this Action specifically, Class Counsel strongly recommend that this Settlement be approved.

## IV. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED

Rule 23(c)(2)(A) provides that, "for any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Rule 23(e)(2) requires the Court "to direct notice in a reasonable manner to all class members who would be bound by the proposal." *Stott*, 277 F.R.D. at 342. In order to satisfy due process considerations, notice to Settlement Class Members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "There are no rigid rules to determine whether a settlement notice satisfies constitutional or Rule 23(e)

---

[13] *See* Sections II.A through II.C, III.B.1, and III.B.3, *supra*.

requirements[.]" *Slipchenko v. Brunel Energy, Inc.*, No. 11-cv-1465, 2015 WL 338358, at *5 (S.D. Tex. Jan. 23, 2015) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005)).   Instead, "a settlement notice need only satisfy the broad reasonableness standards imposed by due process." *Slipchenko*, 2015 WL 338358, at *5.   (citing *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010)).   "Due process is satisfied if the notice provides class members with the "information reasonably necessary for them to make a decision whether to object to the settlement." *Slipchenko*, 2015 WL 338358, at *5.

Plaintiffs' proposed Notice Plan readily satisfies this standard and the mandate of due process.   The proposed Notice Plan, which includes multiple components designed to reach the largest number of Settlement Class Members possible, will fully inform Settlement Class Members about the Action, the proposed Settlement, and the facts needed to make informed decisions about their rights.   The Class Notice, attached as Exhibit 1 to the Settlement Agreement at APP-28 – APP-36 will be sent by first-class mail to the last known address of the Settlement Class Members at least ninety days (90) prior to the Fairness Hearing.   Second, the Publication Notice, attached as Exhibit 2 to the Settlement Agreement at APP-37 – APP-38, will be published in *USA Today* and *PR Newswire* no later than ninety days (90) before the Fairness Hearing.   Additionally, by that same date, the Class Notice, along with other documents related to the Action, such as the Settlement Agreement with all of its Exhibits, and a list of frequently asked questions, will be posted on a dedicated Settlement website established by Class Counsel. The Class Notice will also provide contact information for Class Counsel who will monitor a dedicated, toll-free Settlement telephone number with an Interactive Voice Response system which will provide information regarding the Settlement and the opportunity to leave a voicemail for Class Counsel.

The proposed Notices themselves describe in plain English, *inter alia*:   (i) the terms and operations of the Settlement; (ii) the nature and extent of the release of claims; (iii) the maximum attorneys' fees that may be sought; (iv) the procedure and timing for objecting to the Settlement; and (v) the date and place for the Fairness Hearing.   This information is often recognized by courts as satisfying the requisite standard.   *See, e.g., In re RadioShack Corp. ERISA Litig.*, MDL. No. 1875, No. 08-md-1875, Order Granting Motion for Preliminary Approval of Settlement, Dkt. No. 82 (N.D. Tex. Oct. 12, 2010) at ¶ 4 (endorsing analogous class notice, noting "the form of Notice attached to the Stipulation [Dkt. No. 81-2, Exhibit D] is hereby APPROVED").   Indeed, numerous courts within this Circuit and across the country have approved as fair, similar notices and/or notice plans.[14]   The Notice Plan thus satisfies all due process requirements.

## V.   THE PLAN OF ALLOCATION SHOULD BE PRELIMINARILY APPROVED

"Approval of a plan of allocation of settlement proceeds among the members of the Class under Federal Rule of Civil Procedure 23 is governed by the same standard of fairness, reasonableness and adequacy applicable to approval of the settlement as a whole."   *Schwartz*, 2005 WL 3148350, at *23.   "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."   *Id.*   However, "a class action settlement need not necessarily treat all class members equally."   *Id.*

The proposed Plan of Allocation, attached to the Settlement Agreement as Exhibit 5 at APP-61 – APP-64, is premised on calculating a Settlement Class Member's *pro rata* distribution based upon the individual's balance in the Plan(s) on the first day of the Class Period plus any

---

[14] *See, e.g., In re 2008 Fannie Mae ERISA Litig.*, No. 09-cv-1350, Order Granting Preliminary Approval of Settlement at ¶ 6 (S.D.N.Y. May 5, 2015) (approving analogous notice plan, finding "such proposed manner is the best notice practicable under the circumstances"); *In re Advanta Corp. ERISA Litig.*, No. 09-cv-4974, Order Granting Preliminary Approval of Settlement at ¶ 6 (E.D. Pa. Oct. 9, 2013) (same); *Dalton v. Old Second Bancorp. Inc.*, No. 11-cv-1112, Order Granting Preliminary Approval of Settlement at ¶ 4 (N.D. Ill. Mar. 1, 2013) (same).

acquisitions of RadioShack Stock during the Class Period, and then subtracting all dispositions of RadioShack Stock during the Class Period and the balance, if any, of RadioShack Stock remaining on the last day of the Class Period.  The Net Losses of the Settlement Class Members as calculated pursuant to this formula will then be totaled to yield the loss of the Plans as a whole over the Class Period.  As soon as practicable after the calculations are made, the Settlement Claims Administrator shall distribute to each such participant his or her or Final Individual Dollar Recovery, less any expenses or charges approved by the Court, via check directly to the eligible former participant, or deposited into the accounts of any Settlement Class Members who still have active Plan accounts.  All Settlement Class Members are treated equally such that no Settlement Class Member is singled out for either disproportionately favorable or unfavorable treatment.  Indeed, the Plan of Allocation calculates the dollars lost in each individual's account as a result of holding RadioShack Stock using the formula discussed above which has been previously approved in analogous ERISA breach of fiduciary duty actions around the country.[15]

## VI.   PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE[16]

### A.   The Settlement Class Satisfies the Requirements of Rule 23(a)

Plaintiffs seek the preliminary certification of the following Settlement Class pursuant to FED. R. CIV. P. 23(a) and (b)(1) and/or (b)(2):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the RadioShack 401(k) Plan and/or the RadioShack Puerto Rico 1165(e) Plan at any time between November 30, 2011, and the Stipulation Execution Date (the "Class Period") and whose Plan accounts

---

[15] See, e.g., In re: Bear Stearns Cos. ERISA Litig., MDL No. 1963, Order and Final Judgment at 7 (S.D.N.Y. Sept. 20, 2012); Young, et al. v. Heimbuch, et al., No. 10-cv-8914, Order and Final Judgment at 7 (C.D. Cal. May 21, 2012); In re Fed. Nat'l Mortg. Assoc. Sec., Der., & "ERISA" Litig., MDL No. 1668, Order and Final Judgment at 8 (D.D.C. Aug. 3, 2010).

[16] Plaintiffs incorporate by reference into the instant Memorandum pursuant to FED. R. CIV. P. 10(c) the arguments in their Memorandum of Law in Support of their Motion for Class Certification.  See Dkt. No. 115.

included investments in RadioShack Stock.

"A district court has wide discretion in deciding whether or not to certify a proposed class." *Stott*, 277 F.R.D. at 324. "However that discretion is not unlimited; the Court must undertake a rigorous analysis to ensure that the requirements of Rule 23(a) are met." *Stott*, 277 F.R.D. at 324. "Rule 23(a) requires that the proposed class representatives demonstrate numerosity, commonality, typicality, and adequacy of representation." *Id.* In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three subsections of FED. R. CIV. P 23(b). As discussed below, the Settlement Class satisfies the requirements of Rules 23(a), (b)(1), and (b)(2), and should thus be preliminarily certified for settlement purposes.

### 1. Numerosity

"Numerosity is satisfied when the proposed class is 'so large that joinder of all members is impracticable.'" *Stott*, 277 F.R.D. at 324 (citing FED. R. CIV. P. 23(a)). While there is no exact number that is deemed to satisfy the numerosity requirement, the proposed class here, which has thousands of members, easily satisfies this requirement. *See, e.g., Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that a class of 100 to 150 members satisfies the numerosity requirement). Upon information and belief, there are about 4,500 employees of RadioShack that participated in, or were beneficiaries of, the Plans during the Class Period and whose Plan accounts included investment in RadioShack Stock. This is a subset of the several thousand RadioShack employees who participated in the Plans.[17] Rule 23(a)(1)'s numerosity requirement is thus plainly satisfied.

---

[17] For example, according to the 2011 and 2012 Forms 5500 filed on behalf of the 401(k) Plan, there were approximately 18,310 and 18,291 Plan participants in the 401(k) Plan in 2011 and 2012, respectively. *See* ¶ 113 n.7. With respect to the Puerto Rico Plan, according to the 2011 and 2012 Forms 5500 filed on behalf of the Puerto Rico Plan, there were approximately 452 and 447 Plan participants in the Puerto Rico Plan in 2011 and 2012, respectively. *See* ¶ 113 n.7.

2.    **Commonality**

"Commonality is met when 'there are questions of law or fact common to the class.'" *Stott*, 277 F.R.D. at 324. "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke." *M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012). The Supreme Court clarified the commonality standard, noting that "commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Commonality is satisfied here because the central issue to Plaintiffs' claims is whether Defendants breached fiduciary duties owed to the Plans, Plaintiffs, and members of the Settlement Class by failing to act prudently and solely in the interests of the Plans and their participants and beneficiaries. Plaintiffs and the Settlement Class share other questions of law *and* fact that will resolve issues that are central to the validity of the pending ERISA claims, including: (1) whether Defendants were ERISA fiduciaries; (2) whether Defendants violated ERISA; and (3) whether the Plans, Plaintiffs, and members of the Settlement Class have sustained damages and, if so, the proper measure thereof. ¶ 114. Plaintiffs allege a legal theory that applies equally to all Settlement Class members – that Defendants' uniform conduct breached ERISA's fiduciary duties and harmed the Plaintiffs, the Plans, and the members of the Settlement Class uniformly. As the *Enron* court concluded, "[t]he resolution of these issues will not depend upon which plan participant sues on behalf of each Plan, but are common to all members of the class." *In re Enron Corp.*, MDL No. 1446, No. 01-cv-3913, 2006 WL 1662596, at *9 (S.D. Tex. June 7, 2006).

The damages Plaintiffs seek on behalf of the Plans further confirm that commonality is

satisfied.   In an ERISA case such as this, the proper measure of damages for any given plan participant derives from the loss to a plan as a whole and is calculated as the difference between what plan participants received and what the plan participants would have received if the plan assets had been invested prudently.   The loss to the plan as a whole is not calculated on an individual plan participant basis.   Rather, the trier of fact looks to the prudent investment alternatives the Plans offered during the Class Period to determine what the Plans would have earned but for Defendants' breaches of fiduciary duty and then the loss is allocated formulaically to participants based upon their holdings in the imprudent stock.[18]   Plaintiffs' methodology for calculating Plans-wide damages is further evidence that the commonality requirement is met.

### 3.    Typicality

"Typicality is satisfied when 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"   *Stott*, 277 F.R.D. at 325 (quoting FED. R. CIV. P. 23(a)(3)).   "The test for typicality is 'not demanding,' and 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent."   *Stott*, 277 F.R.D. at 324 (quoting *Mullen*, 186 F.3d at 625).   "Typicality does not require a complete identify of claims.   Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class."   *Stott*, 277 F.R.D. at 324.   "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality."   *Id.*

The typicality requirement of Rule 23(a)(3) is satisfied here because the Plaintiffs' claims

---

[18] *See, e.g., LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 253 n.4 (2008) ("Section 502(a)(2) encompasses appropriate claims for 'lost profits.'"); *In re Enron Corp. Sec., Der. & ERISA Litig.*, 284 F. Supp. 2d 511, 613 (S.D. Tex. 2003) (noting that "under [ERISA§ 409 and § 502(a)(2)] the 'appropriate remedy in cases of breach of fiduciary duty is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of the trust'").

arise from and challenge the same event or course of conduct that gave rise to the claims of the other Settlement Class Members and are based on the same legal theory – *i.e.*, breaches of fiduciary duty as it relates to RadioShack Stock in the Plans.   Therefore, the typicality requirement of Rule 23(a)(3) is met.[19]

Moreover, as the *Stott* court noted, "the [typicality] prerequisite in the settlement context requires proof that the interests of the class representatives and the class are commonly held for purposes of receiving similar or overlapping benefits from a settlement."   *Stott*, 277 F.R.D. at 324.   Like Plaintiffs, each proposed Settlement Class Member was a participant in the Plans during the Class Period with part of his or her individual Plan(s) investment portfolio invested in Company Stock.   Each Plaintiff, along with the other Settlement Class Members, sustained injury caused by Defendants' fiduciary breaches.   Plaintiffs brought this Action on behalf of the Plans in order to remedy the losses sustained by the Plans as a result of the Defendant-fiduciaries alleged breaches.   The relief sought, and the Settlement Amount obtained, is thus necessarily "similar or overlapping benefits."   The typicality requirement is thus satisfied.

### 4.   Adequacy

"Rule 24(a)(4) is satisfied where:   (1) the named plaintiffs' counsel will prosecute the action zealously and competently;[20] (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named

---

[19] *See, e.g., Enron*, 2006 WL 1662596, at *10-11 (noting "Plaintiffs' shared breach-of-fiduciary-duty claims arose from the same alleged course of conduct by Defendants as part of a larger fraudulent scheme, the duties owed by each alleged fiduciary of the plan and its participants and beneficiaries are the same, and the kind of damages suffered by the plans is the same," and that "each of the claims arises from the same event or course of conduct, and each is based on the same legal theory, i.e., breach of fiduciary duty under ERISA § 409," and concluding "[t]he Court finds such shared allegations meet the typicality requirement even where some facts regarding individual participant varied").

[20] The adequacy of counsel is governed by Rule 23(g), and the adequacy of the named plaintiff is governed by Rule 23(a)(4). *See* Fed. R. Civ. P. 23 Advisory Committee's Notes. *See* Section VI.C.

plaintiffs and the absent class members." *Stott*, 277 F.R.D. at 324.   In this analysis, a court examines "the class representatives' willingness, experience, and ability to handle class actions, to take an active role in and control the litigation, to protect the interests of the absent members to determine if there is fair and adequate representation of the interests of the class." *Enron*, 2006 WL 1662596, at *12.   "The court must also determine if there are any conflicts of interest between the named plaintiffs and the class they seek to represent, which would make the class representation inadequate." *Id.*

First, the adequacy of each of the Plaintiffs is evidenced by their commitment to the Action thus far.   Indeed, in connection with Plaintiffs' motion for class certification, Plaintiffs Singh, Snyder, and Gerhart each submitted a declaration attesting to their efforts to date and confirming that they are ready, willing, and able to fulfill the duties required of class representatives.   *See* Dkt. No. 117 at APP-137 – APP-148.   Plaintiffs Snyder and Gerhart gave depositions, and Plaintiff Singh was prepared to give his deposition, although it did not go forward as it was cancelled less than 3 days before it was to take place, after Plaintiff Singh had arranged to take a day off from work for the same.   Plaintiffs have also answered interrogatories and produced documents.   Plaintiffs have been intimately involved in this Action and are more than adequate to serve as Settlement Class Representatives.   Second, Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members.   Plaintiffs' interests in the relief sought totally overlap with those of all Settlement Class Members as demonstrated by the fact that, ultimately, Plaintiffs seek to establish that Defendants breached their fiduciary duties by continuing to offer RadioShack Stock as an investment option which caused the Plans and Settlement Class Members an economic loss.   Plaintiffs thus satisfy Rule 23(a)(4).

**B.      The Settlement Class Meets the Requirements of Rules 23(b)(1) and (b)(2)**

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three subsections of FED. R. CIV. P. 23(b).  "The distinction between 23(b)(1)(A) and (b)(1)(B) is that 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Enron*, 2006 WL 1662596, at *14.  The Settlement Class here may be certified under Rule 23(b)(1)(B), Rule 23(b)(1)(A), or both.[21]

Many courts have relied on Rule 23(b)(1)(B) in certifying analogous classes because it is particularly well-suited for cases alleging breaches of fiduciary obligations.  As the *Enron* court noted in its analysis, the Advisory Committee Notes accompanying the 1966 amendments to Rule 23 "state that certification under Rule 23(b)(1)(B) is appropriate in an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust."  *Enron*, 2006 WL 1662596, at *14.  Indeed, as the *Enron* court went on to note, "because suits brought pursuant to [ERISA] § 502(a)(2) are representational or derivative, i.e., brought on behalf of the plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class."  *Enron*, 2006 WL 1662596, at *14.  Courts across the country have reached the same conclusion.[22]  As another district court explained when certifying ERISA claims under Rule 23(b)(1)(B), "because Plaintiffs properly bring this action in

---

[21] Certification under subsection (b)(1)(A) is also appropriate.  In fact, it is not uncommon for courts to certify ERISA class actions under both subsections of Rule 23(b)(1).  *See, e.g., Paschal v. Child Dev., Inc.*, No. 12-cv-0184, 2014 WL 112214, at *6 (E.D. Ark. Jan. 10, 2014) ("specifically as to plaintiffs' ERISA claims, several courts have held the type of ERISA claims for breach of fiduciary duty raised here are particularly appropriate for Rule 23(b)(1)(A) and (B) certification because of the ERISA's distinctive representative capacity and remedial provisions."); *Enron*, 2006 WL 1662596, at *15 ("the Court finds that certification under both Rule 23(b)(1)(A) and (B) is appropriate here"); *Yost v. First Horizon Nat'l Corp.*, No. 08-cv-2293, 2011 WL 2182262, at *13-14 (W.D. Tenn. June 3, 2011) (certifying class under Rule 23(b)(1)(A) and 23(b)(1)(B)).

[22] *See, e.g., In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) (certifying analogous company stock breach of fiduciary duty claims recognizing that because ERISA § 502(a)(2) breach of fiduciary duty claims are derivative in nature they "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class").  *See also* APP-65 – APP-68 (non-exhaustive list of 54 decisions certifying classes in directly analogous actions).

23

a representative capacity on behalf of the Plan itself, adjudications with respect to individual members of the class … would as a practical matter be dispositive of the interest of other members not parties to the adjudications or [would] substantially impair their ability to protect their interests." *Smith v. Aon*, 238 F.R.D. 609, 617 (N.D. Ill. 2006). Given ERISA's "representative capacity" and remedial provisions, certification is particularly warranted under Rule 23(b)(1)(B).[23]

### C.    Class Counsel Should be Appointed as Settlement Class Counsel

As noted above, inquiry into the adequacy of class counsel has been decoupled from the Rule 23(a)(4) inquiry. As the *Stott* court noted:

> Rule 23(g) provides, in relevant part, "(1) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

277 F.R.D. at 342. Each of these considerations support Class Counsel's adequacy.

As demonstrated by this Court's Order appointing Interim Lead and Liaison Class Counsel (Dkt. No. 29 at ¶ 9), Class Counsel are among the most experienced ERISA class action attorneys in the nation, and are highly qualified to prosecute this litigation.[24] Class Counsel are qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex

---

[23] Certification is also appropriate under Rule 23(b)(2), which notes a class may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. P. 23(b)(2). The Complaint clearly seeks injunctive and declaratory relief, *see, e.g.*, Complaint at 112, Request For Relief, A. Indeed, if Plaintiffs prevail in establishing Defendants' liability, Defendants will be obliged to make the *Plans* whole and take whatever equitable actions are ordered by the Court, including the declaratory and equitable relief specifically sought by Plaintiffs. *See* ERISA §§ 409(a), 502(a)(2)-(3), 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

[24] Plaintiffs incorporate by reference into the instant memorandum pursuant to FED. R. CIV. P. 10(c) the arguments in their memorandum in support of their motion to consolidate cases and appoint counsel. Dkt. No. 11 at 11-23.

24

class action litigation, including extensive experience in the context of analogous ERISA claims based on the imprudent retention of company stock as a plan investment option. Proposed Lead Class Counsel KTMC is exceptionally qualified to serve as counsel for the Settlement Class given that the firm is one of the most experienced ERISA litigation firms in the country, strongly weighing in favor of its appointment here.[25] Additionally, Committee Members CWG and SSB, and proposed Liaison Class Counsel Lackey Hershman, are experienced law firms that have substantially contributed to the prosecution of this Action and will continue to serve the interests of the Settlement Class.[26]

The course of this litigation has amply demonstrated Class Counsel's knowledge of the applicable law and willingness to devote the resources necessary to protect the interests of the Settlement Class. As discussed herein, Class Counsel has vigorously litigated this action and is committed to continuing to do so. *See* Section II.B *supra*. For these reasons, Plaintiffs respectfully request that the Court appoint KTMC as Lead Class Counsel for the Settlement Class, appoint SSB and CWG as Lead Class Counsel Committee Members for the Settlement Class, and appoint Lackey Hershman as Liaison Class Counsel for the Settlement Class.

## VII.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully move this Court to grant their Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Preliminary Approval of Plan of Allocation, and Scheduling of a Fairness Hearing.

---

[25] *See* firm resume of KTMC, attached as APP -70 – APP-112.
[26] Further, as reflected in the firm resumes included in the Appendix as APP-113 – APP-182, proposed Lead Class Counsel, Lead Class Counsel Committee Members, and Liaison Class Counsel are eminently qualified to litigate this action on behalf of the Plaintiffs, the Plans, and the proposed Settlement Class.

Dated:  January 21, 2016

_/s/ Mark K. Gyandoh_____
**KESSLER TOPAZ MELTZER & CHECK, LLP**
Edward W. Ciolko (admitted *Pro Hac Vice*)
Donna Siegel Moffa (admitted *Pro Hac Vice*)
Mark K. Gyandoh (*admitted Pro Hac Vice*)
Julie Siebert-Johnson (*admitted Pro Hac Vice*)
280 King Of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko@ktmc.com
       dmoffa@ktmc.com
       mgyandoh@ktmc.com
       jsjohnson@ktmc.com

*Interim Lead Class Counsel Committee Chair*

Gerald D. Wells, III
Robert J. Gray (*admitted Pro Hac Vice*)
**CONNOLLY WELLS & GRAY, LLP**
2200 Renaissance Boulevard
Suite 308
King of Prussia, PA  19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com
       rgray@cwg-law.com

Michael J. Klein (*admitted Pro Hac Vice*)
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022
Email:  mklein@ssbny.com

*Interim Lead Class Counsel Committee Members*

Roger L. Mandel
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
**LACKEY HERSHMAN, LLP**
3102 Oak Lawn Avenue, Suite 777

Dallas, TX 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203
Email:  rlm@lhlaw.net
          beb@lhlaw.net

*Interim Liaison Class Counsel*

George C. Aguilar (*admitted Pro Hac Vice*)
**ROBBINS ARROYO LLP**
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
Email: gaguilar@robbinsarroyo.com

*Counsel for Plaintiff Wolpin*

## <u>CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 7.1(b)</u>

This Motion is potentially opposed in part by the Non-Settling Defendants as explained below.

With respect to the Trustee Defendants, on January 20, 2016, counsel for Plaintiffs asked counsel for the Trustee Defendants via email their position regarding Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan of Allocation, and Scheduling of a Fairness Hearing, and counsel for the Trustee Defendants responded by email on January 21, 2016 indicating that they join in the relief requested, but do not agree with some of the allegations/statements made in Plaintiffs' Memorandum.

With respect to the Non-Settling Defendants, on January 21, 2016, Mark Gyandoh, counsel for Plaintiffs, asked Michael Edney, counsel representing the Non-Settling Defendants in connection with the Settlement, via telephone their position regarding Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, Approval of Plan of Allocation, and Scheduling of a Fairness Hearing. Mr. Edney responded that the Non-Settling Defendants do not join in the relief requested, and specifically reserve their rights to object to the proposed Bar Order and any other aspects of the Settlement.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh (*admitted Pro Hac Vice*)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 21, 2016, I electronically filed the foregoing with the clerk of Court using the CM/ECF system, which will send a notification to all counsel of record in this Action.

/s/ *Mark K. Gyandoh*

Mark K. Gyandoh