**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE 2014 RADIOSHACK ERISA LITIGATION** | §<br>§<br>§<br>§<br>§ | |
| | | **Master File No. 4:14-cv-959-O** |
| **THIS DOCUMENT RELATED TO: ALL ACTIONS** | §<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss for Failure to State a Claim and Motion

to Strike Amended Complaint Containing Jury Demand (ECF No. 93), filed August 18, 2015, and

Defendants' Brief in Support (ECF No. 94), filed August 19, 2015; Plaintiffs' Response (ECF No.

113), filed October 18, 2015; and Defendants' Reply (ECF No. 123), filed November 17, 2015.

Having considered the motion, related briefing, and applicable law, the Court finds Defendants'

motion to dismiss should be and is hereby **GRANTED in part and DENIED in part**.

## I.   BACKGROUND

Plaintiffs filed this stock drop suit on behalf of themselves, the RadioShack 401(k) Plan,

corresponding Puerto Rico 401(k) Plan (collectively, the "401(k) Plans or the Plans"), and a class

of similarly situated participants and beneficiaries of the 40l(k) Plans, alleging that the RadioShack

Director Defendants and members of the RadioShack Administrative Committee (collectively

"RadioShack Defendants or Defendants") breached their fiduciary duties by keeping their employee

stock options plans ("ESOPs") invested in RadioShack ("RadioShack or Company") stock despite

its decline into bankruptcy.  According to Plaintiffs, because the RadioShack Defendants knew or

1

should have known that the Company was heading for bankruptcy based on public information, as ERISA fiduciaries, they should have prevented the ESOPs from being invested in RadioShack stock. They assert Defendants should have abided by the Plans' governing documents and forced the Plans to sell their holdings in RadioShack stock. Plaintiffs allege Defendants' decision not to act was imprudent under ERISA and they violated their duty of loyalty. Their live complaint is based entirely on public information about RadioShack's prolonged declining circumstances from 2011 until 2014, when RadioShack declared bankruptcy and Plaintiffs allege they lost the bulk of their money. Plaintiffs settled their claims against Defendants Wells Fargo Bank and Banco Popular De Puerto Rico and the Court granted the parties' Joint Motion to Stay Proceedings. *See* Order, Nov. 25, 2015, ECF No. 130. Therefore the Court considers only the RadioShack Defendants' motion to dismiss.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## III.    ANALYSIS

3

### A.  Plaintiffs' Claims Are Not Time-Barred

Defendants argue Plaintiffs' claims are time-barred because Plaintiffs had actual knowledge of these ERISA claims years before filing this suit such that ERISA's statute of limitations bars these claims. Defs.' Mot. Dismiss 2, ECF No. 93. More specifically, Defendants contend Plaintiffs' claims are time-barred under ERISA's three-year statute of limitations because, as demonstrated by Plaintiffs' complaint, the plethora of public information made clear that RadioShack was an imprudent investment by November 26, 2011, three years before the first Plaintiff filed suit. Mem. Supp. Defs.' Mot. Dismiss 4, ECF No. 94. Defendants argue Plaintiffs' damages arose during this time period as the Company stock lost "nearly 50% [of its stock value] from just over one year before." *Id.* at 10.[1] According to Defendants, this information placed Plaintiffs on notice of the risks associated with continuing to hold RadioShack stock. *Id.* Defendants also argue that Plaintiffs possessed knowledge of all the material facts necessary to understand they had an ERISA claim, and their alleged participation in a previous RadioShack settlement provided Plaintiffs notice of the facts, lawful effect, and actual harm of their claims. Defs.' Reply 1-3, ECF No. 123. Thus, these allegations show Plaintiffs had more than factual knowledge of their claims, they had a legal understanding of their ERISA claims. *Id.*

Defendants analogize this case to *In re Citigroup ERISA Litigation*, where the court found that because plaintiffs knew Citigroup remained one of the available investment options in Citigroup's ERISA plans despite the flood of public information depicting Citigroup's steady

---

[1] Plaintiffs claim to have been negatively affected as the stock price began to decline from $10.99 a share at the beginning of the proposed class period. This was a 30% loss from the January 2011 price, $15.68/share, and nearly a 50% loss from a year before when shares traded above $20.00/share in October 2010. *See* Am. Compl. 45-48, ECF No. 66.

downfall, they were apprised of the basis for their claim.  No. 11-cv-7672 (JGK), 2015 WL 2226291, at *14 (S.D.N.Y. May 13, 2015), *reconsideration denied sub nom. In re Citigroup ERISA Litig.*, No. 11 CV 7672 JGK, 2015 WL 4071893 (S.D.N.Y. July 6, 2015).  Defendants argue Plaintiffs possessed similar information here, providing them with actual knowledge of the supposed fiduciary breaches before November 30, 2011.  As a result, Defendants assert Plaintiffs' claims are now time-barred.  Defs.' Mot. Dismiss 2, ECF No. 93.

Plaintiffs respond that their claims are not time-barred by ERISA's three-year statute of limitations because the awareness of public information about the Company's performance is not enough to trigger ERISA's actual knowledge statute of limitations mechanism.  Pls.' Resp. 6-7, ECF No. 110.  To Plaintiffs, actual knowledge equates to obtaining inside information about events related to the financial decline of the company, such as Administrative Committee meetings minutes produced during discovery, or other information which would reveal the evaluation process for Company stock.  *Id.* at 7-8.  Plaintiffs claim to have not received this information until March 2015 when the parties agreed to produce these documents during discovery.  *Id*. at 8.  Furthermore, Plaintiffs allege that even if they did possess actual knowledge of their ERISA claims as Defendants allege, Defendants' ongoing conduct allows Plaintiffs' claims to be timely, and cures any statute of limitation defects because Plaintiffs continued to suffer irreparable damage to their ESOPs.  *Id.* at 9.

Defendants' reply highlights Plaintiffs' involvement in a previous RadioShack ERISA class action settlement filed in the Northern District of Texas.  Defendants allege Plaintiffs have simply recycled those ERISA claims in this present suit.  *See In re RadioShack Corp. ERISA Litig*. ("*RadioShack I*"), No. 4:08-md-01875 (N.D. Tex.) (Means, J.) (ECF Nos. 81-2, 85-2, 88).

According to Defendants, Plaintiffs' involvement in this settlement proves that they not only knew of the material facts to support their ERISA claims and that those facts gave rise to a potential legal action, they knew all the legal grounds for their ERISA claims as well.  Defs.' Reply 4-5, ECF No. 123.  Defendants' reasoning centers on the fact that the preliminary settlement agreement, filed September 30, 2010, included a draft Class Notice.  *RadioShack I*, ECF No. 81-2.  The final approval was filed on February 8, 2011, three and a half years before this lawsuit.  *See* ECF Nos. 85-2, 88. Thus, according to Defendants, notice of this action and the wealth of public information available was enough to show Plaintiffs possessed knowledge of "all material facts that they could seek recourse for an ERISA violation."  *Id.*; 29 U.S.C. § 1113; *In re Citigroup ERISA Litig.*, 2015 WL 2226291, at *9.

Simply stated, "all plaintiffs must file suit no later than six years after the breach, but a plaintiff who acquires 'actual knowledge of the breach' cannot sleep on his rights; he must bring his claim within three years of acquiring actual knowledge."  *Leber v. Citigroup 401(k) Plan Inv. Comm.*, No. 07-cv-9329, 2014 WL 4851816, at *3 (S.D.N.Y. Sept. 30, 2014).  A plaintiff has "actual knowledge" of the breach or violation within the meaning of ERISA § 413(2), 29 U.S.C. § 1113(2), when they have knowledge of *all* material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act.  *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001).  While a plaintiff need not have knowledge of the relevant law, he must have knowledge of all facts necessary to constitute a claim.  *Id.* (internal citation omitted).  Accordingly, if Plaintiffs possessed knowledge of all of the facts necessary to create their ERISA claims before November 26, 2011, this action is time-barred.

The Court finds that Plaintiffs' claims are not time-barred from the face of Plaintiffs'

6

complaint because Defendants have not shown Plaintiffs had knowledge of *all* material facts necessary to establish their current ERISA claims.  Defendants' motion fails to establish that Plaintiffs' complaint pleads actual knowledge sufficient to trigger ERISA's three year statute of limitations provision by simply turning Plaintiffs' complaint explaining the sequence of events leading to RadioShack's decline into bankruptcy against them.  Plaintiffs' complaint cites a number of public reports and information which articulate the events describing the Company's demise leading up to the class period.  *See* Am. Compl. ¶¶ 160-80, ECF No. 66.  This information refers to articles which highlighted a significant decline in the Company's share price, net income, and credit rating in 2011.  *Id.* ¶¶ 171-77.  Although Plaintiffs do allege the Company lost significant value in multiple market indicators before 2012, the crux of Plaintiffs' ERISA claims depend upon RadioShack's stock decline and the corresponding ESOP losses from 2012 to 2014.  *Id.* ¶¶ 178-352. Applying the appropriate legal standard, the negative public information in 2011 that is alleged in the complaint, without more context, does not provide notice of *all* information regarding the alleged breach from the face of the complaint.

Further, even if the Court takes judicial notice of the previous lawsuit and considers Defendants' arguments that Plaintiffs were a party to the settlement negotiations in *RadioShack I*, this would not, based on the complaint, bar the current suit because the subject matter of this suit differs from the previous settlement.  Those settlement claims were based on separate, non-fiduciary issues–that Defendants knew the prices offered to plan participants were artificially inflated.  *See generally RadioShack 1*.  Plaintiffs brought this current suit alleging Defendants breached their fiduciary duties when they knew or should have known RadioShack's stock was an imprudent investment for the ESOPs as the stock continued to deteriorate and multiple credit agencies

repeatedly downgraded the Company's credit rating.  Am. Compl. ¶¶ 251-338, ECF No. 66.  The settlement terms covered a different class period and *RadioShack I* covered plan participants from January 1996 to September 2010, before Plaintiffs brought their current ERISA suit for breach of fiduciary duties.  *Id.*  Using the applicable legal standard, these facts do not show Plaintiffs possessed knowledge of *all* of the facts necessary to bring their ERISA claims before November 26, 2011, based on the face of the complaint.  Therefore, Defendants' motion to dismiss Plaintiffs' claims as time-barred is **DENIED**.  Because the Court finds that Plaintiffs' claims are not time-barred, Plaintiffs' Motion to Strike or In the Alternative File Sur-Reply is **DENIED as moot**.  *See* Pls.' Mot., Dec. 11, 2015, ECF No. 131.

**B.     Plaintiffs Fail to Sufficiently Plead Their Breach of Fiduciary Duty Claims**

1.     <u>Breach of Prudence</u>

Defendants' argue Plaintiffs' complaint fails to state a plausible claim because it does not allege any special circumstances which affected the reliability of RadioShack's market price, as required by *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459 (2014).  Mem. Supp. Defs.' Mot. Dismiss 12-16, ECF No. 94.  They argue this requirement must be met because Plaintiffs' claims rely entirely on public information.  *Id.* at 12.  Plaintiffs distinguish their claims from *Dudenhoeffer* because they contend *Dudenhoeffer* only applies to claims involving inflated stock prices.  Pls.' Resp. 11-12, ECF No. 110.  They contend this suit instead alleges the stock was an imprudent investment because of the known circumstances, not inflated market prices.  *Id.*  Plaintiffs aver that the main reason the ESOPs lost value is because Defendants failed to engage in a reasoned decision-making process to review and monitor the continued practice of investing in the RadioShack.  *Id.* at 20.  Under these circumstances, with bankruptcy looming at the conclusion of

8

every disappointing quarter, no prudent fiduciary, in Plaintiffs' opinion, would have made the same decision to retain RadioShack company stock in the Plans' portfolio. *Id.* at 21. Plaintiffs maintain that evaluating the prudence of an investment decision requires a review of the totality of the circumstances, citing *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 367 (4th Cir 2014). Pls.' Resp. 11-12, ECF No. 110. Under the totality of the circumstances, Plaintiffs argue they have plausibly alleged that RadioShack stock was an imprudent investment option for the Plans during the class period based on public information. *Id.* Alternatively, Plaintiffs argue if *Dudenhoeffer* applies they have sufficiently alleged special circumstances because the prospect of bankruptcy, and actual bankruptcy itself, is a special circumstance. Pls.' Resp. 10-19, ECF No. 110. Finally, Plaintiffs state that even if *Dudenhoeffer*'s discussion of special circumstances applies to Plaintiffs' breach of prudence claims, it does not apply to Plaintiffs' duty of loyalty claims which encompass Defendants' fiduciary duty analysis. *Id.* at 19.

Defendants' reply contends a bankruptcy or an impending bankruptcy is not the type of special circumstance the Supreme Court discussed in *Dudenhoeffer*. Defs.' Reply 6, ECF No. 123. If the market knew that RadioShack was headed for bankruptcy, Defendants allege, the market price would simply adjust to this reality based on the public information available. *Id.* Defendants allege that *Dudenhoeffer* applies to this case because fiduciaries cannot be expected to outsmart the market and predict its future movements, or second guess the value assigned to stock by an efficient market at any given point in time. *Id.* 6-7.

### a.  *ERISA Fiduciary Duties*

ERISA subjects pension and benefit plan fiduciaries to a duty of prudence in a statutory section entitled "fiduciary duties." 29 U.S.C. § 1104; *In re ERISA Litig.*, 2015 WL 2226291, at

*12-13. "An ERISA plan participant may bring a civil action to enforce such duties." *Simpson v. ConAgra Foods Ret. Income Sav. Plan*, No. 3:11-cv-0487-D, 2012 WL 1252566, at *3 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.); (citing § 1132(a)(2)). "Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach[.]" *Id.*; § 1109(a). "In every case charging breach of ERISA fiduciary duty, the threshold question is whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *In re Citigroup ERISA Litig.*, 2015 WL 2226291, at *11 (quoting *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)). "Fiduciaries under ERISA are those so named in the plan, or those who exercise fiduciary functions." *In re Lehman Bros. Secs. & ERISA Litig.*, 683 F. Supp. 2d 294, 298-99 (S.D.N.Y.2010), *vacated in part on other grounds*, *Rinehart v. Akers, et al.*, 134 S.Ct. 2900 (2014); *see* 29 U.S.C. § 1002(21)(A).

In this case, there is no dispute that the RadioShack Defendants are fiduciaries. *See* Pls.' Am. Compl., Ex. B. 11-13, May 18, 2015, ECF No. 66-2. As such, their duty is "derived from the common law of trusts," and "in determining the contours of an ERISA fiduciary's duty, courts often must look to the law of trusts." *Tibble v. Edison Int'l.*, 135 S. Ct. 1823, 1828 (2015) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)). "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones. This continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." *Id.*; *Langerbecker v. Ele. Data Sys. Corp.*, 476 F.3d 299, 307 (5th Cir. 2007) ("An ERISA fiduciary must act with prudence, loyalty, and disinterestedness,

10

requirements carefully delineated in the statute.") (citing 29 U.S.C. § 1104(a)).  The *Tibble* Court relied on the Bogert Treatise which states that "[t]he trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely." *Tibble*, 135 S. Ct. at 1828 (citing A. Hess, G. Bogert, & G. Bogert, Law of Trusts and Trustees § 684, pp. 145-46 (3d ed. 2009) (Bogert 3d)); *see also* The Restatement (Third) of Trusts § 90, *Comment* b, p. 295 (2007) (stating "[A] trustee's duties apply not only in making investments but also in monitoring and reviewing investments, which is to be done in a manner that is reasonable and appropriate to the particular investments, courses of action, and strategies involved.").

Thus, in the context of ERISA, "a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Id.*; *Pfeil v. State St. Bank & Trust Co.*, 806 F.3d 377, 383 (6th Cir. 2015).  "A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Tibble*, 135 S.Ct. 1828. Although Defendants' fiduciary duties include continuing to monitor investments, the scope of that responsibility is unclear. *Tibble,* 135 S.Ct. at 1829 ("The parties now agree that the duty of prudence involves a continuing duty to monitor investments and remove imprudent ones under trust law, . . . [but] disagree, however, with respect to the scope of that responsibility . . . . We express no view on the scope of respondents' fiduciary duty in this case.")[2]; *Pfeil*, 806 F.3d at 386 ("We do not now decide whether a fiduciary's complete failure to investigate a publicly traded investment might constitute a circumstance sufficiently special for a claim of imprudence to survive a motion to dismiss . . . .").  *Pfeil* does point out, though, that "courts have readily determined that fiduciaries

---

[2] Plaintiffs' complaint states that Defendants' Administrative Committee met to discuss continued investments in Company stocks for the ESOPs but these meetings were inadequate in the decision-making process to continue investments in RadioShack.  Am. Compl ¶¶ 90; 277, ECF No. 66.

who act reasonably-i.e., who appropriately *investigate* the merits of an investment decision prior to acting-easily clear this bar." *Id.* at 358.  Plaintiffs argue the question in this suit is whether Defendants were reasonable in their assessment and evaluation of the decision to hold the Plans' investments in RadioShack stock during the decline.  As framed by Plaintiffs, the question presented by Defendant's motion is whether *Dudenhoeffer's* special circumstances requirement applies to such a case.

### b.      First Third Bancorp v. Dudenhoeffer

In *Dudenhoeffer*, the Supreme Court addressed whether ESOP fiduciaries were entitled to a presumption of prudence in lawsuits that questioned their investment decisions.  The Supreme Court concluded ESOP fiduciaries were not entitled to a presumption of prudence, holding "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings."  134 S. Ct. 2459, 2467 (2014). In response to the argument that the presumption was needed to protect against frivolous second guessing of investment decisions, the Supreme Court noted other procedural mechanisms existed to weed out those stock drop suits which insufficiently allege a breach of fiduciary duties.  In *Dudenhoeffer,* the Supreme Court made clear that the motion to dismiss is an essential tool to "weed out meritless lawsuits," and courts must undertake a "careful, context-sensitive scrutiny of a complaint's allegations," analyzed under the *Twombly* and *Iqbal* standards.  134 S. Ct. at 2470.

In ERISA stock litigation, the Supreme Court held "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over-or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id*. at 2471.  Thus, fiduciaries may "rely on the security's market

price as an unbiased assessment of the security's value in light of all public information." *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2411, (2014)).  "In other words, a fiduciary 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stock traded on it that is available to him.'" *Id.* (quoting *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 408 (7th Cir. 2006); *see also In re Citigroup ERISA Litig.*, 2015 WL 2226291, at *14 ("The plaintiffs do not point to any 'special circumstance' that would render reliance on the market price imprudent. Rather, the plaintiffs argue that Citigroup stock was excessively risky, and therefore was imprudent as a retirement investment. However, such risk is accounted for in the market price, and the Supreme Court held that fiduciaries may rely on the market price, absent any special circumstances affecting the reliability of the market price.").  The Supreme Court reasoned a fiduciary had little hope of outperforming the market based solely on public information.[3]  *Dudenhoeffer*, 134 S. Ct. at 2471.

On remand, the Supreme Court instructed the Sixth Circuit to "apply the pleading standard discussed in *Twombly* and *Iqbal*" to future cases in light of the Supreme Court's considerations. *Id.*; *see also Amgen Inc. v. Harris*, 577 U.S. ____ (2016), No. 15-278, slip op. 2 (Jan. 25, 2016) ("*Fifth Third [v. Dudenhoeffer]* therefore laid out [the 12(b)(6)] standards to help 'divide the plausible sheep from the meritless goats . . . .'"); *Harris v. Amgen*, 788 F.3d 916, 927-928 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc) ("The Court in *Fifth Third [v. Dudenhoeffer]* plainly intended to offer fiduciaries robust protection against litigation at the motion to dismiss

---

[3] This echoes the understanding of the Modern Portfolio Theory (MPT) which "rests on the understanding that organized securities markets are so efficient at discounting securities prices that the current market price of a security is highly likely already to exempt the information that is known or knowable about future prospects of that security." *Tibble*, 135 S.Ct. at 1828 (citing John H. Landbein et al., Pension and Employee Benefit Law 634).

stage."); *Pfeil*, 806 F.3d at 386 ("We interpret this to mean, and now hold, that a plaintiff claiming that an ESOP's investment in a publicly traded security was imprudent must show special circumstances to survive a motion to dismiss."); *Halaris v. Viacom, Inc.*, No. 306-cv-1646-N, 2008 WL 3855044, at *3 (N.D. Tex. 2008) (Godbey, J.) ("Because Plaintiffs have failed to allege any such special circumstance, their failure-to-disclose claims [based on ERISA] must rest on allegations that the Committee Members made misrepresentations.).

Although *Dudenhoeffer* did not provide examples as to what a special circumstance would entail, various courts have found special circumstances to be akin to accounting irregularities, misappropriations of insider information, or another action which affects the market's reliability of a stock's market price. *In re Citigroup*, 2015 WL 4071893, at *3; *In re Lehman Brothers Sec. & ERISA Litig.*, 2015 WL 4139978, at *8 (finding a Securities and Exchange Commission ("SEC") order prohibiting short sales of securities of certain firms was not a special circumstance affecting reliability of market prices during the 2008 financial crisis); *Smith v. Delta Air Lines Inc.*, 619 F. App'x 874, 876 (11th Cir. 2015) ("There is no allegation in the amended complaint that the fiduciaries had material inside information about Delta's financial condition that was not disclosed to the market, nor is there any allegation of a 'special circumstance [that rendered] reliance on the market price imprudent,' . . . such as fraud, improper accounting, illegal conduct or other actions that would have caused Delta stock to trade at an artificially inflated price."); *In re UBS ERISA Litig.*, No. 08-cv-6696 RJS, 2014 WL 4812387, at *8 n.11 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom.*, *Taveras v. UBS AG*, 612 F. App'x 27 (2d Cir. 2015) (reiterating the special circumstances language in *Dudenhoeffer*); *In re BP P.L.C. Sec. Litig.*, No. 10-MD-2185, 2015 WL 1781727, at *10 (S.D. Tex. Mar. 4, 2015) (same).

c.     *Gedek v. Perez*

As stated above, Plaintiffs allege that Defendants breached their fiduciary duties by failing to divest the Plans of RadioShack stock as the Company declined, bankruptcy was highly probable, and the stock became excessively risky.  Am. Compl. ¶¶ 329-38, ECF No. 66; Pls.' Resp. 11, ECF No. 110.  Plaintiffs cite *Gedek v. Perez*, 66 F. Supp. 3d 368 (W.D.N.Y. 2014), in support of their assertion that *Dudenhoeffer* fails to address the situation presented here where "a company's downward path was so obvious and unstoppable that, regardless of whether the market was 'correctly' valuing the stock, the fiduciaries should have halted or disallowed further investment in it."  *Id.* (citing *Gedek*, 66 F. Supp. 3d at 375).  Since this is not a market value case, Plaintiffs argue they are not required to plead facts that meet *Dudenhoeffer*'s special circumstances.  *Id.*

d.     *Sufficiency of Plaintiffs' Complaint*

The Court concludes that Plaintiffs must plead facts sufficient to meet *Dudenhoeffer's* special circumstances requirement and that *Gedek v. Perez* is inapplicable to the facts.  The Court distinguishes the facts pleaded in this case from *Gedek* of this case for several reasons.  First, unlike Kodak's executives, the RadioShack Defendants claim to have initiated measures to prevent the Plaintiffs' losses by freezing new investments into the RadioShack stock in September 2014, and Defendants alerted investors by issuing a "going concern" statement.  *See Randall D. Wolcott, M.D., P.A.*, 635 F.3d at 763 ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.");[4] Defs.' Reply 7, ECF No. 123.  *Cf. Gedek*, 66 F. Supp. at

---

[4] Here, Plaintiffs' complaint states that the Administrative Committee had a meeting during the Class Period on July 11, 2014, in which they discussed freezing plan investments in Company Stock.

378 ("According to the complaint, at no point prior to [filing voluntary petitions under Chapter 11 in bankruptcy court] did defendants take action to preserve or protect ESOP participants' investments.").

Second, the 401(k) Plans allowed Plaintiffs to choose their ESOP investments from more than twenty investment choices, effectively eliminating *Gedek*'s concern of fiduciaries who maintain the sole authority to divest the plans from company stock as it steadily declines.  *See* Am. Compl. Ex. A. (RadioShack Prospectus and Summary Plan Description) Apps. 10-13, ECF No. 66-1 ("The Plan offers a variety of investment options. You have the right to direct and diversify the investment of all of your Plan accounts among investment funds. . . . Since all investments carry some degree of risk, you should select your Plan investments based on your financial and retirement needs."); Defs.' App. Supp. Mot. Dismiss 3, ECF No. 94.  The 40l(k) Plans even warned participants against solely investing in RadioShack Common Stock.  Am. Compl. Ex. A. (RadioShack Prospectus and Summary Plan Description) App. 13, ECF No. 66-1 ("In addition to the other investment choices, the Plan offers RadioShack Common Stock as an investment choice . . . Participants should be warned that along with the normal risk characteristics of stock investments, an investment solely in a single stock includes an additional degree of risk due to the lack of diversification.").

Third, one of the primary reasons *Gedek* found Kodak to be an imprudent investment was because Kodak "was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits, which would presumably garner settlements, to maintain the Company's cash

---

Am. Compl. ¶¶ 90; 277, ECF No. 66.  The Company discontinued new plan investments on September 15, 2014.  *Id.* ¶164.  The complaint attests to RadioShack issuing its going concern statement, a Form 10-Q, on September 11, 2014.  *Id.* ¶ 289.  The Company also issued a Form 10-K/A notifying the SEC of its bleak circumstances on December 12, 2014.  *Id.* ¶ 311.

flow." *Gedek*, 66 F. Supp. 3d at 375.  Here, Plaintiffs plead that RadioShack's strategy was to revitalize the Company's business and save it from bankruptcy through numerous tactics, like obtaining an influx of capital.  Am. Compl. ¶¶ 230; 276; 286, ECF No. 66.  This did work to some degree as the Company improved for a brief period.  *Id.* at ¶¶ 190; 254; 258.

Finally, even if the *Gedek* facts are not distinguishable, *Gedek* determined *Dudenhoeffer's* special circumstances requirement did not apply because there were no allegations of stock inflation. *Gedek*, 66 F. Supp. at 379. ("[Plaintiffs] allege that Kodak stock was on a long, steady, virtually unstoppable downhill slide, and that no prescience or inside knowledge was needed to realize that it would continue to do so. That, in my view, states a claim under ERISA as to the ESOP.").  The Court declines to follow this reasoning because *Dudenhoeffer* involved a case, like this one, where the plaintiff sued, in part, because the fiduciary should have divested from stock because that stock had become excessively risky.  The district court in *In re Lehman Bros* reached this conclusion as well, reasoning:

> [R]isk is accounted for in the market price of a security, suggesting that plaintiffs' proffered distinction between 'riskiness' and 'valuation' claims is illusory. Indeed, the plaintiffs in *Dudenhoeffer* itself alleged not just that Fifth Third Bancorp stock was overvalued, but also that it was 'excessively risky'-an assertion they based partly on 'public information such as newspaper articles' just as plaintiffs do here. In the absence of factual allegations justifying a conclusion that 'reliance on the market price [was] imprudent,' the Court interprets *Dudenhoeffer* to foreclose breach of prudence claims based on public information irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock.

*In re Lehman Bros. Sec. & ERISA Litig.*, No. 09-MD-2017 (LAK), 2015 WL 4139978, at *6 (S.D.N.Y. July 10, 2015) (citing *Dudenhoeffer,* 134 S.Ct. at 2464 ("The complaint alleges that by July 2007, the fiduciaries knew or should have known that Fifth Third's stock was overvalued and excessively risky ....")).  In addition, to analyze and critique the past actions of a company based only

on public information would invite the Court to engage in the type of post-hoc considerations courts have been inclined to avoid. *In re Lehman Brothers Sec. & ERISA Litig.*, 2015 WL 4139978, at *7 ("Accordingly, it would be pure speculation to say that a meeting or other review by the Plan Committee would or should have resulted in the slightest change of course or otherwise prevented the consequences of Lehman's ultimate demise. Neither *Dudenhoeffer* nor *Tibble* permits ERISA claims to withstand challenge based on such threadbare allegations."); *Pfeil*, 806 F.3d at 387 ("We must evaluate the prudence or imprudence of [Defendants'] conduct as of the 'time it occurred,' not 'post facto.'") (citing *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)). Based on the foregoing, the Court concludes Plaintiffs must allege special circumstances to support its breach of prudence claim.

In this case, the only facts Plaintiffs argue they have pled that meet *Dudenhoeffer's* special circumstances is the allegation that the Company stock became excessively risky based on its slide into bankruptcy. This is not the kind of event that is a special circumstance. *In re Citigroup*, 2015 WL 4071893, at 3; *In re Lehman Brothers Sec. & ERISA Litig.*, 2015 WL 4139978, at *8; *Smith*, 619 F. App' x at 876 (describing a special circumstance as an action that rendered reliance on market price of the stock imprudent, such as "fraud, improper accounting, illegal conduct[,] or other actions that would have caused Delta stock to trade at an artificially inflated price."); *In re UBS ERISA Litig.*, 2014 WL 4812387, at *8 n.11 (reiterating the special circumstances language in *Dudenhoeffer*); *In re BP P.L.C. Sec. Litig.*, 2015 WL 1781727, at *10 (same). Since Plaintiffs' entire complaint alleges Defendants made imprudent investments in RadioShack stock based on public information, Plaintiffs must allege that some special circumstance existed to affect the market

18

price which rendered it unreliable or artificially constructed.[5]   As Plaintiffs' argument that

bankruptcy is a special circumstance fails, Plaintiffs have failed to meet the *Twombly* and *Iqbal*

standards to plead sufficient facts to show Defendants breached their fiduciary duty of prudence.

### 2.   Duty of Loyalty

Plaintiffs also do not sufficiently plead facts to show Defendants breached their duty of

loyalty by simply stating certain Defendants had conflicted interests because they owned Company

stock and maintained options and stock awards.   Am. Compl. ¶¶ 339-44, ECF No. 66.   Under

ERISA, a "fiduciary shall discharge his duties with respect to a plan solely in the interest of the

participants and beneficiaries. . . ." 29 U.S.C.A. § 1104(a)(1); *see State Street Bank and Trust Co.*

*v. Salovaara*, 326 F.3d 130, 136 (2d Cir. 2003) ("This statutory duty of loyalty has been described

by this Court as requiring that a fiduciary act, in Judge Friendly's felicitous phrase, with an 'eye

single to the interests of the participants and beneficiaries.'") (citation omitted); *In re Pfizer Inc.*

*Erisa Litig.*, No. 04-civ-10071(LTS)(JFE), 2009 WL 749545, at *12 (S.D.N.Y. Mar. 20, 2009).

Unlike the plaintiffs in *In re Pfizer*, who alleged sufficient facts to support an inference that

defendants' objectivity to the plans' interests were compromised by their decisions to withhold

material information about problems with Pfizer's premier drugs and their failure to obtain

independent advice when actual conflicts of interest arose, Plaintiffs fail to make similar allegations

in their complaint.   Plaintiffs must allege that Defendants "engaged in imprudent acts or omissions

---

[5] Since Plaintiffs do not proffer allegations that Defendants breached their duty of prudence based on insider information, the Court need not examine whether Plaintiffs plausibly allege an alternative action that the Defendants could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help RadioShack.  *Dudenhoeffer*, 134 S. Ct. at 2472; *Amgen Inc. v. Harris*, 577 U.S. ___ (2016), No. 15-278, slip op. 2 (Jan. 25, 2016).

with respect to the Plan[s] and to protect the value of their own investment." *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 366 (S.D.N.Y. 2009). Furthermore, "if company stock ownership or compensation through company stock alone presented a conflict of interests, ERISA's statutory scheme allowing company officers and directors, who are often stock holders and are compensated with stock, to serve as fiduciaries would be contradictory." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011).

Because the Court finds that Plaintiffs have not satisfied their burden to allege facts sufficient to prove Defendants breached their fiduciary duty, the Court need not analyze Defendants' causation claims under ERISA § 404(c). Accordingly, Defendants' motion to dismiss Plaintiffs' fiduciary duty claims should be and is hereby **GRANTED**.

### C.   Standing Under the Puerto Rico 401(k) Plan

Defendants' motion to dismiss also claims Plaintiffs have no standing to bring suit under the Puerto Rico 401(k) Plan because none of the Plaintiffs invested in the fund. Mem. Supp. Defs.' Mot. Dismiss 24, ECF No. 94. Plaintiffs respond that this lack of investment in the Puerto Rico 401(k) Plan does not bar suit on behalf of the Puerto Rico Plan, specifically because of Banco Popular De Puerto Rico's involvement in this suit as a fiduciary trustee. Pls.' Mem. Opp. Banco Popular Mot. Dismiss 4, ECF No. 113. Banco Popular De Puerto Rico reached a settlement agreement with Plaintiffs, effectively ending the dispute over the Puerto Rico 401(k) Plan. *See generally* ECF No. 129. Accordingly, Defendants' motion to dismiss the Puerto Rico 401(k) Plan for lack of standing is hereby resolved and **DENIED as moot.**

### D.   Jury Demand

Finally, the Court must strike Plaintiffs' jury demand under Rule 12(f) for the same reasons stated in a previous order–there is no right to jury trial under ERISA.  *Borst v. Cheveron Corp*, 36 F.3d 1308, 1323-24 (5th Cir. 1994); *see* Order, Jan. 26, 2015, ECF No. 33.  *See also Cigna Corp. v. Amara*, 131 S. Ct. 1866, 1879 (2011); *Smith v. State Farm Group Long Term Disability Plan*, No. 12 C 9210, 2013 WL 4538516, at *2 (N.D. Ill. Aug. 27, 2013).  Accordingly, Defendants' motion to strike jury demand is hereby **GRANTED**.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is hereby **GRANTED in part and DENIED in part.**  Defendants' motion to dismiss is **DENIED** as to Plaintiffs' possession of actual knowledge of their ERISA claims within the three year limitations period.  Defendant's motion to dismiss is **GRANTED** as to Defendants' breach of fiduciary duty claims.  Because the Court finds that Plaintiffs' claims are not time-barred, Plaintiffs' Motion to Strike or In the Alternative File Sur-Reply is **DENIED as moot**.  *See* Pls.' Mot., Dec. 11, 2015, ECF No. 131.  Defendants' motion to dismiss for lack of standing under the Puerto Rico 401(k) Plan is resolved by settlement and **DENIED as moot**, and Defendants' request to strike jury demand is **GRANTED.**

Plaintiffs are granted the right to re-plead their breach of fiduciary duty and dependent claims to allege any special circumstances which existed in regards to RadioShack's stock price and the market's reliance on that price on or before **February 15, 2016.**  If Plaintiffs do not respond by this deadline, Plaintiffs' claims will be dismissed with prejudice.

**SO ORDERED** on this **25th day** of **January, 2016**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

21