**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| | ) | |
| | ) | |
| **IN RE 2014 RADIOSHACK ERISA** | ) | **MASTER FILE NO. 4:14-cv-00959-O** |
| **LITIGATION** | ) | |
| | ) | |
| **THIS DOCUMENT RELATES TO:** | ) | |
| | ) | |
| **ALL ACTIONS** | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF
<u>SETTLEMENT CLASS AND APPROVAL OF PLAN OF ALLOCATION</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................2

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................3

   A.    Procedural History ........................................................................................3

   B.    Investigation of Claims and Discovery ........................................................4

   C.    Settlement Negotiations ................................................................................5

   D.    The Proposed Settlement ..............................................................................6

III.    The Settlement Is Fair, Adequate and Reasonable ............................................7

   A.    The Proposed Settlement Satisfies the *Reed* Factors ..................................7

      1.    The Arm's-Length Negotiations and Settlement Were Not the Product of Fraud or Collusion ................................................................................................7

      2.    Continued Litigation Would Be Complex, Costly, and Lengthy ...................................8

      3.    The Litigation, Discovery, and Settlement Discussions Advanced Far Enough to Assess the Likely Outcome of the Claims Against the Trustee Defendants.............10

      4.    Plaintiffs Faced Real Risks in Establishing Liability and Damages .............................11

      5.    The Settlement is in the Range Of Reasonableness in Light of the Best Possible Recovery and the Attendant Risks of Litigation ............................................................13

IV.    THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ........................15

V.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED .......................17

VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.........19

   A.    The Proposed Class Satisfies the Requirements of Rule 23(a)....................20

      1.    The Class is So Numerous That Joinder is Impracticable .............................................20

      2.    There are Issues of Law and Fact Common to All Class Members .............................20

      3.    The Claims or Defenses of the Named Plaintiffs are Typical of Claims or Defenses of All Class Members....................................................................................21

      4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class....................................................................................................................21

   B.    The Settlement Class Meets the Requirements of Rules 23(b)(1) and (b)(2)..............23

C.       Class Counsel Should be Appointed as Settlement Class Counsel...............................24

VII.     CONCLUSION .............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re AOL Time Warner ERISA Litig.*,
  No. 02-CV-8853, 2006 WL 2789862 (S.D.N.Y. 2006) .......................................... 18

*Ayers v. Thompson*,
  358 F.3d 356 (5th Cir. 2004) ............................................................................... 13

*In re: Bear Stearns Cos. ERISA Litig.*,
  MDL No. 1963 (S.D.N.Y. Sept. 20, 2012) ............................................................ 18

*Bredthauer v. Lundstrom, et al.*,
  No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) ........................................................... 17

*In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*,
  286 F.R.D. 621 (W.D. Okla. 2012) ...................................................................... 25

*In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ....................................................................... 18

*In re Enron Corp.*,
  MDL No. 1446, No. 01-cv-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006)... 20, 21, 22, 23

*In re Fed. Nat'l Mortg. Assoc. Sec., Der., & "ERISA" Litig.*,
  MDL No. 1668 (D.D.C. Aug. 3, 2010) .................................................................. 18

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S. Ct. 2459 (2014) ..................................................................................... 9, 12

*George v. Kraft Foods Global*,
  No. 08-cv-3799, 2010 WL 3386402 (ND. Ill. Aug. 25, 2010) .............................. 19

*Hargrave, et al. v. TXU Corp., et al.*,
  No. 02-cv-2573 (N.D. Tex. Mar. 25, 2008) ......................................................... 18

*In re Heartland Payment Systems, Inc. Custom Data Sec. Breach Litig.*,
  851 F.Supp.2d 1040 (S.D. Tex. 2012) ................................................................. 17

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) .........................................................*passim*

*Knight v. Lavine*,
  No. 12-cv-611, 2013 WL 427880 (E.D. Va. Feb. 4, 2013) ................................... 19

*M.D. v. Perry*,
   675 F.3d 832 (5th Cir. 2012) ........................................................................ 20

*Mullen v. Treasure Chest Casino LLC*,
   186 F.3d 620 (5th Cir. 1999) .................................................................. 20, 21

*In re RadioShack Corp. ERISA Litig.*,
   No. 08-md-1875 (N.D. Tex. Feb. 8, 2011) ...................................................... 18

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ..............................................................*passim*

*Rinehart v. Lehman Bros. Holdings Inc.*,
   817 F.3d 56 (2d Cir. 2016 Mar. 18, 2016) ...................................................... 9

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ........................................................................ 19

*Schwartz v. TXU Corp.*,
   No. 02-cv-2243, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................... 7, 10, 18

*In re Sprint Corp. ERISA Litig.*,
   443 F. Supp. 2d 1249 (D. Kan. 2006) .......................................................... 18

*Stott v. Capital Fin. Servs., Inc.*,
   277 F.R.D. 316 (N.D. Tex. 2011)...................................................... 8, 20, 21, 24

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .......................................................................... 7

*In re Wachovia Corp. ERISA Litig.*,
   No. 09-cv-0262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ............................ 9

*In re WorldCom, Inc. ERISA Litig.*,
   No. 02-cv-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) .......................... 8, 9

**Federal Statutes**

Class Action Fairness Act ................................................................... 1, 2, 3

Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*...................*passim*

**Rules**

Fed. R. Civ. P. 23(a) ................................................................... 19, 20, 23

Fed. R. Civ. P. 23(a)(1) ...................................................................... 20

Fed. R. Civ. P. 23(a)(2) ...................................................................... 20

FED. R. CIV. P. 23(a)(3) ...........................................................................................................21

FED. R. CIV. P. 23(a)(4) ..................................................................................................21, 22, 24

FED. R. CIV. P. 23(b) ..............................................................................................................23

FED. R. CIV. P. 23(b)(1) ..........................................................................................................19

FED. R. CIV. P. 23(b)(2) ..........................................................................................................23

FED. R. CIV. P. 10(c) ................................................................................................................2

FED. R. CIV. P. 23(g) ........................................................................................................24, 25

FED. R. CIV. P. 23(g)(1)(B) ................................................................................................23, 24

**Other Authorities**

*Manual for Complex Litigation* § 21.641 ..................................................................................15

Plaintiffs Manoj P. Singh, Jeffrey Snyder, and William A. Gerhart ("Plaintiffs"),[1] respectfully submit this Memorandum of Law in Support of their Motion for Final Approval of Class Action Settlement, Certification of Settlement Class and Approval of Plan of Allocation ("Motion for Final Approval") regarding the partial settlement of this Action entered into with Wells Fargo Bank, N.A. ("Wells Fargo") and Banco Popular de Puerto Rico ("Banco Popular," and with Wells Fargo, the "Trustee Defendants"), and respectfully move this Court for a Final Approval Order and Judgment that: (1) approves the proposed Class Action Settlement Agreement and Release Between Plaintiffs and Defendants Wells Fargo Bank, N.A. and Banco Popular De Puerto Rico (the "Settlement" or "Settlement Agreement")[2] as fair, reasonable and adequate; (2) approves the proposed Plan of Allocation; (3) certifies the Settlement Class and appoints Named Plaintiffs as class representatives for the Settlement Class; (4) appoints the law firms of Kessler Topaz Meltzer & Check, LLP ("KTMC"), Stull, Stull & Brody ("SSB"), and Connelly Wells & Gray LLP ("CWG") as Class Counsel for the Settlement Class, and Lackey Hershman L.L.P. ("Lackey Hershman") as Liaison Counsel; and (5) finally approves the Bar Order; and (6) determines that the Trustee Defendants complied with the Class Action Fairness Act ("CAFA").[3]

---

[1] Named Plaintiff Steven Wolpin passed away during the pendency of the Action. *See* Suggestion of Death (Dkt. No. 119). On June 10, 2016, Class Counsel filed a Rule 25(a)(1) Notice of Dismissal of Steven Wolpin which noted that per § 1.43 of the Settlement Agreement, the dismissal of Mr. Wolpin's claims is without prejudice to Mr. Wolpin's estate being able to participate "as a member of the Settlement Class." Dkt. No. 181.

[2] The terms of the Settlement are set forth in the Settlement Agreement, which was previously filed with the Court on January 21, 2016. *See* Dkt. No. 149-1. For the Court's convenience, the Settlement Agreement (including a provision that was amended in March 2016) is also attached as Exhibit 1 (APP-1-75) to the Appendix to the Declaration of Mark K. Gyandoh in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation, and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards for the Named Plaintiffs (the "Gyandoh Declaration" or "Gyandoh Decl."), which further discusses the extensive efforts of Class Counsel in achieving this excellent result. All capitalized terms not defined herein are defined in the Settlement Agreement.

[3] Plaintiffs have filed concurrently herewith their Memorandum of Law in Support of Plaintiffs' Motion for

# I.      INTRODUCTION

After thirteen months of hard-fought litigation and a full day, formal mediation facilitated by John Bickerman, a well-respected mediator, Plaintiffs and Trustee Defendants reached a Settlement of the ERISA allegations brought against the Trustee Defendants for $900,000, providing a meaningful benefit to members of the Settlement Class, and resolving all claims asserted by Plaintiffs on behalf of the Plans and the Settlement Class against the Trustee Defendants.[4]   The Court entered an order on January 27, 2016, which *inter alia*, preliminarily approved the Settlement.  *See* Amended Preliminary Approval Order (the "Preliminary Approval Order") Dkt. No. 156.[5]   Named Plaintiffs and Class Counsel believe each of the findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery in light of the extraordinary risks with respect to issues of both liability and damages (especially as to the Trustee Defendants).

Based on these extraordinary risks, Class Counsel concluded that the Settlement is a fair and reasonable result for the Settlement Class.  The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail, a summary publication in *USA Today* and on *PR Newswire*, and a dedicated Internet Settlement website, in accordance with the Notice Plan.  Additionally, the Trustee Defendants mailed the CAFA notice on January 28, 2016

---

Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards to Named Plaintiffs ("Fee Memorandum").  The Fee Memorandum contains information pertinent to the Settlement and is incorporated in full with the instant Memorandum of Law pursuant to FED. R. CIV. P. 10(c).

[4]  The Action is continuing against the Non-Settling Defendants: RadioShack 401(k) Plan Administrative Committee, the RadioShack Puerto Rico Plan Administrative Committee, James F. Gooch, Joseph C. Magnacca, Robert E. Abernathy, Frank J. Belatti, Julia A. Dobson, Daniel A. Feehan, H. Eugene Lockhart, Jack L. Messman, Thomas G. Plaskell, Edwina D. Woodbury, Mark Barfield, Karina Davis, Eric Hales, Justin Johnson, Michael Keyser, Kevin Krautkramer, Martin Moad, and Sri Reddy.

[5]  The Preliminary Approval Order entered on January 27, 2016 corrected an earlier order entered on January 25, 2016 (Dkt. No. 152).  The January 27, 2016 Preliminary Approval Order itself was further modified by Order entered on March 23, 2016 which extended all pending dates by two weeks, including the date by which Notice was to be sent to the Settlement Class.

in accordance with the CAFA, and have received no objections to date.  *See* Declaration of Russell

L. Hirschhorn, attached as Exhibit 3 to Appendix (APP-80-97).  After mailing the approved form of

Notice to 4,424 Settlement Class members, Class Counsel have received no objections thus far

related to the Settlement.[6]   Accordingly, Plaintiffs respectfully request that this Court enter the

proposed Order and Final Judgment granting final approval of the Settlement Agreement, approving

the Plan of Allocation, certifying a Settlement Class, and appointing Named Plaintiffs as class

representatives and KTMC, SSB and CWG as Class Counsel for the Settlement Class, and

Lackey Hershman as Liaison Counsel.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History[7]

On January 9, 2015, the Court entered an Order consolidating the three separate actions

filed by Plaintiffs and appointing KTMC as Interim Lead Class Counsel Committee Chair,

appointing SSB and CWG as Interim Lead Class Counsel Committee Members, and appointing

Lackey Hershman as Interim Liaison Class Counsel.   Dkt. No. 29.   On February 5, 2015,

RadioShack filed for protection under Chapter 11 of the United States Bankruptcy Code in the

United States Bankruptcy Court for the District of Delaware.   Shortly thereafter, on February 9,

2015, Plaintiffs filed a consolidated complaint to govern the Actions.   Dkt. No. 39.   On February

13, 2015, the Court stayed all proceedings in the District Court pending the outcome in the

United States Bankruptcy Court.   Dkt. No. 43.

On May 18, 2015, Plaintiffs filed their Amended Consolidated Class Action Complaint,

---

[6]   The deadline for objecting to the Settlement has not yet elapsed.  Per the Preliminary Approval Order and March
23, 2016 Order (*see supra* n.5), objectors have until June 20, 2016 to file objections.   To the extent that any
objections are filed, Class Counsel will address the objection(s) in their supplemental submission to the Court on
July 1, 2016 in advance of the Fairness Hearing on July 18, 2016.

[7]  The procedural history of this case is only summarized here as it is discussed at length in the Fee Memorandum, at
pp. 3-4, which as noted in n.3 *supra* is incorporated herein by reference.

removing RadioShack as a Defendant given its bankruptcy filing.  Dkt. No. 66.  All Defendants moved to dismiss the Complaint.  Briefing on the motions to dismiss was completed on November 17, 2015 (Dkt. Nos. 123-125).  In the interim, on November 5, 2015, Plaintiffs moved for class certification.  Dkt. Nos. 114-116.  On November 25, 2015, the Court granted the Settling Parties Joint Motion to Stay as to the Trustee Defendants for settlement purposes.  Dkt. No. 130.  This Action, however, continued against the Non-Settling Defendants.  On January 25, 2016, the Court granted the Non-Settling Defendants' motion to dismiss but permitted Plaintiffs to file an amended complaint (Dkt. No. 153).  On February 15, 2016, Plaintiffs filed their Second Amended Consolidated Class Action Complaint (the "Second Amended Complaint"), and briefing on the Non-Settling Defendants' motion to dismiss the same closed on April 11, 2016 (Dkt. Nos. 171, 172, 177, 179).

### B.    Investigation of Claims and Discovery

Class Counsel vigorously litigated this Action and has continued to do so as to the Non-Settling Defendants.  Prior to initiating the Action, Class Counsel carefully vetted Plaintiffs' claims over several months of investigation.  They then prepared initial and amended complaints containing details discerned through their extensive and thorough investigation, moved for and obtained consolidation of the initially separately filed actions, and successfully opposed Defendants' motion to stay due to the Bankruptcy Action.  Moreover, prior to settling with the Trustee Defendants, Class Counsel:  (i) negotiated and submitted a scheduling order and subsequent amendments thereto; (ii) responded to the Trustee and Non-Settling Defendants' three motions to dismiss; and (iii) filed Plaintiffs' opening motion for class certification.  Class Counsel also actively engaged in discovery, including:  (i) serving and responding to discovery requests; (ii) negotiating a protective order on confidentiality; (iii) serving Freedom of

Information Act requests on the Department of Labor ("DOL");[8] (iv) serving subpoenas on relevant third-parties and obtaining documents in response thereto;[9] (v) preparing and exchanging initial disclosures; (vi) negotiating with the Non-Settling Defendants for the production of thousands of pages of documents previously produced by RadioShack to the DOL; and (vii) preparing for and traveling across the country to attend depositions of the Named Plaintiffs in connection with the class certification discovery.[10]   Additionally, Class Counsel has actively participated in the Bankruptcy Action, negotiating for and securing valuable concessions and protections of the interests of the Plaintiffs and proposed Class, including the preservation of any documents related to this litigation by RadioShack.   The investigative and discovery efforts undertaken have provided Class Counsel with more than sufficient information to determine that the Settlement with the Trustee Defendants is in the best interests of the Settlement Class.

## C.    Settlement Negotiations

On November 24, 2015, the Settling Parties participated in a full-day mediation session before John Bickerman,[11] a well-respected mediator experienced in complex financial matters. The Settlement negotiations were intense and arm's-length.   During the mediation, the Parties engaged in spirited debate as to critical legal and factual issues concerning liability and damages. After eight hours of intense negotiations, the Settling Parties agreed in principle to a settlement

---

[8] As noted in RadioShack's December 24, 2014 Form 11-K, on November 14, 2014, RadioShack received written notification from the DOL that the DOL would be conducting an official investigation beginning December 9, 2014 to determine if RadioShack's 401(k) Plan was operating in compliance with Title I of ERISA.  The letter from the DOL indicated that its review would cover "Plan years 2011 through the present."  Given that the time period concerning the DOL's investigation overlapped with Class Period in the instant Action, Plaintiffs actively sought information and documentation from the Department of Labor.

[9] For example, Plaintiffs spent several weeks negotiating a lengthy production protocol with Lockton Investment Advisors, LLC – a third-party that performed services for RadioShack Corp.'s 401(k) plans during the class period, and upon which Plaintiffs served a subpoena.  The protocol was executed on October 8, 2015, and production of just over 3,000 documents spanning roughly 21,710 was produced.

[10] Plaintiff Snyder sat for a deposition on November 16, 2015, in Florida, and Plaintiff Gerhart sat for a deposition in Texas on November 23, 2015.  Each deposition took approximately seven hours.

[11] See http://www.bickerman.com/john-g-bickerman.

with the Trustee Defendants.  Thereafter, the negotiation of the precise Settlement terms took the Parties weeks before all the terms were memorialized.  Indeed, the negotiations were contentious with the Parties proceeding practically line by line through the Settlement Agreement. Throughout the litigation and extensive mediation process, Class Counsel was cognizant of the strengths and weaknesses of Plaintiffs' claims and Trustee Defendants' defenses.  The arm's-length nature of the settlement negotiations strongly supports the conclusion that the proposed Settlement is fair, reasonable, and adequate.

### D.     The Proposed Settlement

The Settlement provides that the Trustee Defendants will pay $900,000.00 to be allocated to Settlement Class Members pursuant to the proposed Plan of Allocation discussed below.  In exchange, Plaintiffs and the Plans will dismiss their claims against the Trustee Defendants as set forth more fully in the Settlement Agreement.  The Settlement Agreement also includes a Bar Order provision seeking to bar any other party ("Barred Persons") from seeking contribution from the Trustee Defendants in any future judgment against such party.  *See* Agreement, Section 3.4.6.  The Trustee Defendants filed a Motion for an Order Approving the Bar Order on January 21, 2016 (Dkt. No. 150), which was opposed by the Non-settling Defendants by motion dated February 16, 2016.  Dkt. No. 168.  In their motion, the Non-Settling Defendants disputed the offset method for reducing any judgment against Barred Persons sought in the Motion for Bar Order.  In order to resolve the objection to the Bar Order provision, the Settling Parties agreed to amend the provision of the Settlement to modify the provision concerning the Bar Order in the manner sought by the Non-Settling Defendants.  The amendment was attached as Exhibit 1 to the stipulation withdrawing the Non-Settling Defendants' objection filed with the Court on March 18, 2016.  (Dkt. No. 174).

6

III.     **The Settlement Is Fair, Adequate and Reasonable**

A.      **The Proposed Settlement Satisfies the *Reed* Factors**

"To safeguard the interests of absent class members, district courts must determine whether proposed class-action settlements are fair, adequate, and reasonable." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012). In the context of a class action settlement, "compromise is the essence of a settlement, and the settlement need not accord the plaintiff class every benefit that might have been gained after full trial." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 648 (N.D. Tex. 2010). Accordingly, "[w]here the court finds that counsel have adequately represented the interests of the class, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* at 649. Courts in the Fifth Circuit evaluate the fairness, reasonableness and adequacy of a settlement under the following six *Reed* factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G.*, 669 F.3d at 639 n.11 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).[12]

1.     **The Arm's-Length Negotiations and Settlement Were Not the Product of Fraud or Collusion**

Under the first *Reed* factor, the court looks for the existence of fraud or collusion behind the settlement. *Klein*, 705 F. Supp. 2d at 651. "The Court may presume that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *Id.* Here,

---

[12] *See also Schwartz v. TXU Corp.*, No. 02-cv-2243, 2005 WL 3148350, at *23 (N.D. Tex. Nov. 8, 2005) ("Courts in the Fifth Circuit have consistently held that public policy favors the settlement of class actions.").

there is no evidence of any fraud or collusion. Counsel for the Parties participated actively in the litigation – including a contested motion to dismiss and class certification – and settlement negotiations – including a formal, full day mediation presided by a respected, experienced mediator – before reaching the agreement in principle to settle. Each side vigorously advocated on behalf of its respective clients underscoring the arm's-length nature of this agreement. *See also* Section II.C, *supra*, discussing the settlement negotiations. Indeed, as noted above, the negotiation of the precise Settlement terms took the Parties weeks before all the terms were memorialized. The negotiations were contentious with the Parties proceeding practically line by line through the Settlement Agreement.

Further, as recognized in *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 343 (N.D. Tex. 2011), "[t]he proposed settlement also does not favor any class member or group of class members, which also weighs against any evidence of fraud or collusion and in favor of approval." As explained in greater detail below in Section V the proposed Plan of Allocation treats each Settlement Class Member the same in that it applies the same formula to each Settlement Class Member, and does so objectively using the Plans' transaction data. This uniformity further supports the absence of fraud or collusion in this Action and the proposed Settlement.

## 2.     Continued Litigation Would Be Complex, Costly, and Lengthy

Under the second *Reed* factor, courts consider the complexity, expenses, and likely duration of the litigation. *Klein*, 705 F. Supp. 2d at 651. "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Id.* Numerous courts have noted the complexity of ERISA breach of fiduciary duty actions asserting claims analogous to those here. Indeed, in the similar *In re WorldCom, Inc. ERISA Litigation*, upon consideration of a

proposed settlement, the court noted that there is a "general risk inherent in litigating complex claims such as these to their conclusion." *In re WorldCom, Inc. ERISA Litig.*, No. 02-cv-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004).[13]

The uncertainty of legal issues concerning fiduciary liability are true today. Indeed, *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), essentially rewrote the law that had existed for the last twenty years concerning fiduciary liability, leaving it to the lower courts to chart new waters in interpreting and applying the decision creating even more risk to Plaintiffs in moving forward with this litigation.[14]   *Id.* at 2473.   In recent months, several "company stock" cases, including this Court's dismissal of the action against the Non-Settling Defendants, have been dismissed for failure to meet *Fifth Third*'s standards.[15]

This case is far from immune to the risks attendant to these uncertainties. Plaintiffs' claims raise numerous complex legal and factual issues which, absent the settlement, would consume substantial resources as the Parties proceeded with the necessary factual and expert discovery and motion practice. In the thirteen months before settlement, Plaintiffs expended considerable efforts pursuing their allegations including full briefing on Defendants' motions to dismiss and filing their opening motion in support of class certification. Absent settlement, and assuming Plaintiffs were able to establish plausible liability (see below), substantial discovery, including numerous depositions of Defendants and third-party witnesses, as well as liability and

---

[13] *See also In re Wachovia Corp. ERISA Litig.*, No. 09-cv-0262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.").

[14] The Supreme Court was called upon to consider whether, when a company retirement plan's fiduciary's decision to buy or hold the employer's stock in the plan is challenged in court, the fiduciary is entitled to a "fiduciary-friendly" pleading standard that the lower courts have called a "presumption of prudence." Ultimately, the Supreme Court rejected the presumption, thereby creating new significant law in this area (*Id.* at 2463) and functionally eviscerating twenty years' worth of appellate case law on ERISA's duty of prudence regarding employer securities.

[15] *See also Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56 (2d Cir. 2016 Mar. 18, 2016) (order dismissing action).

damages experts, would need to be completed in order to make the case against the Settling Defendants trial ready.   Even before that, extensive briefing, including the balance of the contested class certification and likely summary judgment motions would lie ahead.   Moreover, a trial would be lengthy and complex given the factual and legal issues relevant to Defendants' decision to continue offering Company Stock as an investment option in the Plans during the Class Period and Plaintiffs' arguments as to why such conduct was imprudent.   The immediate, guaranteed benefit provided by the Settlement as opposed to the uncertainty of continued, costly, and time-consuming litigation, including the necessity of an appeal to resurrect the claims against the Trustees, supports approval.

### 3.   The Litigation, Discovery, and Settlement Discussions Advanced Far Enough to Assess the Likely Outcome of the Claims Against the Trustee Defendants

Under the third *Reed* factor, a court considers the stage of the proceedings and the amount of discovery completed.  *Klein*, 705 F. Supp. 2d at 653.   It evaluates "whether the parties and the district court possess ample information with which to evaluate the merits of the competing positions."   *Id*.   A settlement can be approved under this factor absent formal discovery.   Indeed, "unless counsel settled while 'groping in darkness' the lack of formal discovery will not hinder the settlement."   *Schwartz*, 2005 WL 3148350, at *19.   Rather, "the scope of the discovery to be conducted in each case rests with the sound discretion of the trial judge."   *Klein*, 705 F. Supp. 2d at 653.

This factor supports approval.   Plaintiffs have a comprehensive understanding of the key legal issues in the Action against the Settling Defendants based on their litigation and discovery efforts to date.   As discussed in detail in Section II.B, Class Counsel's efforts included:   (i) investigating Plaintiffs' claims; (ii) filing of the initial complaints, the Complaint, and their subsequent amended Complaint; (iii) briefing related to Defendants' multiple motions to dismiss

and Plaintiffs' opening motion for class certification; (iv) detailed discovery, including both issuing and responding to comprehensive discovery requests and interrogatories; and (v) the Court's order on the Non-Settling Defendants' motions to dismiss.  Accordingly, Class Counsel easily satisfy this factor.  Moreover, preparing for and participating in the mediation session presided over by an experienced neutral sharpened Class Counsel's ability to assess the value of Plaintiffs' claims.  *See* Section II.C *supra*.  These facts satisfy this *Reed* factor.

### 4.      Plaintiffs Faced Real Risks in Establishing Liability and Damages

The fourth *Reed* factor examines the probability of plaintiffs' success on the merits of their claims against the Settling Defendants.  *Klein*, 705 F. Supp. 2d at 654.  As the *Klein* court noted, "evaluating the likelihood of success 'contains an internal tension.'"  *Id.* (quoting *Reed*, 703 F.2d at 172).  "A district court faced with a proposed settlement must compare its terms with the likely rewards the class would have received following a successful trial of the case.  The court, however, must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial."  *Klein*, 705 F. Supp. 2d at 654 (quoting *Reed*, 703 F.2d at 172).  "Despite this tension, absent fraud or collusion, the most important *Reed* factor is the probability of plaintiffs' success on the merits."  *Klein*, 705 F. Supp. 2d at 654.

This factor is clearly satisfied.  First, as noted above, Plaintiffs bring complex ERISA breach of fiduciary duty claims.  Second, had this case not settled, the Trustee Defendants would continue to argue that, as directed trustees, their duty to act was only triggered in "limited, extraordinary circumstances where there are clear and compelling public indicators that call into serious question a company's viability as a going concern."  *See* Dkt. No. 124 at 2-3.  The Trustee Defendants, in particular, Wells Fargo, have argued throughout the litigation that at the earliest, their duty to act was triggered as of September 15, 2014 when Wells Fargo received

instructions from RadioShack to freeze any further investments in RadioShack Stock. *See* Dkt. No. 124 at 4. Accepting this argument would significantly reduce Plaintiffs' damages recoverable against the Trustee Defendants, as the value of RadioShack Stock declined significantly by that point in the Class Period. Indeed, as of June 30, 2014, three months before the Trustee Defendants assert they arguably had a duty to act, RadioShack Stock was trading for $0.99 per share, meaning the value of RadioShack Stock in the 401(k) Plan was only $3,511,687 and the value of RadioShack Stock in the Puerto Rico Plan was down to $119,299. ¶¶ 102, 105.

Additionally, there is considerable risk with respect to the damages issue, in particular that Plaintiffs might receive less as a result of a judgment than is provided for by the Settlement, especially given that to the best of Class Counsel's knowledge, only four similar "company stock" ERISA class actions have gone to trial, and in each instance, the defendants prevailed.

Indeed, after this Settlement was reached, the Court held as to the Non-Settling Defendants that "the allegation that the Company stock became excessively risky based on its slide into bankruptcy . . . is not the kind of event that is a special circumstance" required by *Dudenhoeffer* to plead a breach of ERISA's fiduciary duties. Dkt. No. 153 at 18. The Court held that "[s]ince Plaintiffs' entire complaint alleges Defendants made imprudent investments in RadioShack stock based on public information, Plaintiffs must allege that some special circumstance existed to affect the market price which rendered it unreliable or artificially constructed." *Id.* at 18-19. While Plaintiffs both (1) respectfully disagree with the Court's holding and would have appealed the same absent settlement, and (2) Plaintiffs have filed their Second Amended Complaint to allege "special circumstance existed to affect the market price which rendered it unreliable or artificially constructed" as to the Non-Settling Defendants, Plaintiffs had less of a basis upon which to allege the Settling Defendants, as RadioShack

outsiders, had any non-public information or reason to second-guess RadioShack's stock price beyond that of the Non-Settling Defendants.  Simply stated, absent appeal Plaintiffs would not likely have been able to survive a motion to dismiss against the Settling Defendants.  Assuming, *arguendo*, a successful appeal of the Court's motion to dismiss order, the Trustee Defendants' limited fiduciary duties would have created difficulties in establishing liability and damages.

> **5.      The Settlement is in the Range Of Reasonableness in Light of the Best Possible Recovery and the Attendant Risks of Litigation**

The fifth *Reed* factor requires that a court consider the range of possible recovery by a class.  *Klein*, 705 F. Supp. 2d at 656.  "This factor compares the recovery for the class under the proposed agreement with the likely estimated value of the claims if they went to trial."  *Id.* "Under this factor, a court should consider the views of objecting class members when their objections to the settlement agreement center on their view that the relief it provides is inadequate."  *Id.* (quoting *Ayers v. Thompson*, 358 F.3d 356, 370 (5th Cir. 2004)).  "The court must determine whether, taking into account the risks inherent in this litigation, as well as the costs of litigation, the settlement amount is fair and reasonable."  *Klein*, 705 F. Supp. 2d at 656. "The court's analysis of the reasonableness of the recovery provided under the Settlement Agreement can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount."  *Id.*  "After determining if any legal or factual obstacles exist, a district court must make an inquiry into whether the settlement's terms fall within *a reasonable range of recovery*, given the likelihood of the plaintiffs' success on the merits."  *Id.* (emphasis in original).

This factor strongly weighs in favor of the proposed Settlement.  As noted above in connection with the fourth *Reed* factor, Plaintiffs have faced, and would continue to face, significant opposition regarding the Trustee Defendants' liability and the measure of damages.

The Trustee Defendants would continue to argue that as directed trustees, their duty to act was only triggered in "limited, extraordinary circumstances where there are clear and compelling public indicators that call into serious question a company's viability as a going concern." *See* Dkt. No. 124 at 2-3.   As noted above, Wells Fargo argued that at the earliest, its duty to act was triggered as of September 15, 2014 when it received instructions from RadioShack to freeze any further investments in RadioShack Stock.   *See id.* at 4.   Accepting this argument would significantly reduce Plaintiffs' damages recoverable against the Trustee Defendants, as the value of RadioShack Stock declined significantly during the Class Period.

For example, as of June 30, 2011,[16] five months before the start of the Class Period, when RadioShack Stock was trading for or $13.31 per share, the value of RadioShack Stock in the 401(k) Plan was $39,580,506 and the value of RadioShack Stock in the Puerto Rico Plan was $800,131.   ¶¶ 86, 89.   However, as of June 30, 2014, two and a half years into the Class Period, when RadioShack Stock was trading for or $0.99 per share, the value of RadioShack Stock in the 401(k) Plan was $3,511,687 and the value of RadioShack Stock in the Puerto Rico Plan was down to $119,299.   ¶¶ 102, 105.   The Trustee Defendants, in particular, Wells Fargo, have argued throughout the litigation that at the earliest, their duty to act was triggered as of September 15, 2014 when Wells Fargo received instructions from RadioShack to freeze any further investments in RadioShack Stock.   *See* Dkt. No. 124 at 4.   Because ERISA damages are based upon the Plans' losses, if the Court were to accept this argument, it would significantly reduce Plaintiffs' damages recoverable against the Trustee Defendants because, as noted above, the value of RadioShack Stock had declined significantly by September 15, 2014.   Accordingly, the Settlement Payment represents a significant portion of the Plans' likely potential losses

---

[16] The Plan year is defined to commence on July 1 and end on the immediately subsequent June 30.   ¶ 69.

attributable to the alleged conduct of the Trustee Defendants.

###### 6.    Class Counsel and Plaintiffs Believe the Settlement is an Excellent Result

The sixth *Reed* factor examines the opinions of the class counsel, class representatives, and absent class members.   *Klein*, 705 F. Supp. 2d at 660.   "The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight."   *Klein*, 705 F. Supp. 2d at 649. "Counsel are the Court's 'main source of information about the settlement,' *Manual for Complex Litigation* § 21.641, and therefore the Court will give weight to class counsel's opinion regarding the fairness of settlement."   *Klein*, 705 F. Supp. 2d at 660.   As the *Klein* court went on to explain, "[b]ecause the court is to give significant weight to the opinion of class counsel, it is not routine for a court to overrule a decision that settlement is in the best interest of the class." *Id.* at 661.   Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."   *Id.*

As discussed herein, Class Counsel extensively investigated and litigated this Action up to this point and will continue to do so as to the Non-Settling Defendants and engaged in spirited negotiations before the Settlement was reached.   Moreover, as discussed greater below, Class Counsel have substantial experience litigating similar ERISA class action cases, along with other complex litigation, and are thus well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement.   Based on their extensive experience litigating and successfully resolving ERISA cases generally, and their investigation and evaluation of the facts and legal issues in this Action as to the Settling Defendants specifically, including the Court's holding on the Non-Settling Defendants Motion to dismiss*, discussed above Class Counsel strongly recommend that this Settlement be approved.

## IV.    THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order (as modified by the March 23, 2016 Order,

*see supra* n.5), Plaintiffs have issued the Court-approved Class Notice and Publication Notice. The June 6, 2016 Declaration of Amy Tadewald of the Settlement Administrator, Rust Consulting, Inc. ("Rust"), filed contemporaneously herewith (the "Rust Decl.") (attached to Appendix as Exhibit 2 (APP-76-79), demonstrates compliance with this Court's Order for Class Notice.  Among other things, Rust mailed the approved Notice of Class Action Settlement to 4,424 current and former participants of the Plans.  *See* Rust Decl. at ¶ 12.

Additionally, the Publication Notice was published in *USA Today* and in *PR Newswire* on April 8, 2016.  *See* Rust Decl. ¶ 13.  Further, at the direction of Class Counsel, Rust established and maintained a website with Settlement-related materials and information through which individuals can view important documents relating to the Action and Settlement, including:  (i) the Second Amended Consolidated Class Action Complaint, with accompanying exhibits; (ii) the Settlement Agreement; (iii) Plaintiffs' Memorandum in Support of Preliminary Approval of Class Action Settlement; (iv) the Amended Preliminary Approval Order; (v) the Class Notice; and (vi) the Proposed Plan of Allocation.  In addition, the dedicated website contained a list of frequently asked questions.  *See* Gyandoh Decl. at IV.  As of June 6, 2016, the Settlement website had received 252 hits.  *See* Rust Decl. at ¶ 8.

Accordingly, this Notice Plan (direct mailing, Publication Notice and website publication) fully informed Settlement Class members of the Action, the proposed Settlement and the information they need to make informed decisions about their rights.  In addition, the Class Notice advised Settlement Class Members that, if eligible, they will receive an automatic distribution of the Settlement's proceeds, and they do not have to submit any claim form or other information.

The Class Notice provided detailed information about the Settlement, including:  (i) a comprehensive summary of its terms; (ii) Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and a case contribution award for the Plaintiffs; and (3) detailed information about the Plaintiffs' Released Claims.   In addition, the Class Notice provided information about the date of the Fairness Hearing, Settlement Class members' rights to object (and deadlines and procedures for objecting), and the procedure to receive additional information.   The Class Notice also provided Settlement Class members with contact information for Class Counsel, including their email address, and provided: (a) a toll-free number where Settlement Class members may ask questions or learn about the Settlement; and (b) a website address to receive further information.

Courts have recognized that, like here, "[d]ue process is satisfied if the notice provides class members with the 'information reasonably necessary for them to make a decision whether to object to the settlement'" *In re Heartland Payment Systems*, *Inc. Custom Data Sec. Breach Litig.*, 851 F.Supp.2d 1040, 1060 (S.D. Tex. 2012) (citations omitted); *see also Bredthauer v. Lundstrom, et al.*, No. 4:10-cv-3132 (D. Neb. Mar. 4, 2013) ("the mailing and Web site provided sufficient notice of the Fairness Hearing and of the terms of the settlement . . . the court finds the notice satisfies the requirements of FED. R. CIV. P. 23 and due process.").   Indeed, the Court previously found the combination of the direct-mail Class Notice, Publication Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class Members of the terms of the proposed Settlement and how to lodge an objection, and obtain additional information.  *See* Preliminary Approval Order, ¶ 10.

## V.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

"Approval of a plan of allocation of settlement proceeds among the members of the Class under Federal Rule of Civil Procedure 23 is governed by the same standard of fairness,

reasonableness and adequacy applicable to approval of the settlement as a whole." *Schwartz*, 2005 WL 3148350, at *23.  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Id.*  However, "a class action settlement need not necessarily treat all class members equally." *Id.*

The proposed Plan of Allocation, attached to the Settlement Agreement, as Exhibit 5 at APP-71-75, is substantially similar to the plans of allocation approved and used in the vast majority of company stock fund ERISA cases, including the prior *RadioShack ERISA Litigation* in this District.[17]   Indeed, the proposed Plan of Allocation calculates each Settlement Class Member's *pro rata* distribution based upon the individual's balance in the Plan(s) on the first day of the Class Period plus any acquisitions of RadioShack Stock during the Class Period, and then subtracting all dispositions of RadioShack Stock during the Class Period and the balance, if any, of RadioShack Stock remaining on the last day of the Class Period.  The Net Losses of the Settlement Class Members as calculated pursuant to this formula will then be totaled to yield the loss of the Plans as a whole over the Class Period.  As soon as practicable after the calculations are made, the Settlement Claims Administrator shall distribute to each such participant his or her or Final Individual Dollar Recovery, less any expenses or charges approved by the Court, via

---

[17] *See, e.g.*, *In re RadioShack Corp. ERISA Litig.*, No. 08-md-1875, Final Order and Judgment at 4 ¶ 4 (N.D. Tex. Feb. 8, 2011) (approving analogous plan of allocation, noting "[t]he Plan of Allocation is APPROVED as fair and reasonable, and the Settlement Administrator and the Plan's trustee or its designee are directed to administer the payment of the Net Settlement Fund in accordance therewith."); *Hargrave, et al. v. TXU Corp., et al.*, No. 02-cv-2573, Order at ¶ 3 (N.D. Tex. Mar. 25, 2008) ("The Court hereby finds and concludes that the formula for the calculation of the claims of each Class Member which is set forth in the Notice of Proposed Class Action Settlement (the 'Notice') sent to Class Members, provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund established by the Settlement Agreement among Settlement Class Members, with due consideration having been given to administrative convenience and necessity. "); *In re: Bear Stearns Cos. ERISA Litig.*, MDL No. 1963, Order and Final Judgment at 7 (S.D.N.Y. Sept. 20, 2012); *Young, et al. v. Heimbuch, et al.*, No. 10-cv-8914, Order and Final Judgment at 7 (C.D. Cal. May 21, 2012); *In re Fed. Nat'l Mortg. Assoc. Sec., Der., & "ERISA" Litig.*, MDL No. 1668, Order and Final Judgment at 8 (D.D.C. Aug. 3, 2010); *In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 491-93 (E.D. Mich. 2008); *In re AOL Time Warner ERISA Litig.*, No. 02-CV-8853, 2006 WL 2789862, at *10 (S.D.N.Y. 2006); *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006).

check directly to the eligible former participant, or deposited into the accounts of any Settlement Class Members who still have active Plan accounts.

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Certification of the Settlement Class in this Action is warranted for numerous reasons. As an initial matter, before entering the Preliminary Approval Order, this Court examined the record and preliminarily certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1).  *See* Preliminary Approval Order at ¶¶ 1-2.  Nothing has changed in the record that would compel the Court to now reach a different conclusion with respect to the final approval of the Settlement Class.  Indeed, courts across the country have determined that breach of fiduciary duty claims under ERISA analogous to those at issue in this action are uniquely appropriate for class treatment.  *See, e.g.*, *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009); (finding that "given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class."); *Knight v. Lavine*, No. 12-cv-611, 2013 WL 427880, at *4 (E.D. Va. Feb. 4, 2013) (same); *George v. Kraft Foods Global*, No. 08-CV-3799, 2010 WL 3386402, at *11 (ND. Ill. Aug. 25, 2010) (same).

Accordingly, Plaintiffs respectfully request that the Court make appropriate findings and certify the following Class for purposes of this Settlement only pursuant to FED. R. CIV. P. 23(a) and (b)(1) and/or (b)(2):

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the RadioShack 401(k) Plan and/or the RadioShack Puerto Rico 1165(e) Plan at any time between November 30, 2011, and January 7, 2016 (the "Class Period") and whose Plan accounts included investments in RadioShack Stock.

### A.      The Proposed Class Satisfies the Requirements of Rule 23(a)

### 1.      The Class is So Numerous That Joinder is Impracticable

"Numerosity is satisfied when the proposed class is 'so large that joinder of all members is impracticable.'"   *Stott*, 277 F.R.D. at 324 (citing FED. R. CIV. P. 23(a)).   While there is no exact number that is deemed to satisfy the numerosity requirement, the proposed class here, which has thousands of members, easily satisfies this requirement.   *See, e.g.*, *Mullen v. Treasure Chest Casino LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that a class of 100 to 150 members satisfies the numerosity requirement).   Here, the Settlement Class consists of approximately 4,424 Plan participants.   *See* Rust Decl., ¶ 10.   Accordingly, Rule 23(a)(1)'s numerosity requirement is thus plainly satisfied.

### 2.      There are Issues of Law and Fact Common to All Class Members

"Commonality is met when 'there are questions of law or fact common to the class.'"   *Stott*, 277 F.R.D. at 324.   "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution "will resolve an issue that is central to the validity of each one of the [class member's] claims in one stroke."   *M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).   Commonality is satisfied here because the central issue to Plaintiffs' claims is whether Defendants breached fiduciary duties owed to the Plans, Plaintiffs and members of the Settlement Class by failing to act prudently and solely in the interests of the Plans and their participants and beneficiaries.   As the *Enron* court concluded, "[t]he resolution of these issues will not depend upon which plan participant sues on behalf of each Plan, but are common to all members of the class."   *In re Enron Corp.*, MDL No. 1446, No. 01-cv-3913, 2006 WL 1662596, at *9 (S.D. Tex. June 7, 2006); *see also* Preliminary Approval Order at ¶ 2(b).

### 3. The Claims or Defenses of the Named Plaintiffs are Typical of Claims or Defenses of All Class Members

"Typicality is satisfied when 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Stott*, 277 F.R.D. at 325 (quoting FED. R. CIV. P. 23(a)(3)). "The test for typicality is 'not demanding,' and 'focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stott*, 277 F.R.D. at 324 (quoting *Mullen*, 186 F.3d at 625). "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Id.*

The typicality requirement of Rule 23(a)(3) is satisfied here because the Plaintiffs' claims arise from and challenge the same event or course of conduct that gave rise to the claims of the other Settlement Class Members and are based on the same legal theory – *i.e.*, breaches of fiduciary duty as it relates to RadioShack Stock in the Plans. Therefore, the typicality requirement of Rule 23(a)(3) is met.[18]

### 4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

"Rule 24(a)(4) is satisfied where: (1) the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members." *Stott*, 277 F.R.D. at 324. In this analysis, a court

---

[18] *See, e.g.*, *Enron*, 2006 WL 1662596, at *10-11 (noting "Plaintiffs' shared breach-of-fiduciary-duty claims arose from the same alleged course of conduct by Defendants as part of a larger fraudulent scheme, the duties owed by each alleged fiduciary of the plan and its participants and beneficiaries are the same, and the kind of damages suffered by the plans is the same," and that "each of the claims arises from the same event or course of conduct, and each is based on the same legal theory, i.e., breach of fiduciary duty under ERISA § 409," and concluding "[t]he Court finds such shared allegations meet the typicality requirement even where some facts regarding individual participant varied").

examines "the class representatives' willingness, experience, and ability to handle class actions, to take an active role in and control the litigation, to protect the interests of the absent members to determine if there is fair and adequate representation of the interests of the class." *Enron*, 2006 WL 1662596, at *12. "The court must also determine if there are any conflicts of interest between the named plaintiffs and the class they seek to represent, which would make the class representation inadequate." *Id.*

First, the adequacy of each of the Plaintiffs is evidenced by their commitment to the Action thus far. Indeed, in connection with Plaintiffs' motion for class certification, Plaintiffs Singh, Snyder and Gerhart each submitted a declaration attesting to their efforts to date and confirming that they are ready, willing, and able to fulfill the duties required of class representatives. (*See* Dkt. No. 117 at APP-137 – APP-148). Moreover, Plaintiffs Snyder and Gerhart gave depositions, and Plaintiff Singh was prepared to give his deposition, although it did not go forward as it was cancelled less than 3 days before it was to take place, after Plaintiff Singh had arranged to take a day off from work for the same. Plaintiffs have also answered interrogatories and produced documents. Plaintiffs have been intimately involved in this Action and are more than adequate to serve as Settlement Class Representatives. Second, Plaintiffs have no interests antagonistic to those of the absent Settlement Class Members. Plaintiffs' interests in the relief sought totally overlap with those of all Settlement Class Members as demonstrated by the fact that, ultimately, Plaintiffs seek to establish that Defendants breached their fiduciary duties by continuing to offer RadioShack Stock as an investment option which caused the Plans and Settlement Class Members an economic loss. Plaintiffs thus satisfy Rule 23(a)(4).

**B.**     **The Settlement Class Meets the Requirements of Rules 23(b)(1) and (b)(2)**

In addition to the requirements of Rule 23(a), a proposed class must satisfy one of the three subsections of Fed. R. Civ. P. 23(b).  "The distinction between 23(b)(1)(A) and (b)(1)(B) is that 23(b)(1)(A) considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Enron*, 2006 WL 1662596, at *14.  The Settlement Class here may be certified under Rule 23(b)(1)(B), Rule 23(b)(1)(A), or both.

Many courts have relied on Rule 23(b)(1)(B) in certifying analogous classes because it is particularly well-suited for cases alleging breaches of fiduciary obligations.  As the *Enron* court noted in its analysis, the Advisory Committee Notes accompanying the 1966 amendments to Rule 23 "state that certification under Rule 23(b)(1)(B) is appropriate in an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust."  *Enron*, 2006 WL 1662596, at *14.  Given ERISA's "representative capacity" and remedial provisions, certification is particularly warranted under Rule 23(b)(1)(B).

Certification is also appropriate under Rule 23(b)(2), which notes a class may be certified if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Complaint clearly seeks injunctive and declaratory relief, see, e.g., Complaint at 112, Request For Relief, A.  Indeed, if Plaintiffs prevail in establishing Defendants' liability, Defendants will be obliged to make the Plans whole and take whatever equitable actions are ordered by the Court, including the

declaratory and equitable relief specifically sought by Plaintiffs.   *See* ERISA §§ 409(a), 502(a)(2)-(3), 29 U.S.C. §§ 1109(a), 1132(a)(2)-(3).

## C.     Class Counsel Should be Appointed as Settlement Class Counsel

FED. R. CIV. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel easily meets the requirements of Rule 23(g).  As noted above, inquiry into the adequacy of class counsel has been decoupled from the Rule 23(a)(4) inquiry.  As the *Stott* court noted:

> Rule 23(g) provides, in relevant part, "(1) Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court: (A) must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(g)(1)(B).

277 F.R.D. at 342.   Each of these considerations support Class Counsel's adequacy.

As demonstrated by this Court's Order appointing Interim Lead and Liaison Class Counsel (Dkt. No. 29 at ¶ 9), Class Counsel are among the most experienced ERISA class action attorneys in the nation, and are highly qualified to prosecute this litigation.  Class Counsel are qualified, experienced attorneys with broad-based, multi-jurisdictional experience in complex class action litigation, including extensive experience in the context of analogous ERISA claims based on the imprudent retention of company stock as a plan investment option.  Proposed Lead Class Counsel KTMC is exceptionally qualified to serve as counsel for the Settlement Class given that the firm is one of the most experienced ERISA litigation firms in the country, strongly weighing in favor of its appointment here.[19]  Additionally, Committee Members CWG and SSB,

---

[19] As the United States District Court for the Western District of Oklahoma stated in an ERISA class action with

24

and proposed Liaison Class Counsel Lackey Hershman, are experienced law firms that have substantially contributed to the prosecution of this Action and will continue to serve the interests of the Settlement Class.

The course of this litigation has amply demonstrated Class Counsel's knowledge of the applicable law and willingness to devote the resources necessary to protect the interests of the Settlement Class. Class Counsel has done substantial work in this case on behalf of the Plaintiffs and the proposed Settlement Class. As discussed herein, Class Counsel has vigorously litigated this action and is committed to continuing to do so. *See* Section II.B *supra*. For these reasons, Plaintiffs respectfully request that the Court make final its findings in the Preliminary Approval Order and appoint KTMC as Lead Class Counsel for the Settlement Class, appoint SSB and CWG as Lead Class Counsel Committee Members for the Settlement Class, and appoint Lackey Hershman as Liaison Class Counsel for the Settlement Class. Class Counsel's extensive efforts in prosecuting this case together with their background and experience in ERISA class action litigation satisfy the requirements of Rule 23(g). Accordingly, this Court should make final its preliminary appointment of Class Counsel as counsel for the Settlement Class.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for Final Approval of the Proposed Settlement, Certification of a Settlement Class and Approval of the Plan of Allocation.

---

competing motions for appointment as interim lead counsel, "the Court finds that KTMC is one of the most experienced ERISA litigation firms in the country, with particular expertise in the area of ERISA breach of fiduciary class actions." *In re Chesapeake Energy Corp. 2012 ERISA Class Litig.*, 286 F.R.D. 621, 624 (W.D. Okla. 2012).

Dated:  June 10, 2016

 _/s/ Mark K. Gyandoh_____
**KESSLER TOPAZ MELTZER & CHECK, LLP**
Edward W. Ciolko (admitted *Pro Hac Vice*)
Donna Siegel Moffa (admitted *Pro Hac Vice*)
Mark K. Gyandoh (*admitted Pro Hac Vice*)
Julie Siebert-Johnson (*admitted Pro Hac Vice*)
280 King Of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056
Email:  eciolko@ktmc.com
          dmoffa@ktmc.com
          mgyandoh@ktmc.com
          jsjohnson@ktmc.com

*Interim Lead Class Counsel Committee Chair*

Gerald D. Wells, III
Robert J. Gray (*admitted Pro Hac Vice*)
**CONNOLLY WELLS & GRAY, LLP**
2200 Renaissance Boulevard
Suite 308
King of Prussia, PA  19406
Telephone:  (610) 822-3700
Facsimile:  (610) 822-3800
Email:  gwells@cwg-law.com
          rgray@cwg-law.com

Michael J. Klein (*admitted Pro Hac Vice*)
**STULL, STULL & BRODY**
6 East 45th Street
New York, NY 10017
Telephone:  (212) 687-7230
Facsimile:  (212) 490-2022
Email:  mklein@ssbny.com

*Interim Lead Class Counsel Committee Members*

Roger L. Mandel
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
**LACKEY HERSHMAN, LLP**
3102 Oak Lawn Avenue, Suite 777

Dallas, TX 75219
Telephone:  (214) 560-2201
Facsimile:  (214) 560-2203
Email:  rlm@lhlaw.net
        beb@lhlaw.net

*Interim Liaison Class Counsel*

George C. Aguilar (*admitted Pro Hac Vice*)
**ROBBINS ARROYO LLP**
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
Email: gaguilar@robbinsarroyo.com

*Plaintiffs' Counsel*

## <u>CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 7.1(b)</u>

With respect to the Trustee Defendants, on June 10, 2016, counsel for Plaintiffs asked counsel for the Trustee Defendants via email their position regarding Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation, and counsel for the Trustee Defendants responded by email on June 10, 2016 indicating that they join in the relief requested, but do not agree with some of the allegations/statements made in Plaintiffs' Memorandum.

With respect to the Non-Settling Defendants, on June 10, 2016, counsel for the Non-Settling Defendants informed Class Counsel that they do not agree with all of the allegations/statements made in Plaintiffs' Memorandum, and that they do not join in the relief requested.

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh (*admitted Pro Hac Vice*)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 10, 2016, I electronically filed the foregoing with the clerk of Court using the CM/ECF system, which will send a notification to all counsel of record in this Action.

/s/ *Mark K. Gyandoh*
Mark K. Gyandoh