ORIGINAL

NORTHERN DISTRICT OF TEXAS
FILED
FEB 28 2018
CLERK, U.S. DISTRICT COURT
By _____
Deputy

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-11587

United States Court of Appeals
Fifth Circuit
**FILED**
February 6, 2018
Lyle W. Cayce
Clerk

MANOJ P. SINGH

      Plaintiff–Appellant,

v.

RADIOSHACK CORPORATION; JAMES F. GOOCH; JOSEPH C. MAGNACCA; MARTIN O. MOAD; ROBERT E. ABERNATHY; FRANK J. BELATTI; JULIA A. DOBSON; DANIEL R. FEEHAN; H. EUGENE LOCKHART; JACK L. MESSMAN; THOMAS G. PLASKELL; EDWINA D. WOODBURY; ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK 401(K) PLAN; ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK PUERTO RICO 1165(E) PLAN; RADIOSHACK 401(K) PLAN EMPLOYEE BENEFITS COMMITTEE; RADIOSHACK PUERTO RICO PLAN EMPLOYEE BENEFITS COMMITTEE; DOES 1-10, inclusive; JUSTIN JOHNSON; WELLS FARGO BANK, N.A.; MARK BARFIELD; BANCO POPULAR DE PUERTO RICO; KARINA DAVIS; ERIC HALES; MICHAEL E. KEYSER; KEVIN KRAUTKRAMER; SRI REDDY; BOARD OF DIRECTORS OF RADIOSHACK,

      Defendants–Appellees.

---

JEFFREY SNYDER

      Plaintiff–Appellant,

v.

RADIOSHACK CORPORATION; JAMES F. GOOCH; JOSEPH C. MAGNACCA; MARTIN O. MOAD; ROBERT E. ABERNATHY; FRANK J. BELATTI; JULIA A. DOBSON; DANIEL R. FEEHAN; H. EUGENE LOCKHART; JACK L. MESSMAN; THOMAS G. PLASKELL; EDWINA D. WOODBURY; ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK

No. 16-11587

401(K) PLAN; ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK PUERTO RICO 1165(E) PLAN; RADIOSHACK 401(K) PLAN EMPLOYEE BENEFITS COMMITTEE; RADIOSHACK PUERTO RICO PLAN EMPLOYEE BENEFITS COMMITTEE; DOES 1-10, inclusive,

  Defendants–Appellees.

---

WILLIAM A. GERHART, On Behalf of Himself and the RadioShack 401(k) Plan and the RadioShack Puerto Rico 1165(e) Plan, and/or Alternatively on Behalf of a Class Consisting of Similarly Situated Participants and Beneficiaries of the Plans,

  Plaintiff–Appellant,

v.

RADIOSHACK CORPORATION; THE ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK 401(K) PLAN; ADMINISTRATIVE COMMITTEE OF THE RADIOSHACK PUERTO RICO 1165(E) PLAN; DOES 1-10, inclusive; THE BOARD OF DIRECTORS OF RADIOSHACK; ROBERT E. ABERNATHY; FRANK J. BELATTI; JULIA A. DOBSON; DANIEL R. FEEHAN; H. EUGENE LOCKHART; JACK L. MESSMAN; THOMAS G. PLASKELL; EDWINA D. WOODBURY,

  Defendants–Appellees.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before STEWART, Chief Judge, and JOLLY and OWEN, Circuit Judges.

PER CURIAM:

  The Plaintiffs, Manoj P. Singh, Jeffrey Snyder, and William A. Gerhart, represent a putative class of those who participated in RadioShack Corporation's 401(k) Plan and who held RadioShack stock in their 401(k)

2

accounts after November 30, 2011. They appeal the dismissal of their claims that Defendants—members of the RadioShack board of directors and plan administrative committee—breached their fiduciary duties under the Employee Retirement Income Security Act (ERISA) by allowing plan participants to invest in RadioShack stock despite the company's descent into bankruptcy. We affirm.

I

The RadioShack 401(k) Plan (the Plan) allowed participants to invest their deferred salary or company match contributions in over twenty investment options. The Plan had an employee stock ownership plan (ESOP) that allowed participants to invest their retirement savings in RadioShack stock, which was held in the RadioShack Stock Fund (the Fund). Plan documents required that RadioShack be offered as an investment option. If participants did not choose an investment option, their contributions were placed in a default age-appropriate mutual fund. The Plan was administered by the plan administrative committee (Committee), whose members were appointed by the RadioShack board of directors. The Committee was responsible for selecting Plan investments and was the "named fiduciary" under ERISA.

During the class period, RadioShack's stock price dropped from $11.48 per share to pennies as the company experienced a financial decline that culminated in Chapter 11 bankruptcy. The complaint describes RadioShack's demise at length, citing numerous articles that document the company's descent from an electronics powerhouse to an obsolete brick-and-mortar retailer. The company's decline was accompanied by a series of poor annual and quarterly financial results, including eleven consecutive quarters of substantial net losses and significant drops in income from year to year.

No. 16-11587

RadioShack executives attempted a series of turnaround initiatives. In 2012, the company attempted to strengthen its mobility business and expand its footprint in international markets. When those efforts were unsuccessful, RadioShack replaced CEO James Gooch with Joseph Magnacca, who implemented a strategic turnaround focused on closing underperforming stores, improving the store experience, and revitalizing the brand. Magnacca and other executives expressed optimism that the turnaround plan would work but cautioned that it would take several quarters.

Ultimately, however, the company's financial outlook continued to deteriorate. RadioShack was downgraded several times by ratings agencies, which repeatedly cautioned that the company's liquidity was weak and eventually predicted bankruptcy. The company turned to lenders, entering financing agreements that gave the company access to approximately $835 million but contained conditions that restricted its operational flexibility. For example, RadioShack disclosed in a May 2014 SEC filing that its plan to close 1,100 stores was blocked by creditors.

In early 2014, RadioShack's financial advisors counseled the board of directors to consider selling the company or restructuring through bankruptcy. The board of directors was also informed that the company's creditors were restricting access to credit and vendors were demanding letters of credit as a condition of business. The company intensified its search for a change-of-control transaction, focusing on a potential transaction with hedge fund Standard General LP. After trading near $0.50 per share, RadioShack's stock rose above $1 per share upon news of the potential sale. However, news outlets warned investors that the company's plan to close nearly a quarter of its stores would likely again be blocked by creditors seeking to preserve collateral. Soon after opening communication with Standard General, RadioShack expressed "substantial doubt about [its] ability to continue as a going concern."

4

RadioShack's financial struggles and concomitant stock price decrease negatively affected the Plan. For the 2012 Plan year, the value of the Plan's aggregate RadioShack stock holdings dropped from $39.6 million to $12.5 million, despite an increase of approximately 290,000 shares. That value fell another $2.2 million in 2013 and $7.63 million in 2014. In its regular meeting on June 20, 2014, the Committee decided to send participants a targeted diversification letter. In the Committee's eight previous meetings, it had reviewed RadioShack's stock performance but had not expressly considered limiting or removing it from the Plan.

The Committee held an ad-hoc meeting on July 11, 2014 to consider the propriety of RadioShack stock as a Plan investment option given a recent rating downgrade. The Committee considered freezing or capping future contributions, removing the stock from the Plan, and aggressively educating participants about the importance of diversification and risks of investing in a single stock. The Committee decided to freeze future plan participant investment in RadioShack stock "as soon as administratively feasible," September 15, 2014. The Committee declined to divest the stock, reasoning that it would force participants to sell their shares at an all-time low and would send a negative message about the company's prospects.

RadioShack later reached an agreement with Standard General, but creditors again refused to allow the store closures on which the transaction was premised. Still suffering from liquidity constraints, RadioShack was delisted from the New York Stock Exchange and filed for Chapter 11 bankruptcy on February 5, 2015. When its stock continued to trade over the counter, RadioShack warned that equity holders would likely not recover in bankruptcy and that it believed company stock "ha[d] no value." In October 2015, RadioShack stock was cancelled in bankruptcy proceedings.

No. 16-11587

The three named plaintiffs in this putative class action filed suit against the members of the Committee (Committee Defendants), the board of directors (Director Defendants), and the plan trustees. They also sued the plan administrative committee and trustees of the RadioShack Puerto Rico 1165(e) Plan (Puerto Rico Plan). The district court consolidated the cases. Shortly after Plaintiffs filed the class action complaint, they settled with the trustees. The district court granted Defendants' motion to dismiss the first complaint but granted Plaintiffs leave to file a second amended complaint. However, the district court concluded that the second amended claim failed to state a cause of action and dismissed all of Plaintiffs' claims and entered final judgment. Plaintiffs timely appealed.

## II

We review a district court's dismissal of a plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo.[1] Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[2] To overcome a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."[3] To make out a plausible claim, the complaint must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] Such factual allegations need not be detailed, but must be "more than an unadorned, the defendant-unlawfully-harmed-me accusation."[5] "[L]abels and conclusions, and a formulaic recitation of the

---

[1] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[2] FED. R. CIV. P. 8(a)(2).
[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[5] *Id.*

6

elements of a cause of action" are not enough,[6] nor are facts that are "'merely consistent with' a defendant's liability."[7]

When considering a motion to dismiss, we "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiffs."[8] We need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[9]

## III

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA by allowing the Plan to invest in RadioShack stock. First, they claim that the Committee Defendants breached the duty of prudence by failing to respond to public information spelling RadioShack's financial ruin or insider information suggesting RadioShack's stock was overvalued. Second, they argue that all Defendants violated the duty of loyalty, some by owning RadioShack stock and others by not owning it. Third, Plaintiffs argue that the Director Defendants failed to monitor the Committee adequately. Plaintiffs assert each of these claims in relation to both the Plan and the Puerto Rico Plan. We conclude that the complaint does not plausibly state any fiduciary claims with respect to the Plan and that Plaintiffs do not have standing to bring claims regarding the Puerto Rico Plan.

### A

ERISA requires fiduciaries to manage plan assets "with the care, skill prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters" would use under the circumstances.[10] This duty

---

[6] *Twombly*, 550 U.S. at 555.
[7] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).
[8] *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).
[9] *Gentilello v Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).
[10] 29 U.S.C. § 1104(a)(1)(B).

7

No. 16-11587

of prudence "trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary."[11] In *Fifth Third Bank v. Dudenhoeffer*, the Supreme Court clarified that the duty of prudence applies fully to ESOPs, except that ESOPs need not be diversified.[12] *Dudenhoeffer* also establishes different standards for duty-of-prudence claims based on public information and insider information, respectively.[13] Using this framework, we analyze Plaintiffs' public and insider information duty-of-prudence allegations separately. We conclude that none of these claims are plausible.

### 1

Plaintiffs contend that the Committee Defendants breached the duty of prudence by failing to respond to publicly available information that warned of RadioShack's decline and suggested that RadioShack stock was too risky for a retirement plan. They argue that *Dudenhoeffer* does not apply to public-information claims that a stock was excessively risky, and that even if it applies, RadioShack's declining economic condition gave rise to special circumstances that entitle them to relief. We conclude that Plaintiffs' public information claims fail under the standard announced in *Dudenhoeffer* and that no special circumstances warrant relief.

### i

*Dudenhoeffer* establishes that for publicly-traded stocks, "allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."[14] This rule

---

[11] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2468 (2014).
[12] *Id.*
[13] *Id.* at 2471-72.
[14] *Id.* at 2471.

8

comports with the efficient market hypothesis, which posits that markets incorporate public information into the price of a security such that investors "have little hope of outperforming the market in the long run based solely on their analysis of publicly available information."[15] Thus, unless some "special circumstance[]" makes the market price unreliable, "ERISA fiduciaries . . . may, as a general matter . . . prudently rely on the market price" as a fair assessment of a stock's value.[16]

Plaintiffs argue that *Dudenhoeffer* addresses only allegations that public information showed that a stock was overvalued, not claims that the stock was excessively risky. This distinction between claims that stock is overvalued and claims that stock is excessively risky is "illusory."[17] In an efficient market, market price accounts for risk.[18] Plan fiduciaries cannot be expected to outperform the market or predict future stock performance using publicly available information.[19] In *Dudenhoeffer*, for example, employees of Fifth Third Bancorp alleged that fiduciaries of the company retirement plan knew or should have known that Fifth Third stock was "overvalued and excessively risky" because news articles had warned that the subprime-mortgage lending market, a major part of Fifth Third's business, would soon collapse.[20] The Sixth Circuit upheld the employees' complaint, reasoning that Fifth Third plan fiduciaries acted imprudently because they were aware of the risks of subprime lending, yet still allowed the plan to hold company stock.[21] The Supreme Court

---

[15] *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2411 (2014)); *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).
[16] *Dudenhoeffer*, 134 S. Ct. at 2471.
[17] *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 66 (2d Cir. 2016) (per curiam), *cert. denied*, 137 S. Ct. 1067 (2017).
[18] *Id.*
[19] *See Dudenhoeffer*, 134 S. Ct. at 2471-72.
[20] *Id.* at 2464.
[21] *Id.* at 2472.

dismissed this logic as "based on an erroneous understanding of the prudence of relying on market prices."[22] Thus, although *Dudenhoeffer* was primarily framed in terms of overvalued-stock allegations, it applies equally to Plaintiffs' public-information claims premised on excessive risk.

Under the *Dudenhoeffer* standard, the Plan fiduciaries did not breach the duty of prudence by relying on market price as a fair indicator of the value of RadioShack stock. Although the complaint references scores of news articles and analyst reports detailing RadioShack's demise, the complaint provides no plausible reason that the negative commentary from these sources was not incorporated into the RadioShack stock price. The same is true of the complaint's discussion of debt, financial statements, and downgrades to RadioShack's stock, bond, and credit ratings. On the contrary, the overall decline in the price of RadioShack stock during the class period shows that the market accounted for this negative information. Because the market accounted for public information about RadioShack's financial prospects, Plaintiffs' public-information claims are implausible under *Dudenhoeffer*'s general rule unless Plaintiffs prove that special circumstances made the stock price infirm.

ii

The complaint argues that five potential special circumstances made the Committee Defendants' reliance on the market price of the stock imprudent: (1) Defendants withheld material information from the market, skewing the stock price; (2) RadioShack stated in March 2015 that its stock had no value; (3) bond market indicators suggested RadioShack would default; (4) RadioShack was burdened with debt; and (5) Defendants failed to

---

[22] *Id.*

Case: 16-11587 Document: 00514367049 Page: 11 Date Filed: 02/28/2018
Case 4:14-cv-00959-O Document 212 Filed 02/28/18 Page 11 of 19 PageID 4265

No. 16-11587

investigate the continued prudence of investing Plan assets in RadioShack stock.

The Supreme Court has not defined "special circumstances," but has said that such circumstances "affect[] the reliability of the market price as 'an unbiased assessment of the security's value in light of all public information.'"[23] Based on this standard, we conclude that none of Plaintiffs' allegations are special circumstances as defined in *Dudenhoeffer*.

Plaintiffs' allegations that Defendants withheld material information from the market are not special circumstances. Under *Dudenhoeffer*, courts analyze insider-information claims under a separate standard.[24] We decline to redundantly label the possession of nonpublic information a special circumstance.

Moreover, RadioShack's March 2015 press release, issued after the company had filed for bankruptcy and seven months after the Plan froze contributions to the Fund, is not a special circumstance. The press release warned investors that its common stock, then trading over the counter at $0.20 per share, had no value because equity holders would likely not be able to recover in the impending bankruptcy. The stock price mentioned in the press release reflected the market's perception of RadioShack stock's possible post-bankruptcy upside before the release. RadioShack's predictions supplied the market with new information regarding the risks of buying the company's stock. In any event, RadioShack fiduciaries had stopped participants from buying new shares of RadioShack stock months before. Plaintiffs fail to plausibly allege that the press release made the market price of RadioShack

---

[23] *Id.* (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2411 (2014)).
[24] *See id.* at 2471-73.

11

Case: 16-11587    Document: 00514367049    Page: 12    Date Filed: 02/28/2018
Case 4:14-cv-00959-O   Document 212   Filed 02/28/18   Page 12 of 19   PageID 4266

No. 16-11587

stock unreliable at the time the Committee froze Plan purchases of the stock months earlier or at the time the release was made.

Additionally, neither bond-market indicators that RadioShack was likely to default, nor RadioShack's heavy debt load qualify as special circumstances. The referenced bond market trends were themselves public information, and the stock market presumably incorporated that information into the price of RadioShack stock.[25] So, too, was RadioShack's heavy debt load. Plaintiffs cannot evade *Dudenhoeffer*'s general implausibility rule by disguising claims based on public information as special circumstances.

Citing *Tibble v. Edison International*,[26] Plaintiffs also allege that the Committee Defendants failed to investigate the continued prudence of the Plan's investment in RadioShack stock and that that failure was a special circumstance. *Tibble* establishes that ERISA fiduciaries have a continuing duty to monitor the prudence of plan investments.[27] According to Plaintiffs, the Committee's alleged failure to investigate the prudence of RadioShack stock made the stock price unreliable because the Committee did not have any basis to determine the stock's true value. This argument misunderstands *Dudenhoeffer*, which holds that plan fiduciaries may presumptively rely on market price as a measure of value unless a special circumstance casts doubt on the reliability of the price.[28] Plaintiffs did not plausibly allege that the purported lack of investigation had any effect on the reliability of the market price, so it cannot be a special circumstance under *Dudenhoeffer*.

---

[25] *See id.* at 2471-72; *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).
[26] 135 S. Ct. 1823 (2015).
[27] *Id.* at 1828.
[28] *Dudenhoeffer*, 134 S. Ct. at 2471-72.

No. 16-11587

Because the complaint does not plausibly identify any special circumstances undermining the market price as a measure of RadioShack's value, it does not state a duty of prudence claim based on public information.

2

Plaintiffs also allege that Defendants violated the duty of prudence because Defendants had inside information that RadioShack would fail, but made positive statements about the company's future in public. This, they allege, caused the Plan to buy RadioShack stock at artificially inflated levels. Specifically, Plaintiffs claim that Defendants knew that RadioShack's turnaround plan would fail because the company suffered from heavy debt and inadequate liquidity and creditors refused to consent to store closures. The district court held that Plaintiffs failed to identify any insider information suggesting the market was overvaluing RadioShack stock.

The complaint pleaded that financial advisors advised the board of directors to consider selling the business or deleveraging through judicial restructuring and that improving liquidity would require store closures. RadioShack attempted to obtain lender consent to close stores, but the lenders refused. Plaintiffs claim that when RadioShack engaged in talks with Standard General, the directors knew based on prior refusals that lenders were not likely to consent to any plan to close stores. In light of this information, Plaintiffs claim that Magnacca's public statements expressing optimism that RadioShack's turnaround plan would work were materially misleading and artificially inflated the company's stock price.

These arguments are ultimately unavailing because all of the information alleged was available to the public. As the complaint meticulously details, RadioShack's liquidity problems were well-known to the market. Various analysts predicted that RadioShack would need to restructure its debt. The market likewise knew that RadioShack's creditors had not consented to a

previous store closure proposal, and analysts warned that the lenders were not likely to consent in the future. Thus, Plaintiffs did not plausibly plead that any Defendant had information not available to the public.

Even if we assume Defendants had insider information, Plaintiffs' non-public information claims would not satisfy *Dudenhoeffer*. To state a duty of prudence claim based on nonpublic information, "a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it."[29] The Fifth Circuit has clarified that "the plaintiff bears the significant burden of proposing an alternative course of action so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it."[30] In *Whitley v. BP, PLC*, for example, participants in BP retirement plans alleged that BP's stock was overvalued leading up to the explosion of the Deepwater Horizon oil rig because BP insiders knew of safety breaches of which the public was unaware.[31] We rejected the participants' claims that BP fiduciaries should have frozen the plan's investment in company stock or disclosed the safety breaches to the public because those actions "would likely lower the stock price," such that "a prudent fiduciary could very easily conclude that such actions *would* do more harm than good."[32]

---

[29] *Id.* at 2472.
[30] *Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016) (emphasis in original); *see also Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016) (per curiam) (holding that complaint must plausibly allege "that a prudent fiduciary in the [defendant's] position 'could not have concluded' that the alternative action 'would do more harm than good'") (quoting *Dudenhoeffer*, 134 S. Ct. at 2463).
[31] *Whitley*, 838 F.3d at 529.
[32] *Id.* (emphasis in original).

Case: 16-11587  Document: 00514367049  Page: 15  Date Filed: 02/28/2018
Case 4:14-cv-00959-O Document 212 Filed 02/28/18 Page 15 of 19 PageID 4269

No. 16-11587

Plaintiffs are unable to show that no prudent fiduciary could believe that the alternatives proposed in the complaint would do more harm than good. The complaint alleges the Committee Defendants should have frozen Plan contributions to the Fund earlier, disclosed inside information to the market to deflate the stock price, or liquidated the Plan's holdings of RadioShack stock after disclosing the alleged inside information. Because a prudent fiduciary could conclude that each of these actions would have done more to harm the Plan than to help it, the district court properly dismissed Plaintiffs' duty of prudence claims based on insider information.

Plaintiffs argue the Committee should have frozen new investment in the Fund sooner than September 2014. We do not agree that no prudent fiduciary could have thought that freezing the stock before Committee Defendants did would be more harmful than helpful. In *Whitley*, we said that a prudent fiduciary could easily conclude that freezing participant purchases of BP stock might do more harm than good.[33] Likewise, a prudent fiduciary in the Committee Defendants' position could have thought that freezing RadioShack stock would signal to the market "that insider fiduciaries viewed the employer's stock as a bad investment,"[34] causing the Fund's existing holdings of RadioShack stock to decline in value.

Plaintiffs also allege that Defendants should have divested the Fund's holding of RadioShack stock on the basis of the alleged inside information. They concede, however, that selling the stock before disclosing this information to the market violates insider trading laws. Instead, they propose that Defendants should have told the public that RadioShack's turnaround plan would inevitably fail due to liquidity and debt constraints and then divest the

---

[33] *Id.*
[34] *Dudenhoeffer*, 134 S. Ct. at 2473.

15

stock. But a prudent fiduciary could readily conclude that "publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund."[35] Moreover, a reasonable fiduciary could have agreed with Defendants that forcing the Plan to sell RadioShack stock at an all-time low price would have locked in participant losses. Defendants did not breach the duty of prudence by failing to sell the stock on the basis of insider information.

The complaint also alleges that Defendants should have sought guidance from the Securities Exchange Commission or Department of Labor, resigned as plan fiduciaries, or engaged outside experts as advisors or independent fiduciaries. The district court summarily dismissed these arguments and Plaintiffs waive them by failing to address them in their appellate briefs.[36]

## B

Plaintiffs' complaint also fails to state a plausible duty of loyalty claim. "ERISA's duty of loyalty is the highest known to the law."[37] ERISA fiduciaries must "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries."[38] The complaint fails to make plausible allegations that Defendants failed to act in accordance with these standards.

Plaintiffs' assertion that the Committee Defendants declined to invest in RadioShack stock does not allege a duty of loyalty violation. Fiduciaries need not personally invest in any particular asset in order to fulfill their duties.

With respect to the Director Defendants, Plaintiffs make the opposite argument that because certain executives and directors received bonuses in the form of RadioShack stock and options, they artificially inflated the stock

---

[35] *Id.*
[36] *Sanders v. Unum Life Ins. Co. of Am.*, 553 F.3d 922, 926 (5th Cir. 2008).
[37] *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (internal quotations and citations omitted).
[38] 29 U.S.C. § 1104(a)(1).

16

Case: 16-11587    Document: 00514367049    Page: 17    Date Filed: 02/28/2018
Case 4:14-cv-00959-O Document 212 Filed 02/28/18 Page 17 of 19 PageID 4271

No. 16-11587

price to preserve their personal wealth. However, Plaintiffs fail to point to any fact suggesting a conflict of interest other than Defendants' stock ownership. Instead, they argue that Defendants were disloyal because they were concerned that freezing Plan investment in RadioShack stock would send negative signals to the market and cause the stock price to decrease. But the complaint fails to allege facts that would give rise to a plausible inference that Defendants' concern about the stock price was self-serving. Defendants' actions were equally consistent with protecting the Plan's current holdings of RadioShack stock. We decline to adopt a rule that would make stock ownership, without more, synonymous with a plausible claim of fiduciary disloyalty.[39] The district court's dismissal of these bare allegations was proper.

The complaint also alleged that Defendants breached the duty of loyalty for failing to hire independent fiduciaries to evaluate stock ownership. Plaintiffs waive this argument by failing to brief it on appeal.[40]

## C

The allegations that the Director Defendants breached the duty to monitor by failing to monitor the performance of or provide complete information about the prudence of RadioShack stock to the Committee also fail. The Fifth Circuit has "never recognized [a] theory of ERISA fiduciary liability" that holds corporate directors personally liable for failing to monitor fiduciaries appointed by the directors.[41] Even if the court were to adopt such a theory, duty-to-monitor claims recognized by other courts inherently require a breach

---

[39] Compare *In re WorldCom, Inc.*, 263 F. Supp.2d 745, 768 (S.D.N.Y. 2003), *with In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007, at *5 (N.D. Ill. Mar. 3, 2004) (unpublished); *see also Kopp v. Klein*, 722 F.3d 327, 343 (5th Cir. 2013), *vacated on other grounds*, 134 S. Ct. 2900 (2014).

[40] *Sanders*, 553 F.3d at 926.

[41] *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016). *But see Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996); *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011).

Case: 16-11587    Document: 00514367049    Page: 18    Date Filed: 02/28/2018
Case 4:14-cv-00959-O  Document 212  Filed 02/28/18  Page 18 of 19  PageID 4272

No. 16-11587

of duty by the appointed fiduciary.[42] Because the Committee did not breach any duty to the Plan, Plaintiffs' duty-to-monitor claims against the Director Defendants collapse.

## D

We now address whether the district court erred by dismissing all claims related to the Puerto Rico Plan and conclude it did not. Plaintiffs argue that because both the Plan and the Puerto Rico Plan were offered by RadioShack, the members of the Committee for the Plan also comprised the administrative committee of the Puerto Rico Plan, and the members held combined meetings for both plans, Plaintiffs should be able to bring claims based on the Puerto Rico Plan. The district court dismissed these claims because it erroneously believed that they fell under the settlement between Plaintiffs and the plan trustees. Nevertheless, we may affirm the district court's dismissal on any basis supported by the record,[43] and the record reveals that Plaintiffs lack standing to bring claims on behalf of participants in the Puerto Rico Plan.

Under Article III of the Constitution, plaintiffs seeking redress in federal court have the burden[44] of proving that they have standing, meaning they are "entitled to have the court decide the merits of the dispute or of particular issues."[45] Standing must be decided at the threshold of every federal case—before a determination on the merits.[46] To prove standing, plaintiffs must "allege (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct,' and that is (3) 'likely to be redressed by the requested

---

[42] *See Selman*, 98 F.3d at 1466 n.10.
[43] *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc).
[44] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).
[45] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).
[46] *Id.*

relief.'"[47] In addition to these constitutional requirements, plaintiffs must not run afoul of prudential standing rules, including the "general prohibition on a litigant's raising another person's legal rights."[48]

These standing requirements are equally applicable in class actions. The Supreme Court has said: "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent."[49]

In this case, Plaintiffs concede that none of the named plaintiffs were participants in the Puerto Rico Plan. Accordingly, none of them suffered any personal injury related to the Puerto Rico Plan. Plaintiffs also have not alleged that any exceptions to the prudential bar on third-party standing apply. Because Plaintiffs have not alleged a concrete injury stemming from the actions of the Puerto Rico Plan administrative committee acting as such, we affirm the dismissal of their claims related to that plan.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[47] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

[48] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

[49] *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) (internal quotations and citations omitted).